ams/ajg

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ICE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-4135-JAR |
| | ) | |
| HAMILTON SUNDSTRAND INC., and | ) | |
| RATIER-FIGEAC, S.A., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The Court now considers defendants Hamilton Sundstrand Inc. and Ratier-Figeac, S.A.'s motions to dismiss (Docs. 15-16). Defendants contend that the first through fourth claims in the Complaint should be dismissed because plaintiff does not allege facts to support them. The motion is now fully briefed and the Court is prepared to rule. Defendants' motions to dismiss are granted in part and denied in part as described more fully below.

## I. Standard

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.[1] The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.[2]

On a Rule 12(b)(6) motion, the court judges the sufficiency of the complaint, accepting

---

[1]*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citation omitted).

[2]*Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (quotation omitted).

1

as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff.[3]  These deferential rules, however, do not allow the court to assume that a plaintiff can prove facts that it has not alleged or that the defendants have violated the laws in ways that have not been alleged.[4]  If the facts narrated by the plaintiff "do not at least outline or adumbrate" a viable claim, the complaint cannot pass Rule 12(b)(6) muster.[5]  Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interest of justice.[6]

## II.  Background

The following facts are alleged in the Complaint, and the Court draws all reasonable inferences in favor of plaintiff.  Plaintiff ICE Corporation ("ICE") is engaged in the business of design, development, production and manufacture of anti-icing equipment and components for various kinds of aircraft.  ICE entered into a Memorandum of Understanding ("MOU") on November 8, 2004, to conduct research and development of a deicing propeller system for an A400M military transport aircraft being developed by EADS.

The MOU lists ICE and defendant Ratier-Figeac, S.A. ("Ratier") as parties.  Its stated purpose "is to authorize ICE, subject to the conditions of this agreement, to proceed with design and development, procurement of material, and the manufacture, assembly, and test of hardware of the Deicing System."  The MOU states its estimated value as $3.36 million.  The Complaint

---

[3]*Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987).

[4]*Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[5]*Mounkes*, 922 F. Supp. at 1506 (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988) (quotation omitted)).

[6]*Poole v. County of Otero*, 271 F.3d 955, 955 (10th Cir. 2001).

alleges defendants misrepresented to ICE that they were retaining ICE to perform all work, including design, development, manufacture and production, in connection with the deicing systems and controller for the Airbus A400M project.  The Complaint further alleges defendants misrepresented that the value of the MOU, governing ICE's work on the project, had a minimum value of $3.36 million.

One of the terms of the MOU is that ICE agrees to maintain its current pricing "on the 'New' Hamilton Sundstrand Long Term Agreement for a maximum of three (3) years." The Complaint alleges Hamilton Sundstrand Inc. ("Hamilton") used the MOU as a negotiating tool to reduce their cost on all products covered by a separate long-term agreement signed by ICE with Hamilton.

Prior to executing the MOU, ICE had a long-standing business relationship with defendant Hamilton.  ICE alleges Ken Mantha of Hamilton initially contacted ICE concerning the development of the deicing product.  The Complaint alleges Mantha advised ICE that Ratier was a totally owned subsidiary of Hamilton and that it was in charge of the engineering development effort, including the deicing product.  The Complaint alleges that "each defendant was acting partner, joint venturer, agent and/or representative of the other, and entered into the agreements and understood the conduct described."  Further, the Complaint states that under agency theory, "each defendant acted with the knowledge of, instruction by, or apparent, implied or actual authority of the other defendant, or acted on behalf of both defendants."

During the development phase of the project, Ratier changed a number of specifications and requirements, causing the selling price to rise.  ICE alleges it consulted with Hamilton about these changes before placing purchase orders.  Hamilton authorized ICE to proceed in designing

the deicing system to meet certain new requirements.  Soon after, ICE received a memorandum

that they were to proceed with an upgraded design system to meet new requirements.  The

Complaint alleges these notifications to proceed continued to misrepresent that defendants were

retaining ICE to perform all work on the Airbus A400M project.

The parties entered into a new round of negotiations for an increased price of the system.

In June 2005, Ratier and Hamilton rejected all of ICE's proposals and demanded a fixed price

per unit over a twenty-year period of time.  Ratier then instructed ICE to stop all development

work on the product.  The MOU provides that it may only terminate upon either (1) the award of

a Master Term Agreement, a Purchase Agreement, and a Product Support Agreement to ICE, or

(2) agreement of the parties.

## III.  Analysis

ICE alleges five claims for relief in the Complaint against both defendants: (1) breach of

contract; (2) breach of implied contract; (3) unjust enrichment; (4) negligent misrepresentation;

and (5) misappropriation of trade secrets.  Defendant Hamilton moves to dismiss the first four

claims, and defendant Ratier moves to dismiss claims two, three and four.  The Court will

address each claim in turn.

### A.  Breach of Written Contract against Hamilton (Claim 1)

The elements for a breach of contract claim are: (1) the existence of a contract between

the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in

compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was

damaged by the breach.[7]  Hamilton disputes only the allegation that it was a party to the contract,

---

[7]*Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003).

arguing the face of the MOU shows that it neither incurred obligations nor was a signatory to the contract.[8]  ICE maintains that Hamilton is either a subsidiary, an alter-ego, or an agent of Ratier, such that it is a party to the MOU.

A parent corporation may be held liable for the contractual obligations of its subsidiary corporation when the subsidiary is no more than the agent or "alter ego" of the parent corporation.[9]  "The ultimate test for imposing alter ego status is whether, from all of the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties.[10]

Notwithstanding the terms of the MOU, Hamilton may still be liable for Ratier's obligations under the MOU if Ratier is no more than an alter ego of Hamilton.  The Complaint alleges Ratier was a wholly-owned subsidiary of Hamilton.  Also, allegations that Hamilton used the MOU between Ratier and ICE as a negotiating "tool," and the fact that maintenance of current pricing on the "new" Hamilton long-term agreement was a condition of the MOU suggests Hamilton exercised a large degree of control over Ratier's business operations.  Furthermore, injustice is possible since Hamilton has received a benefit under the MOU that Ratier might not be liable for, and that ICE might not be compensated for.

---

[8]The Court may properly consider the MOU on motion to dismiss.  A document referred to in the complaint and central to the plaintiff's claim may be considered in a motion to dismiss if the defendant submits an indisputably authentic copy, even though the document is not incorporated by reference or attached to the complaint.  *See MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002).

[9]*Dean Operations, Inc., v. One Seventy Assoc.*, 896 P.2d 1012 (Kan. 1995).

[10]*Doughty v. CSX Transp., Inc.*, 905 P.2d 106, 110 (Kan. 1995).

The facts and allegations are sufficient to outline a viable claim for breach of contract against Hamilton, and therefore pass muster under the Rule 12(b)(6) standard.  Accordingly, defendant Hamilton's motion to dismiss Claim I of the Complaint is denied.

### B.  Breach of Implied Contract and Unjust Enrichment (Claims II and III)

Defendants argue that the implied contract and unjust enrichment claims must be dismissed because a written contract exists that governs the claims.[11]  Defendants submit that this Court should follow *Orica New Zealand Ltd. v. Searles Valley Operations, Inc.*[12]  There, implied contract and unjust enrichment claims were dismissed pursuant to Rule 12(b)(6) because an express contract governed the parties' relationship.  In *Orica*, the plaintiff pled breach of implied contract and unjust enrichment claims in the alternative to its breach of contract claim.[13]  Because the defendant stipulated in its reply memorandum that it was bound as a party to the agreement, the alternative claims were held precluded.[14]

In *Orica*, the court relied on another district court decision, *Fusion, Inc. v. Nebraska Aluminum Castings, Inc.*[15]  In *Fusion*, the plaintiff brought a breach of contract claim and the defendant asserted counterclaims for breach of contract, breach of fiduciary duty, and an action for restitution.[16]  In reply to the counterclaims, the plaintiff stipulated as to the existence of an

---

[11]*See Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, No. 01-2243-CM, 2004 WL 1900584, at *2 (D. Kan. June 8, 2004).

[12]No. 04-2310-KHV, 2005 WL 387659, at *3 (D. Kan. Feb. 17, 2005) (citing *Fusion, Inc v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996)).

[13]*Id.*.

[14]*Id.*

[15]934 F. Supp. 1270 (D. Kan. 1996).

[16]*Id.* at 1274–75.

express contract.  Finding that an express contract existed, the court held the action for restitution could not be maintained.[17]  "Kansas law is clear that quasi-contractual remedies, such as unjust enrichment, 'are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue.'"[18]  "Moreover, 'courts applying Kansas law have concluded that quantum meruit and restitution are not available theories of recovery when a valid, written contract addressing the issue exists.'"[19]  These theories, which include unjust enrichment and implied contract may, however, be available if the contract is void, unenforceable, rescinded, or waived by the party seeking to recover.[20]

ICE's breach of implied contract and unjust enrichment claims are pled in the alternative to its breach of contract claim.  However, like the defendant in *Orica*, Ratier has stipulated in defendants' reply memorandum that a written contract exists between Ratier and ICE.[21]  Because neither ICE nor Ratier dispute that the MOU constitutes a written contract between them, the MOU determines their respective rights.  Therefore, ICE cannot maintain its claims for breach of implied contract and unjust enrichment against Ratier and Ratier's motion to dismiss is granted on these claims.

However, because Hamilton disputes that it is a party to the MOU, it is not clear that an express contract exists that would preclude ICE's alternative claims against Hamilton.  Nor is it

---

[17]*Id.*

[18]*See Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc.*, No. 01-2243-CM, 2004 WL 1900584, at *2 (D. Kan. June 8, 2004) (citing *Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997)).

[19]*Id.* (quoting *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996)).

[20]*Id.*

[21](Doc. 39 at 5); *see* No. 04-2310-KHV, 2005 WL 387659, at *3 (D. Kan. Feb. 17, 2005).

clear that the respective rights of ICE and Hamilton are determined solely by the MOU.  "The

Federal Rules of Civil Procedure provide that 'relief in the alternative or of several different

types may be demanded.'"[22]  "Additionally, 'a party may set forth two or more statements of a

claim or defense alternately or hypothetically, either in one count or defense or in separate

counts or defenses.'"[23]

ICE's breach of implied contract and unjust enrichment claims are alternatives to its

claim for breach of written contract against Hamilton.  Alternative claims are sanctioned by the

Federal Rules of Civil Procedure, and ICE's alternative claims are adequately pled.  As

discussed above, it is not clear that these claims are precluded by the existence of a written

contract.  Thus, notwithstanding defendants' stipulation that the MOU is an express contract

between Ratier and ICE, ICE's alternative theories of recovery against Hamilton cannot be

precluded as a matter of law until it is clear that the MOU is a valid and enforceable contract.

Accordingly, Hamilton's motion to dismiss Claims II and III of the complaint is denied.

### C.  Negligent Misrepresentation (Claim IV)

In *Mahler v. Keenan Real Estate, Inc.*,[24] the Kansas Supreme Court adopted the tort of

negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1976).[25]

The court quoted section 552 as follows:

> (1) One who, in the course of his business, profession or
> employment, or in any other transaction in which he has a

---

[22]*Cohen v. Lockwood*, No. 02-2246-CM, 2003 WL 21384313, at *3 (D. Kan. June 12, 2003) (citing Fed. R. Civ. P. 8(a)).

[23]*Id.* (citing Fed. R. Civ. P. 8(e)(2)).

[24]876 P.2d 609 (Kan. 1994); *see also Phillips v. Tyler*, 129 P.3d 656, 658 (Kan. Ct. App. 2006).

[25]*Mahler*, 876 P.2d at 616.

pecuniary interest, supplies false information for the guidance of
others in their business transactions, is subject to liability for
pecuniary loss caused to them by their justifiable reliance upon the
information, if he fails to exercise reasonable care or competence
in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in
Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose
benefit and guidance he intends to supply the information or
knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the
information to influence or knows that the recipient so intends or
in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the
information extends to loss suffered by any of the class of persons
for whose benefit the duty is created, in any of the transactions in
which it is intended to protect them.[26]

In a later case, the Kansas Supreme Court advised that "the comments to § 552 show that

negligent misrepresentation applies to suppliers of commercial information in favor of users of

such information in their commercial transactions."[27]  Section 552 does not apply to a

misrepresentation of intention to perform an agreement.[28]  A tort claim based on negligent

misrepresentation also "must be independent of [a] contract claim."[29]  A tort claim will be

considered independent if it is based on a duty that is independent of the contract.[30]

ICE alleges in the Complaint that defendants made two basic misrepresentations:  (1)

that ICE was being retained to perform all work in connection with the deicing systems and

---

[26]*Id.* (quoting Restatement (Second) of Torts § 552 (1976)).

[27]*Gerhardt v. Harris*, 934 P.2d 976, 984 (Kan. 1997).

[28]*Id.* at 985–86.

[29]*Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 277 F. Supp. 2d 1120, 1129–30 (D. Kan.
2003) (citing *Graphic Techs., Inc. v. Pitney Bowes, Inc.*, 998 F. Supp. 1174, 1179–80 (D. Kan. 1998)).

[30]*Id.*

serve as controller for the project, partly by sending continual notices to proceed with work in the face of changes in project specifications and resulting increases in unit price; and (2) that the value of the MOU governing ICE's work on the project had a minimum value of $3.36 million. Plaintiffs allege an additional misrepresentation in their response memorandum that is not in the Complaint.  They argue that defendants misrepresented the status of their business relationship as a joint venture involving both defendants.[31]  Defendants contend these alleged misrepresentations are not actionable as a matter of law because they merely restate the breach of contract claim, or are statements of intent or opinion rather than of commercial fact.

### 1.  Independence from the Contract Claim

Defendants first argue that the negligent misrepresentation claims should be dismissed because they merely reiterate the contract claims.  When parties contemplate a remedy in the event of a breach of contract, the bargained-for existence of a contractual remedy displaces the imposition of tort duties and default consequences.[32]  If a misrepresentation claim is predicated on a contractual representation regarding future occurrences, the claim necessarily relies on a contractually created duty.[33]  Nevertheless, a party may be liable in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract.[34]  One such duty is the general tort duty to refrain from misrepresentation of

---

[31](Doc. 27 at 16.)  Defendants argue that the Court should disregard this new allegation.  ICE incorporated into its negligent misrepresentation claim all other factual allegations in the Complaint.  Further, unlike fraud, negligent misrepresentation need not be pleaded with particularity under Fed. R. Civ. P. 9(b).  *See Universal Premium*, 277 F. Supp. 2d at 1130–31; *Shaffer v. Eden*, 209 F.R.D. 460, 464 (D. Kan. 2002).

[32]*Universal Premium*, 277 F. Supp. 2d at 1129–30.

[33]*Graphic Techs., Inc.*, 998 F. Supp. at 1179.

[34]*Universal Premium*, 277 F. Supp. 2d at 1130.

material present or preexisting facts.[35]

> [T]he key difference is whether the contract calls for a specific result.  When the contract does not call for the specific result at issue, the action is more in the nature of a violation of a duty imposed by law instead of failure to perform a duty arising by reason of agreement.  In such a case, the plaintiff's complaint is not that the defendant failed to perform the contract, but that the defendant failed to perform it with due care.[36]

The Kansas Supreme Court has held on two occasions that a contract and tort action may arise out of the same set of facts.[37]  "When the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless the conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies."[38]  Defendants do not point to any provision of the MOU that limits the parties' ability to pursue a tort remedy.  The Court finds that, at least with regard to the alleged misrepresentations regarding the duration of the relationship and the status of defendants' relationship, the duty plaintiff seeks to impose was not bargained for in the MOU.  Plaintiff alleges that defendants misrepresented to it that it would be conducting all of the work on this project and that Hamilton was a subsidiary of Ratier, inducing them into signing the MOU.  If plaintiff can satisfy the elements of the tort of negligent misrepresentation, it may pursue that remedy.  Plaintiff will obviously not be allowed to make a

---

[35]*Graphic Techs, Inc.*, 998 F. Supp. at 1179.

[36]*Clark v. Assocs. Comm. Corp.*, 149 F.R.D. 629, 636 (D. Kan. 1993) (quoting *Hunt v. KMG Main Hurdman*, 839 P.2d 45, syl. ¶ 4 (Kan. Ct. App. 1992); *see also Fed. Kemper Life Assurance Co. v. Ellis*, 28 F.3d 1033, 1042 n.10 (10th Cir. 1994); *Brady v. United States*, No. 96-1106-MLB, 1997 WL 321300, at *1 (D. Kan. Apr. 8, 1997).

[37]*Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 146 (Kan. 2003); *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 497–98 (Kan. 1988); *see also Shields v. U.S. Bank Nat'l Assn. N.D.*, No. 05-2073-CM, 2005 WL 3335099, at *2 (D. Kan. Dec. 7, 2005).

[38]*Bittel*, 962 P.2d at 498.

double recovery, but at this point may plead contract and tort claims in the alternative based on these specific misrepresentations.

### 2.  Statements of Commercial Fact

Whether alleged misrepresentations are of present fact or of opinion or future intent is a question of law.[39]  Defendants contend the first alleged misrepresentation, that they intended to retain plaintiff for all work on the project, is a promise regarding a future act or promise to perform the MOU, rather than a statement of commercial fact.  Defendants compare this statement with the non-actionable statements in *Bittel* and *Heslop v. UCB, Inc.*[40]  In *Bittel*, the non-actionable statement by the defendant was that it saw no problem with continuing to finance plaintiffs' purchase of cattle, so long as the conditions and collateral required for such financing was met.[41]  The court found that this statement pertained to an intent to perform in the future.[42] In *Heslop*, the defendants' non-actionable statement to plaintiff was that, "they would employ him for at least three and possibly five years."[43]  In *Heslop*, the court dismissed the negligent misrepresentation claim because plaintiff did not allege that "defendants made false representations regarding their internal business conditions or other factual commercial information."[44]

---

[39]*Zhu v. Countrywide Realty, Co.*, 165 F. Supp. 2d 1181, 1206 (D. Kan. 2001); *Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-26052-JWL, 2005 WL 1109456, at *14  (D. Kan. May 9, 2005) (citing *Bittel*, 962 P.2d at 501).

[40]175 F. Supp. 2d 1310 (D. Kan. 2001).

[41]*Bittel*, 962 P.2d at 493–94.

[42]*Id.* at 501.

[43]175 F. Supp. 2d at 1314.

[44]*Id.*

The Court finds that the first alleged misrepresentation here is a non-actionable promise to perform an agreement, or statement of future intent.  As alleged in the Complaint, defendants either were or were not retaining ICE to perform all work on the A400M project at the time the statement was made.  If the defendants made the statement with the intent not to retain ICE for all the work on the project, then this would have been an intentional, or fraudulent, misrepresentation.[45]  ICE alleges that continual notices to proceed, despite changes in project specifications and cost, perpetuated the misrepresentation that defendants were retaining them to provide all work and development on the project.  But ICE points to no "statement" in these notices that could constitute a misrepresentation.  Because the first alleged misrepresentation relates to a statement of intent or future action, it is not actionable as a matter of law.

Plaintiff also alleges a defendants misrepresented the status of their relationship as part of a joint venture involving both defendants.  The Court finds that this alleged statement is one of commercial factual information that arises from an independent tort duty to refrain from misrepresentation.  Plaintiff as sufficiently pled facts sufficient to go forward with its negligent misrepresentation claim based on this alleged misrepresentation.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Ratier's Motion to Dismiss (Doc. 16) is **granted on Claims II and III and denied on Claim IV.**  Defendant Hamilton's Motion to Dismiss (Doc. 15) is **denied on all claims**.

**IT IS SO ORDERED**.

Dated this _7th___ day of August 2006.

 S/ Julie A. Robinson_____

---

[45]*See Bittel*, 962 P.2d at 500.

13

Julie A. Robinson
United States District Judge