## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, a Kansas Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 05-4135-JAR |
| HAMILTON SUNDSTRAND INCORPORATED ) | |
| ) | |
| and ) | |
| ) | |
| RATIER-FIGEAC, S.A., a French Corporation, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter comes before the court upon the motion of plaintiff, ICE Corporation, ("ICE") to compel compliance with discovery requests served by plaintiff upon defendants Hamilton Sundstrand Corporation ("Hamilton") and Ratier-Figeac, S.A. ("Ratier") (Doc. 80). The motion is fully briefed and is thus ripe for decision.

### I.        Background

In 2004, Hamilton and Ratier, a French corporation and a subsidiary of Hamilton's parent company United Technologies Corporation, and ICE formed a business relationship to develop a deicing propeller system for the A400M military transport aircraft. The parties subsequently entered into a Memorandum of Understanding outlining the details of the transaction. Over the course of the project, the specifications and requirements of the A400M system continually changed, which plaintiff alleges required project and production changes. In June 2005 production was halted on the deicing system and ICE filed suit against Hamilton and Ratier claiming breach of contract, breach of implied contract, unjust enrichment, negligent misrepresentation, and misappropriation of trade

secrets under K.S.A. 60-3320(4).

In the present motion plaintiff requests that the court compel defendants to: (1) produce all remaining documents responsive to Request Nos. 20-28, 37-39, 47-49, and 51-56 regarding third-party Artus's design; (2) to produce all remaining documents responsive to Request Nos. 2-5, 7, 9-12, 14, 29, 54-57 regarding defendant Hamilton's role on the project; (3) to produce all remaining documents responsive to Request Nos. 34-36 regarding Ratier's contracts with third-party Artus; (4) to produce all remaining documents responsive to Request Nos. 29-34, 43-46, 50, and 57 relating to the pricing and costs of the de-icing controller; (5) to provide detailed answers to Interrogatory Request Nos. 2, 4, 6(c), 7(a), 7(c) - 7(h), 9, 12(a) - 12(d) and 15; and (6) to provide answers to plaintiff's Request for Admissions Nos. 6, 53 and 54.  As detailed below, the court grants the plaintiff's motion to compel, in part, and denies it, in part.

## II.    Discussion

As a general matter, the court "looks with disfavor on conclusory or boilerplate objections."[1] Specifically,

> [w]hen a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules,  how each request for production or interrogatory is objectionable.  By failing to address these types of objections in response to a motion to compel, a party fails to meet its burden to support its objections."[2]

As a result, "[t]he Court is then left without any basis to determine whether the objections are valid and applicable in light of the particular circumstances of the case."[3] While the court will examine defendants' various objections, the court will not consider defendants' boilerplate objections to the

---

[1] *Sonnino v. Univ. of Kan. Hosp. Auth.,* 221 F.R.D. 661, 670 (D. Kan. 2004).

[2] *Id.*

[3] *Id.*

extent that defendants have failed to support them.

**A.      Plaintiff's Request for Production of Documents**

      **1.      Request Nos. 4, 7, 9, 20, 28, 21-27, 37, 38, 43, 44 and 57.**

Defendants claim that they have no documents under their possession and control that are responsive to Request Nos. 20 and 28 and therefore, cannot provide such documents.  Similarly, defendants do not object to plaintiff's Request Nos. 4, 7, 9,  21-27, 37, 38, 43, 44, and 57 and claim that they have provided all remaining documents responsive to such requests in their possession, custody, or control.  Thus, defendants conclude that because they have either produced all responsive documents, or because no responsive documents exist, the court should deny plaintiff's motion compel these requests.  Plaintiff has acknowledged receiving many documents from defendants, but at the time of filing their motion to compel and reply, plaintiff had not been able to review the "belatedly produced 10,000 new pages of documents."[4]

The court finds that defendants' responses are not proper objections, but rather statements of fact.[5]  Yet, "[o]bviously[,] if defendants do not possess any documents responsive to the request then they have nothing to produce."[6] Thus, while defendants cannot produce non-existent documents, the court will order defendants to produce to plaintiff all documents in their possession or under their control that are responsive to Document Request Nos. 4, 7, 9, 20-28, 37, 38, 43, 44 and 57.  The court further reminds defendants of their duty to seasonably supplement their responses under Fed. R. Civ.

---

[4] *Plaintiff's Reply* (Doc. 99) at p. 1.

[5] *See Cory v. Aztec Steel,* 225 F.R.D. 667, 671 (D. Kan. 2005)(rejecting the objection that the non-moving part had "no documents to produce" as a "statement of fact and not a proper objection.").

[6] *Id.*

Pro. 26(e).[7]

## 2. Documents responsive to Artus's Design Request No. 39, 47-49 and 51-56.

### Document Request No. 39

Document Request No. 39 seeks "[a]ll specifications or project requirements, and any amendments, modifications, or substitutes thereto, provided by either defendant to Nord-Micro, Plaintiff, the Substituted Party, or any other party, for the propellor deicing system for the A400M aircraft."[8]

Defendants object to Request No. 39 on the ground that it is overbroad, unduly burdensome, and seeks the production of documents are not relevant to the claim at hand or reasonably calculated to lead to the discovery of admissible evidence.[9]   Nevertheless and without foregoing the aforementioned objections, defendants agree to produce all "responsive, non-privileged documents in their possession, custody or control."[10]

### a.    Overbreadth Objection

A party objecting to discovery on the basis of overbreadth "must support its objection, unless the request appears overly broad on its face."[11]   The court finds that Request No. 39 does not appear

---

[7]  *Fed. R. Civ. Pro. 26(e)* provides in part:
A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

(1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

[8]*Plaintiff's Motion to Compel* (Doc. 80)(Exhibit B).

[9] *Id.*

[10] *Id.*

[11]*Cory v. Aztec Steel,* 225 F.R.D. 667, 672 (D. Kan. 2005).

overly broad on its face and therefore defendants have failed to carry their burden to substantiate this objection.  In the District of Kansas:

> The familiar litany of general objections, including overly broad, burdensome . . . will not alone constitute a successful objection...nor will a general objection fulfill the objecting party's burden to explain its objection...  The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.[12]

Because a mere conclusory and general assertion of overbreadth will not suffice, the court overrules defendants' overbreadth objection.

### b.   Unduly Burdensome Objection

A party opposing discovery on unduly burdensome grounds has "the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[13]  In considering such an objection, the court should allow such discovery unless "the hardship is unreasonable in light of the benefits to be secured from the discovery."[14]  The "mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and the possibility of injury to the business of the party form whom discovery is sought does not itself require denial of the motion."[15]  Because defendants have not shown any heavy expenditures of time, effort, or money that would be necessary to answer the document requests or that such expense would be unreasonable in relation to the benefits secured by the discovery, the court overrules this objection.

---

[12] *Hammond v. Lowe's Hone Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003)(citation omitted).

[13] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002).

[14] *Employers Comm. Union Ins. Co. of Am. V. Browning-Ferris Indus.,* 1993 U.S. Dist. LEXIS 21098, at *17-18 (D. Kan. Apr. 1993).

[15] *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 332-33 (D. Kan. 1991).

### c.   Relevancy Objection

On its face, the request appears relevant to the matter at hand, as it requests documents related to the specifications and project requirements for the propeller deicing system.[16]  There is at least "any possibility' that this information "may be relevant to the claim or defense of any part"[17] as plaintiff's claims revolve around this propeller deicing system project.[18]

When the discovery sought appears relevant on its face, as with No. 39, the party resisting discovery must show that the requested discovery falls outside of the scope of relevance or that the discovery is "of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery."[19]   Defendants have failed to make any such showing and the court overrules this objection.

Having overruled defendants' objections, the court orders defendants to produce all documents responsive to Request No. 39.

### Document Request 47

Under Request 47, plaintiff requests "all documents concerning, related to or evidencing the criteria utilized" to "complete the design, development, manufacture, assembly, testing, and delivery of the propeller deicing system."[20]  Defendants object on the grounds that Request No. 47 is vague and duplicative of document Request No.  21.

### a.   Vagueness Objection

---

[16]*Plaintiff's Motion to Compel* (Doc. 80)(Exhibit B).

[17]*Sonnino v. University of Kansas Hospital Authority*, No. 02-2576, 2004 U.S. Dist. LEXIS 6220 at *6-7 (D. Kan. April 8, 2004)(citation omitted).

[18]*See Amended Complaint* (Doc. 108).

[19]*McCoo v. Denny's Inc.,* 192 F.R.D. 675, 686 (D. Kan. 2000).

[20]*Plaintiff's Motion to Compel* (Doc. 80)(Exhibit B).

Defendants object to the vagueness of the phrase "complete the design, development, manufacture, assembly, testing, and delivery of the propeller deicing system." Under the Federal Rules, the party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.[21] In doing so, the party must show that more tools beyond mere reason and common sense are necessary "to attribute ordinary definitions to terms and phrases utilized."[22] The court overrules this objection because defendants have failed to substantiate their vagueness objection and instead merely make a conclusory assertion that the phrase is ambiguous.

### b.    Duplicative Objection

Defendants further object that Request No. 47 is duplicative of Request No. 21.[23] The court finds that while the two requests are similar, Request No. 47 is more comprehensive, rather than duplicative, of Request No. 21. Therefore, the court overrules defendants' objections regarding Request No. 47. Having overruled defendants' objections, the court orders defendants to produce any documents responsive to Request No. 47.

### Document Request Nos. 48 and 49

Request No. 48 seeks "all documents concerning, relating to or evidencing the persons, company or entity retained by Defendants and/or Airbus Militarie to complete the design, development, manufacture, assembly, testing and delivery of the propeller deicing system."[24] Request No. 49 seeks:

---

[21] *W. Res., Inc. v. Union Pac. R.R. Co.,* 2002 U.S. Dist. LEXIS 1004 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. Apr. 18, 2000)).

[22] *Id.*

[23] *Plaintiff's Motion to Compel* (Doc. 80)(Exhibit *-Defendants' Responses to Plaintiff's First Request for Production of Documents* at ¶ 21).

[24] *Id.*

All documents concerning, relating to or evidencing any communications between either of Defendants and the persons, company or entity retained by Defendants and/or Airbus Militarie to complete the design, development, manufacture, assembly, testing, and delivery of the deicing system actually utilized by Defendants and/or Airbus Militarie."[25]

In response to these discovery requests, defendants bring forth three objections: vagueness, overbreadth, and relevance.  Without waiving these objections, defendants promise to produce all non-privileged remaining documents responsive to this request.

With respect to their vagueness objection, defendants have failed to meet their burden of "show[ing] such vagueness or ambiguity."[26]  Specifically, defendants have failed to "'exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . .'"[27] As a result, the court overrules defendants' vagueness objection.

The court also overrules defendants' unduly burdensome objection.  Defendants have failed to meet their burden of showing definitive facts to justify their objections "by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[28]  Here, defendants have failed to illustrate that significant time, labor, or expenses will go into producing these discovery requests.  Moreover, defendants have failed to illustrate that these document requests would be unreasonable in relation to the benefits secured by the discovery.

 On its face, both document requests appear relevant to the matter at hand, as they request documents related to the entities involved with the design, manufacture, assembly, testing or delivery

---

[25]*Id.*

[26]*W. Res., Inc. v. Union Pac. R.R. Co.,* 2002 U.S. Dist. LEXIS 1004 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. 2000)).

[27] *Id.*

[28]*Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D. Kan. 2002).

of the propeller deicing system.[29]  When "the discovery sought appears relevant," defendants must

"establish the lack of relevancy. . . ."[30] In light of defendants' failure, and because a request for

discovery "should ordinarily be allowed,"[31] the court finds Request Nos. 48 and 49 meet the

relevancy standard and the court overrules defendants' relevancy objection.  Having overruled

defendants' objections to Request Nos. 48 and 49, the court orders defendants to produce any

remaining responsive documents to plaintiff.

### Document Request No. 51

 Document Request No. 51 seeks:

> All documents, materials, drawings, specifications, diagrams, technical reports, descriptions, hardware or software provided by either Defendant to the person...or entity retained to complete the design, development, manufacture, assembly, testing, and delivery of the deicing system actually utilized by Defendants and/or Airbus Militarie.[32]

Defendants agree to produce such non-privileged remaining documents responsive to the request

while not waiving their vagueness objection to the language "complete the design, development,

manufacture, assembly, testing and delivery."[33]  The court has previously overruled this vagueness

objection and does so here.  Defendants are required to produce all remaining responsive documents.


### Document Request Nos. 52-55

Request No. 52 seeks "[a]ll specifications provided to either Defendant concerning the

propellor deicing system in connections [sic] with the initial bidding process on the A400M Project."

---

[29] *Plaintiff's Motion to Compel* (Doc. 80)(Exhibit B).

[30]*Gen. Elec. Capital Corp. v. Lear Corp.,* 215 F.R.D. 637, 640 (D. Kan. 2004).

[31]*Pulsecard, Inc. v. Discover Card Services*, 168 F.R.D. 295, 309 (D. Kan. 1996) (citation omitted).

[32]*Plaintiff's Motion to Compel* (Doc. 80)(Exhibit B).

[33]*Id.*

Request No. 53 seeks "[a]ll specifications, including any amendments or modifications, provided to either Defendant concerning the propellor deicing system after the initial bidding process on the A400M Project."  Request No. 54 seeks "[a]ll communications between either Defendant and Plaintiff concerning the specifications, or in regard to any amendments or modification thereto, for the propeller deciding system or any of its components on the A400M Project."  Request No. 55 seeks the same type of communications as requested in No. 54,  but as " between either Defendant and the Substituted Party." [34]

Defendants object to Request Nos. 52 and 53 as being duplicative of Request No. 38.  While Request No. 38 requests such specifications provided *by* the Project Developer to either defendants, Request Nos. 52 and 53 request all specifications provided to either defendant without respect to whether the "Project Developer" produced these specifications.  Therefore, Requests Nos. 52 and 53 are not duplicative of Request No. 38 and the court orders defendants to produce all remaining documents responsive to Request Nos. 52 and 53.

Defendants similarly object to Request No. 54 as duplicative of Request Nos. 40-41 and object to No. 55 as duplicative of Request Nos. 22 and 23.  Unlike Request Nos. 40 and 41 and Nos. 22 and 23, Request Nos. 54 and 55 additionally request specifications related to *amendments* or *modifications*.  Thus, the court orders defendants to produce all remaining  documents responsive to Request Nos. 54 and 55.

**Document Request No. 56**

Request No. 56 seeks "all communications between either Defendant and any other party concerning the specifications or any amendments or modifications thereto, for the propeller deicing

---

[34] *Id.*

system or its components of the A400M Project."[35]  Defendants object to the request on the ground of relevancy.  This request appears facially relevant, as it requests documents relating to communications between the defendants and third parties regarding the specifications of, or amendments thereto, the propeller deicing system.  This request could show components of the claims and defenses asserted in the instant case, including that of plaintiff's misappropriation of trade secrets claim.  The court further finds defendants have failed to substantiate their relevancy objection and thus overrules said objection.

### 3.   Hamilton's Role on the De-icing Controller Project.

Plaintiff requests numerous documents, specifically Request Nos. 2-5, 7, 9-12, 14, 29 and 57, related to Defendant Hamilton's role on the Deicing Controller Project.

**Document Request No. 2**

Document Request No. 2 seeks "all contracts between Hamilton and any other party related to or in connection with any component of the propeller deicing system."[36]  Defendants argue that it cannot produce such documents, as there was no contract between Hamilton and Ratier regarding the deicing project, only a non-disclosure agreement, which defendants have already produced.[37] Therefore, defendants allege that they have no responsive documents to Request No. 2.  This is not a proper objection, rather a statement of fact.[38]  Moreover, plaintiff is not simply seeking contracts between Hamilton and Ratier regarding the deicing project, but between Hamilton and "any other party."  Thus, while defendants cannot produce documents that are non-existent, the court orders

---

[35] *Id.*

[36] *Id.*

[37] *Defendants' Response in Opposition to Plaintiff's Motion to Compel* (Doc. 90) at p. 7.

[38] *Cory v. Aztec Steel,* 225 F.R.D. 667, 671 (D. Kan. 2005).

defendants to produce to plaintiff all documents in their possession or under their control that are responsive to Document Request No. 2.

### Document Request No. 3

Under Request No. 3, plaintiff requests discovery of:

All bids, proposals, submittals, or other documents submitted by any person, entity, or company to either Defendant in connection with the original design, development, manufacture, assembly, testing, and delivery of the propeller deicing system."[39]

Defendants agree to produce such non-privileged remaining documents responsive to the request while not waiving their vagueness objection to the language "complete the design, development, manufacture, assembly, testing and delivery."[40]  The court has already overruled this objection as to Document Request No. 51, and overrules defendants' objection here.  The court orders defendants to produce all remaining documents responsive to Request No. 3.

### Document Request No. 5

Regarding Document Request No. 5, defendants object to the incorporation of the terminology 'terminated' as inferring that defendants unilaterally 'terminated' plaintiff, but agree to produce any remaining responsive documents.  Defendants' objection is not a proper discovery objection.  Thus, the court notes defendants' belief that plaintiff misused the word "terminated" and requires defendants to produce any remaining documents responsive to Request No. 5.

### Document Request Nos. 10-12, 14 and 30

Document Request Nos. 10-12 and 14 seek documents and communications regarding the selection of Nord-Micro to design, develop, manufacture, assemble, test of the propeller deicing

---

[39] *Plaintiff's Motion to Compel* (Doc. 80) (Exhibit B).

[40] *Id.*

controller.[41]  Document Request No. 30 seeks "all employee time records and expenses records of Nord-Micro related to the propeller deicing system for the A400M Aircraft."[42]  Defendants object to the relevancy of these requests, arguing that these requests relate to a party not privy to the claims, Nord Micro.

Request No. 14 seeks "all documents concerning, relation to or evidencing any communications between Hamilton and Nord-Micro regarding any component of the propeller deicing system for the A400M project."  The court finds that Request No. 14 does not appear facially relevant to any of plaintiff's claims.  Similarly, any documents evidencing such communications "within Nord-Micro", as sought by Request No. 10, does not appear facially relevant.  Moreover, Requests No. 11 and 12 which seeks documents evidencing "criteria utilized by either Defendant in" "selecting"[43] or "terminating"[44] "Nord-Micro to design . . . the propeller deciding controller for the A400M aircraft" and Request No. 30 seeking employee time records of Nord-Micro do not appear facially relevant to any of the parties' claims or defenses.

The court has reviewed plaintiff's complaint and amended complaint and has found no reference to Nord Micro. Plaintiff's complaint and amended complaint note that defendant Hamilton is a subsidiary of United Technologies Corporation and defendants' response to the present motion informs the court that Nord Micro is "another company that is owed by United Technologies."[45]  Plaintiff's request for admissions assert that defendant Ratier hired Nord Micro to work on the

---

[41] *Id.*

[42]*Id.*

[43]Request No. 11.

[44]Request No. 12.

[45]*Defendants' Response in Opposition*(Doc. 90) at p.  8.

deicing project *prior* to Ratier's hiring of plaintiff.[46]  Yet, even considering this relationship alleged

by plaintiff, the relevance of documents between Nord Micro and defendants related to the deicer

project which occurred *prior* to plaintiff's relationship with defendants does not appear facially

relevant.

Thus, plaintiff has the burden of showing the relevancy of these discovery requests,[47] a burden

plaintiff has failed to meet.  Plaintiff argues that these requests are relevant because "Hamilton's Role

on the Project and relationship to Ratier are vital to ICE's claims in this action."[48]  The court finds

this argument insufficient to demonstrate the relevancy of these requests.  Thus the court sustains

defendants' relevancy objection as it relates to Request Nos. 10-12, 14 and 30.

**Document Request No. 29**

In Request No. 29 plaintiff requests discovery of "all employee time records and expense

records of the defendants related to the propeller deicing system for the A400M aircraft."[49]

Defendants object to this request on the ground of relevancy, and argue that Request No. 29 does not

appear to related to a claim or defense in the parties' dispute.[50]  After reviewing the record, the court

agrees, and finds Request No. 29 does not appear relevant on its face.  As such, it is plaintiff's burden

to demonstrate Request No. 29's relevancy,[51] a burden plaintiff has failed to meet.  Plaintiff's only

argument as to the relevancy of this requests is that "Hamilton's Role on the Project and relationship

---

[46]*Plaintiff's Motion to Compel* (Doc. 80)(Exhibit D)(Request for Admission Nos. 14-18).

[47] *Pulsecard, Inc. v. Discover Card Services*, 168 F.R.D. 295, 309 (D. Kan. 1996).

[48]*Plaintiff's Motion to Compel* (Doc. 80) (Exhibit B).

[49] *Id.*

[50]*Defendants' Response in Opposition* (Doc. 90) at p.  8.

[51]*Pulsecard, Inc.*, 168 F.R.D. at  309.

14

to Ratier are vital to ICE's claims in this action."[52]  This contention is insufficient to justify the relevance of Hamilton's employee time records and expenses records for the deicing project.  The court finds that plaintiff  has failed to substantiate its burden of relevancy and therefore sustains defendants' relevancy objection to document Request No. 29.

### 4.      Ratier's Other Contracts with Artus - Document Request Nos. 34-36.

Plaintiff asserts that defendants hired Artus to work on the deicer project after defendants had terminated plaintiff.[53]  Plaintiff requests discovery under Request Nos. 34-36,  related to any pre-existing or expected business relationships that either defendant has had or will have with the Substituted Party, including documents sufficient to understand the nature of such a pre-existing or future relationship.[54]  Request No. 34 seeks "if either defendant has a preexisting business relationship with the Substituted Party, produce sufficient documents or business records in order to understand the general nature of that relationship, including *any prior aircraft projects* or other projects."[55]  Request No. 35 states "[i]f either defendant has an expected business relationship with the Substituted Party in connection with other aspects of A400M Project or has an expected or anticipated business relationship on *other matters or projects*, produce sufficient documents, or business records, to describe the general nature of that expected relationship."[56]  Request No. 36 seeks "[i]f either defendant has a business relationship with the Substituted Party in connection with other aspects of the A400M Project or has a business relationship *on other matters or projects*,

---

[52] *Plaintiff's Motion to Compel* (Doc. 80) (Exhibit B), at p. 6.

[53] *Id.* at. 3.

[54]  *Id.*

[55] *Id.* (emphasis added).

[56]  *Id.* (emphasis added).

produce sufficient documents, or business records to describe the general nature of that relationship, including any other aircraft projects."[57]

Defendants raised overbreadth, unduly burdensome, and relevancy objections to these requests.[58]   However, defendants' response to the present motion states:  "Ratier has not refused to produce its other contracts with Artus that relate to aspects of the A400M project other than the deicing controller.  To the contrary, Defendants' counsel informed ICE's counsel prior to the filing of ICE's Motion that Ratier <u>would</u> produce those contracts."[59]   Plaintiff's reply argues that defendants' production of Raiter's other contracts with Artus concerning the A400M project include redactions.  Plaintiff argues that there is no basis for these redactions because the Joint Protective Order between the parties would protect the confidentiality of any proprietary information.  Plaintiff asks the court to order Raiter to immediately produce "complete, unredacted, copies of all contracts, including all drafts, it has with Artus concerning the A400M project."[60]   Defendants' surreply informs the court that it only redacted information on one page of one contract because that information "relate[ed] solely to projects other than the A400M."[61]

The court agrees that any contracts between Raiter and Artus that do *not* relate to the A400M project would not appear facially relevant.  These requests seek information about the relationship between defendants and the Substituted party regarding "other matters or projects arguments" not related to the A400M project.  Thus, these requests to not appear facially relevant.  Further,

---

[57]  *Id.* (emphasis added).

[58]*Id.*

[59]*Defendants' Response in Opposition* (Doc. 90) at pp. 10-11.

[60]*Plaintiff's Reply* (Doc. 99) at p. 11.

[61]*Defendants' Surreply* (Doc. 107) at p. 2.

plaintiff's contention that Request Nos. 34-36 are necessary for plaintiff to "fully ascertain the relationship between the defendants and Artus, including whether Artus is being compensated under other contracts for work performed developing the de-icing controller"[62] constitutes insufficient support for the relevancy of its requests.  Thus, the court sustains defendants' relevancy objections as to Request Nos. 34-36.

### 5.    Deicing Controller Project Pricing and Costs.

Plaintiff requests various documents relating to the deicing controller project's costs and pricing.  Specifically, plaintiff asks the court to compel defendants to produce remaining documents responsive to Request Nos. 30, 32, 33, 43-46 and 50.[63]

Defendants argue that plaintiff failed to confer regarding Request Nos. 30, 32, 33  and 45 in violation of D. Kan. Rule 37.2 and Fed. Rule Civ. P. 37.[64]  D. Kan. Rule 37.2 provides in part that "[t]he court will not entertain any motion to resolve a discovery dispute . . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion." Local Rule 37.2 defines "a reasonable effort to confer" as requiring "more that mailing or faxing a letter to the opposing party." Instead it requires "that the parties in good faith converse, confer, compare views, consult and deliberate or in good faith attempt to do so."[65]  In support of their argument, defendants have attached several letters from plaintiff which detail the parties' discovery disputes and cite several specific interrogatories and requests for production in dispute, but do not cite Request Nos. 30, 32, 33 or  45.

---

[62] *Id.*

[63]The court ordered production of documents responsive to Request Nos. 43 and 44  *See supra* at p. 3.

[64]*Defendants' Response in Opposition* (Doc. 90) at p. 13.

[65]D. Kan. Rule. 37.2.

The fact that the extensive written discussion between the parties does not specifically mention these requests does not mean that plaintiff has necessarily violated either D. Kan. Rule 37.2 or Fed. R. Civ. P. 37.  As required by Fed. Rule Civ. P. 37(a)(2)(B)[66] and D. Kan. Rule 37.2 defendant's motion to compel certifies that plaintiff's counsel has "communicated and conferred with counsel for defendants concerning these discovery disputes pursuant to Local Rule 37.2."[67] Moreover, plaintiff claims it  "repeatedly raised during discovery conferences the issues of whether the defendants produced all of Artus', and the defendants, cost and price information related to the de-icing controller."[68]  Specifically, "[p]laintiff raised this issue in response to defendants [sic] claim that they had produced all cost and price information.  It was not a compartmentalized request as defendants assert, but part of plaintiff's boarder inquiry into defendants production of all cost and price information on the project."[69]

Considering the amount of discovery in dispute, the degree of discussion between the parties regarding their various discovery issues, and plaintiff's specific contention that a good faith discussion between the parties occurred as to pricing and costs for the deicer project, the court believes the plaintiff has met its requirement to confer.  Thus, the court overrules defendants' failure to meet and confer objections to Request Nos. 30, 32, 33  and 45.[70]

**Document Request Nos. 31-33**

Request No. 31 seeks time records and expense records from the Substituted Party relating to

---

[66]Fed. Rule Civ. P. 37(a)(2)(B).

[67]*Plaintiff's Motion to Compel* (Doc. 80) at p. 1.

[68]*Plaintiff's Reply* (Doc. 99) at p. 6

[69] *Id.* at 6-7.

[70]Request No. 30 is denied on other grounds.  *See supra* at p. 14.

development of the propeller deicing system.[71]  Request Nos. 32 and 33 seek discovery regarding

billing and invoices submitted by "either defendant to the Project Developer" regarding the propeller

or propeller deicing system for the A400M aircraft.[72]  Defendants object to these requests on three

grounds: overly broad, unduly burdensome, and relevance.

The court will first address defendants' overbreadth objection.  A party objecting to discovery

on the basis of overbreadth "must support its objection, unless the request appears overly broad on its

face."[73]  The court finds none of these requests appear overly broad on face and that defendants have

failed to carry their burden to substantiate this objection.  The court overrules this objection regarding

Request Nos. 31-33.

Defendants also object to the allegedly unduly burdensome nature of the request.  A party

opposing discovery on these grounds has "the burden to show facts justifying their objection by

demonstrating that the time or expense involved in responding to requested discovery is unduly

burdensome."[74]  Defendants have not shown or explained what expenditures of time, effort, or money

would be necessary to answer the document requests or that such expense would be unreasonable in

relation to the benefits secured by the discovery.  Because defendants have failed to substantiate their

unduly burdensome objection, the court overrules this objection.

Defendants' last objection regarding these requests is relevancy.  On their face, these requests

appear relevant to the claims and defenses of both parties as they request documents related to the

personnel and material expenditures of the A400M propeller and propeller deicing system project.

---

[71] *Plaintiff's Reply* (Doc. 99) at p. 7.

[72] *Id.*

[73] *Cory v. Aztec Steel,* 225 F.R.D. 667, 672 (D. Kan. 2005).

[74] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D. Kan. 2002).

Plaintiff explains that "[t]his information directly relates to ICE's damages as well as to defendants'

claim that Artus could provide the de-icing controller for a cheaper price, which they used as

justification for terminating ICE."[75]  Defendants argue that these requests are not relevant to the

extent they seek information regarding damages because "ICE's own damages calculation . . . makes

no reference to anyone's cost other than ICE's."[76]  However, plaintiff's amended complaint

repeatedly suggests that plaintiff seeks some sort of expectancy damages, contingent on the

defendants' own profitability.[77]  Specifically, plaintiff's breach of contract and implied breach of

contract claims pray for damages "including . . . lost profits, lost business opportunities, and other

monies in an amount to be proven at trial . . ."[78]  Thus, there is at least "any possibility" that the

information sought  "may be relevant to the claim or defense of any party."[79]

Moreover, the court finds that Request Nos. 30-33 appear facially relevant as to plaintiff's

claims that defendants breached the parties' agreement.  Plaintiff claims that defendants breached

their agreements with plaintiff, in part, by negotiating with another company as to price and terms

"comparable to that which it had refused to considered with ICE when it terminated ICE."[80]  As the

court finds these requests relevant on their face and because defendants have failed to substantiate

---

[75] *Plaintiff's Motion to Compel*  (Doc. 80) at p. 7.

[76] *Defendants' Response in Opposition* (Doc. 90) at p. 13.

[77] *Amended Complaint* (Doc. 108).  Plaintiff claims that because defendants assured that "ICE would be timely paid its non-recurring expenses, that were *at least* $ 3 million in sales based on booked aircraft orders, and an *expected ten times that amount* expected during the life of the project, ICE agreed to participate." *Id*. at 4 (emphasis added).  Plaintiff also argues that defendant Ratier repeatedly represented to ICE that it had been selected as "for the design and manufacture of the de-icing controller for the propellor system on the A400M project, which was expected to produce millions of dollars in sales to ICE." *Id*. at 5.  Plaintiff also claims that defendants represented to plaintiff that "in excess of five million dollars in sales were expected by ICE." *Id.* at 8.

[78] *Id*. at pp. 16-18.

[79]  *Sonnino v. University of Kansas Hospital Authority*, No. 02-2576, 2004 U.S. Dist. LEXIS 6220 at *6-7 (D. Kan. April 8, 2004)(citation omitted).

[80] *See Amended Complaint* (Doc. 108) at p. 15.

their relevancy objections, the court overrules defendants' relevancy objections to Request Nos. 31-33.

**Document Request No. 45**

In Request No. 45 plaintiff seeks documents concerning, relating to, or evidencing the compensation and gross profits received or expected to be received by either defendant in "connection with the deicing system actually utilized in the development and manufacture of the propeller system for the A400M project."[81]  Defendants object to the relevance of this request.

On its face, this document request appears relevant to plaintiff's claims to calculate damages. Thus, the court finds that this discovery request appears relevant and defendants have failed to substantiate their relevancy objection with evidence demonstrating the potential harm to be presented by such evidence.  The court hereby overrules defendants' objection.

**Document Request 46**

Document Request No. 46 requests discovery regarding:

> All documents concerning, relating to, or evidencing any submittals, bids, proposals, or other documents, received by either of Defendants in connection with the completion of the design, development, manufacture, assembly, testing and delivery of the propeller deicing system actually utilized by Defendants and/or Airbus Militarie."[82]

As with objections to former document requests, defendants object to the vagueness of the phrase "completion of the design, development, manufacture, assembly, testing and delivery."  This court has already overruled this objection and does so here.  The court orders defendants to produce documents responsive to Request No. 46.

**Document Request No. 50**

---

[81] *Plaintiff's Motion to Compel* (Exhibit B).

[82] *Id.*

In document Request No. 50 plaintiff seeks:

> All purchase orders, invoices, bills or other documents requesting payment submitted to either Defendant by the person, company or entity retained to complete the design, development, manufacture, assembly, testing, and delivery of the deicing system actually utilized by Defendants and/or Airbus Militarie."[83]

Defendants object that this request is vague, overbroad, unduly burdensome, and not seeking relevant information.  However defendants agree to produce such responsive documents related to Request No. 50.   Here, the court overrules defendants' vagueness objection as it did with Requests Nos. 46.

The court similarly overrules defendants' overbreadth objection.  A party objecting to discovery on the basis of overbreadth "must support its objection, unless the request appears overly broad on its face."[84]  The court finds that Request No. 50 does not appear overly broad on its face and defendants have failed to substantiate this objection.

Defendants also object to the document request on the grounds that it is unduly burdensome. A party opposing discovery on these grounds has "the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[85]  In support of this objection, defendants have not shown any substantial expenditures of time, effort, or money which would be necessary to answer the document request or that such expense would be unreasonable in relation to the benefits secured by the discovery.  The court hereby overrules defendants' objection.

On its face, the request appears relevant to the claims and defenses at hand as it relates to the design chosen for the deicing propeller project for which plaintiff bases its claims and damage

---

[83] *Id.*

[84]*Cory v. Aztec Steel*, 225 F.R.D. 667, 672 (D. Kan. 2005).

[85] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002).

strategies.[86]  As the court finds this discovery request appears relevant and defendants have failed to substantiate their relevancy objections.  The court overrules defendants' objection.  The court further orders defendants to produce all remaining documents responsive to Request No. 50.

**B.       Interrogatories**

As a general matter, the Federal Rules of Civil Procedure "require that each interrogatory shall be answered fully.  The rules allow for proper objections to an interrogatory, but do not allow an answer to be limited in the purpose for which it is provided."[87]

Plaintiffs have submitted to defendants various interrogatories relating to the claims and defenses at hand.  Specifically,  plaintiff seeks the court to compel defendants to provide interrogatory answers to Interrogatory Nos. 2, 4, 6(c), 7, 9, 12 and 15.

**Interrogatory Nos. 2 and 6(c)**

Defendants state they served amended answers to Interrogatory Nos. 2 and 6(c) to plaintiff on October 20, 2006.  As defendants have provided such information, plaintiff's motion to compel defendants' response to Interrogatory Nos. 2 and 6(c) is moot and therefore denied.  However, defendants are reminded of their duty to supplement such responses under Fed. R. Civ. Pro. 26(e) and the duty to provide discovery responses in good faith or risk sanctions under Fed. R. Civ. Pro. 37.

**Interrogatory No. 4**

Interrogatory No. 4 asks defendants to "Identify all components, services, or work which You have ever been under contract to provide in connection with the A400M Project, the persons or entities You are to furnish the work or components to or for, the expected quantity, and original unit prices, and any modifications to the pricing, and total expected compensation based on projected

---

[86]*Defendants' Response in Opposition* (Doc. 90) (Exhibit B).

[87]*Walls v. International Paper Co.*, 192 F.R.D. 294, 297 (D. Kan. 2000)(citing Fed. R. Civ. P. 33(b)).

orders."[88]  Defendants have provided evidence to the court that they have provided information

related to the components, services, and work defendants were under contract to provide, as of

September 6, 2006.[89]

> Defendants object to Interrogatory No. 4 on the basis of relevancy.  Defendants contend that:

> ICE makes no effort to identify any possible relevance to the issues in this case or information concerning how many Auxillary Power Units Hamilton expect to provide Airbus or how much Ratier is going to be paid by Airbus for providing the A400M Trimmable Horizontal Stabilizer Actuator.  The additional information that ICE seeks concerning these other components of the A400M that Defendants are contracted to provide is irrelevant on its face.[90]

The court agrees.  Even considering plaintiff's claim of expectancy damages, these damages could

have no relation to the various details concerning these other components of the A400M project.  As

Interrogatory No. 4 does not appear facially relevant, plaintiff must prove its relevancy, a burden

plaintiff has failed to meet. Thus, the court sustains defendants' relevancy objection to Interrogatory

No. 4.

**Interrogatory No. 7**

> Interrogatory No. 7 requests a variety of information relating to the "Substituted Party's

design, development, testing, assembly, manufacture, production and delivery of the propeller

deicing controller for the A400M Aircraft."[91]  In the present motion, plaintiff seeks answers to all of

the discrete sub-parts (a)-(h), excepting (b).  Defendants allege that they have already produced a

written response to 7(a), which this court confirms by examination of Exhibit 8 of *Defendants'*

---

[88] *Plaintiff's Motion to Compel*  (Doc. 80) (Exhibit A).

[89] *Defendants' Response in Opposition* (Doc. 90) (Exhibits 2 and 12).

[90] *Id.* at p. 15-16.

[91] *Plaintiff's Motion to Compel*  (Doc. 80) (Exhibit A).

*Answer to Plaintiff's Motion to Compel.*[92]  Therefore, as to Interrogatory 7(a), plaintiff's motion to compel is denied.

Interrogatory No. 7(c) seeks details regarding "The Substituted Party's development and design costs, including all time and expenses, actually incurred to date."[93]  In response to Interrogatory No. 7(c), Ratier has provided several relevant document numbers, as permitted under Fed. R. Civ. P. 33(d).[94]  The same is true of 7(d).[95]  Therefore, plaintiff's motion to compel Interrogatory No. 7(c) and 7(d) is denied.

Interrogatory No. 7(e) seeks  information regarding the  "[t]otal expected compensation to be paid Substituted Party and a description of its calculation, including number of projected controller units, any time, costs and expenses to be reimbursed, and any other consideration such as on other contracts of business."  Defendants object as to relevance, as the Interrogatory seeks information "relating to projects other than the propeller deicing controller for the A400M.[96]  Without waiving such an objection, defendants have referred plaintiffs to four document numbers, pursuant to Fed. R. Civ. P. 33(d)**.**  On its face the request appears relevant to the claims and defenses at hand, as it relates to the design chosen for the deicing propeller project for which plaintiff bases its claims and damage strategies.[97]  Specifically, this request could reveal information regarding plaintiff's expectancy

---

[92]*Defendants' Response in Opposition* (Doc. 90)(Exhibit 8) at p. 8.

[93]  *Id.* at 7.

[94]  *Defendants' Response in Opposition* (Doc. 90) (Exhibit 10) at pp.  8-9.  *See also* Fed. R. Civ. P. 33(d), which permits a party to provide a business record in lieu of a written response upon "the party upon whom the interrogatory has been served or from an examination, audit, or inspection of such business records" if "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served."

[95]*Id.*

[96]  *Id.*

[97]*Plaintiff's Motion to Compel* (Doc. 80)(Exhibit A).

damages.  The court holds that Interrogatory No. 7(e) appears facially relevant and that defendants have failed to substantiate their relevancy objection.  The court hereby overrules defendants' objection and orders defendants to produce an amended interrogatory response.

Defendants have similarly referred plaintiffs to document numbers regarding Interrogatory Nos.7(e) and 7(c)[sic] - (e) [sic].[98]  In addition, defendants have promised to file an amended response to Interrogatory No. 7(c)[sic].[99]  The court therefore order defendants to produce the amended response to Interrogatory No. 7(c)[sic].  As defendants have already provided relevant business records in response to Interrogatory Nos. 7(d)[sic] - 7(e)[sic], the court denies plaintiff's motion to compel further responses to these interrogatories.

**Interrogatory No. 9**

Interrogatory No. 9 asks defendants to "[d]escribe in detail the design of the propellor [sic] deicing controller presently proposed by the Substituted Party and/or by the Defendants for use on the A400M aircraft, list each of its components, its weight, its physical size, its configuration, its electronic deicing operation, and list in detail the design changes made to the controller from June 1, 2005 to the present, and the date(s) made."

Defendants object to Interrogatory No. 9 on the premise that it is "unduly burdensome and not reasonably capable of answer in narrative form."[100]  Despite their objection, defendants have provided several documents responsive to plaintiff's request as required under Fed. Rule Civ. P. 33(d).[101] Defendants argue that they "produced and specifically identified drawing, specification

---

[98]*Defendant's Response in Opposition* (Doc. 90)(Exhibits 10 and 12).

[99]*Plaintiff's Reply* (Doc. 99)(Exhibit D) at p. 13.

[100]*Defendant's Response in Opposition* (Doc. 90) (Exhibits 10 and 12).

[101]*Id.* at 7.

documents, coordinated memoranda and emails containing communication about the deicing

controller design from which the information sought can be ascertained by ICE as readily as by

defendants."[102]

Plaintiff contends that "[d]efendants are engaged in a shell game."  Plaintiff

explains that:

> [o]ne of the core issues in this litigation is the extent Artus, and the defendants, stole ICE's
> design of the de-icing controller.  The full extent of the theft of ICE's design can only be
> ascertained by a complete disclosure of Artus' intended design.  Defendants claim that they
> will not produce copies of all these documents because they are in the possession of Artus.
> Thus, defendants citation to documents it has produced concerning the design, in lieu of
> actual written description, is woefully incomplete because of defendants failure to produce all
> design documents.[103]

The record offers some support for plaintiff's contentions.  In an attached signed affidavit an

employee of defendant Ratier-Figeac asserts that "Artus is not required by the contract with Ratier to

deliver to Ratier copies of detailed schematics or mechanical drawings of either the SCU or the RCU.

Ratier has the right to view such drawings at Artus's [sic] location."[104]  Thus, the court can infer that

while Ratier might not have direct custody and control over certain detailed schematics or

mechanical drawings created by Artus, it has access to pertinent data to which plaintiff does not.

Defendants have made no representation to the court that information it could obtain by viewing

information at Artus' location is also contained in the documents it references.  Thus, answering

Interrogatory No. 9 under Rule 33(d) is inappropriate because the answer cannot be "derived or

ascertained from the business records" of defendants.

Defendants also object to Interrogatory No. 9 as "unduly burdensome" and "not reasonably

---

[102]*Id.* at 19.

[103] *Plaintiff's Reply* (Doc. 99) at p. 13-14.

[104]*Defendants' Response in Opposition* (Doc. 90)(Exhibit 7).

capable of answer in narrative form." The court overrules these objections because defendants have failed to "show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[105] Defendants' statement that "[a] narrative response to this Interrogatory would have been dozens of pages long and would never be as accurate or complete as the design documents themselves"[106] is insufficient. Further, the "mere fact that compliance with an inspection order will cause great labor and expense or even considerable hardship and the possibility of injury to the business of the party form whom discovery is sought does not itself require denial of the motion."[107] Thus, the court will order defendants to fully and completely answer Interrogatory No. 9.

**Interrogatory No. 12**

Interrogatory No. 12 seeks a variety of information from defendants regarding costs and expenses it incurred with respect to the propeller system utilized in the A400M project. Defendants object to Interrogatory No. 12 on the grounds that it is overbroad, unduly burdensome and not relevant. The court has overruled these unsubstantiated boilerplate objections in the context of similar production of documents and does so here. Thus, the court orders defendants to fully answer Interrogatory No. 12.

**Interrogatory No. 15**

Interrogatory No. 15 states:

Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not a qualified admission: (a) state the number of the request; (b) state all facts upon which you base your response; (c) state the names, addresses and telephone numbers of all persons who have knowledge of those facts;

---

[105] *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D. Kan. 2002).

[106]*Defendants' Response in Opposition* (Doc. 90) at p. 18.

[107] *Snowden v. Connaught Lab., Inc.,* 137 F.R.D. 325, 332-33 (D. Kan. 1991).

(d) identify all documents and other tangible things that support your response and state the name, address, and telephone number of the person who has each document or thing.[108]

This interrogatory is, in essence, a contention interrogatory.  Defendants object to Interrogatory No. 15 on the ground that it is irrelevant, that the plaintiff failed to confer with defendants regarding this interrogatory, and because Interrogatory No. 15 is a contention interrogatory.[109]

### a.  Contention Interrogatory

Contention interrogatories inquire "into a party's contention in the case and the factual basis therefore."[110]  Fed. Rule Civ. P. 33(c) "expressly recognizes and permits the use of contention interrogatories."[111]  It provides that "an interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to the fact or the application of law to fact, . . . ."[112]

Contention interrogatories can be useful, as they "may be used to narrow and define the issues for trial, and they enable the propounding party to determine the proof required to rebut the responding party's position."[113]  However, courts in the District of Kansas have held that contention interrogatories seeking "all facts supporting allegations *within one paragraph of a complaint* is overly broad and unduly burdensome."[114]  Put another way, contention interrogatories are overly broad and unduly burdensome on their face when they seek "'all facts' supporting a claim or a

---

[108]*Defendants' Response in Opposition* (Doc. 90)( Exhibit 8).

[109]*Id.* (Exhibit 8) at p. 14.

[110] *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton,* 136 F.R.D. 682, 684 (D. Kan. 1991).

[111]*DIRECTV, Inc. V. Pallesen*, No. 03-2281, 2005 U.S. Dist. LEXIS 9534, at *8-9 (D. Kan. May 12, 2005).

[112] Fed. R. Civ. P. 33(c).

[113] *Western Resources, Inc. v. Union Pacific R.R. Co.,* 2002 U.S. Dist. LEXIS 1004 *5 (D. Kan. 2002) (citing *Steil v. Humana Kansas City, Inc.* 197 F.R.D. 445, 445 (D. Kan. 2000)).

[114] *Id.* (emphasis added).

defense."[115]

Interrogatory No. 15 does not seek all facts supporting a party's claim or a defense because the requests for admissions do not ask defendants to admit or deny claims or defenses.[116]  The court has reviewed plaintiff's First Request for Admissions,[117] on which Interrogatory No. 15 is based, and finds that it does not ask defendants to admit or deny claims, defenses, or "allegations within one paragraph of a complaint."  The underlying requests for admissions do not ask defendants to "[l]ist each . . . defense" and "[a]ll facts which support each such defense"[118] nor do the requests for admissions seek admissions or denials of paragraphs and allegations taken directly from the complaint.  Thus, the court finds that plaintiff's use of Interrogatory No. 15 as a contention interrogatory is not overly broad and unduly burdensome, and overrules defendants' objection.

### b.        Failure to Confer

Defendants also contend that the court should not compel a further response to Interrogatory No. 15 because the parties never conferred prior to the filing of this motion, in violation of D. Kan. Rule 37.2.  The court has already overruled defendants' failure to confer objection and does so here.  The fact that the extensive written discussion between the parties does not specifically mention this particular interrogatory does not mean that plaintiff has necessarily violated either D. Kan. Rule 37.2 or Fed. R. Civ. P. 37.  As required by Fed. Rule Civ. P. 37(a)(2)(B)[119] and D. Kan. Rule 37.2 the

---

[115] *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006).

[116] *See Plaintiff's Motion to Compel* (Doc. 80)(Exhibit E).

[117] *Id.*

[118]*See Moses*, 236 F.R.D. at 673 (finding such a contention interrogatory overly broad and unduly burdensome); *Lawrence v. First Kansas Bank & Trust Co.*, 169 F.R.D. 657, 660-61 (D. Kan. 1996)(finding contention interrogatories that requested a party to identify  "[a]ll facts which you contend support your refusal or failure to admit in the particular paragraph [of] plaintiffs [sic] Complaint" overly broad and unduly burdensome).

[119]Fed. Rule Civ. P. 37(a)(2)(B).

motion to compel certifies that plaintiff's counsel has "communicated and conferred with counsel for defendants concerning these discovery disputes pursuant to Local Rule 37.2."[120]

Considering the amount of discovery in disputes, the degree of discussion between the parties regarding their various discovery issues, and plaintiff's contention that a good faith discussion between the parties occurred, the court believes the plaintiff has met its requirement to confer.  Thus, the court will compel defendants to answer Interrogatory No. 15.

## C.        Requests for Admission

Requests for Admission are governed by Fed. R. Civ. P. 36.   Rule 36(a)  permits parties to serve upon any other party:

> A written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request . . . .[121]

While the court cannot strike a response to a request for admission, it can determine the sufficiency of the response.[122] The response must "fairly meet the substances of the requested admission" in order for the court to consider it sufficient.[123]

## Request for Admission No. 6

In Request for Admission No. 6 plaintiff requests that defendants provide admissions regarding the following statement: "Ratier and Hamilton teamed to develop the FH385 eight-bladed propeller system for the A400M military transport aircraft."[124]  Defendant's object to the request on

---

[120]*Plaintiff's Motion to Compel* (Doc. 80) at p. 1.

[121] Fed. R. Civ. P. 36(a).

[122] *Id.; see also Harris v. Oil Reclaiming Co.*, 190 F.R.D. 674, 678 (D. Kan. 1999) (citation omitted).

[123]  Fed. Rule Civ. P. 36(a); *Harris*, 190 F.R.D. at 677.

[124]  *Plaintiff's Motion to Compel* (Doc. 80) (Exhibit D- *Defendant's Responses to Plaintiff's First Request for Admissions* at p. 2).

the grounds that the phrase "teamed to develop" is vague and ambiguous.[125]

The party objecting to a discovery request bears the burden to show such vagueness or ambiguity.[126]  Defendants have failed to do so here.  Defendants could easily use their reason and common sense to interpret the phrase "teamed to develop."  Therefore, this court overrules defendants' objection and directs defendants to answer Request for Admission No. 6.

**Request for Admission Nos. 53 and 54**

In Request for Admission No. 53 plaintiff requests that defendants admit or deny the following statement:

> Hamilton has made public announcements concerning the size and value of contracts of the A400M aircraft project, which announcements are based, in part, upon the representations by Airbus Military concerning the actual and projected orders for the A400M Aircraft.[127]

Request No. 54 requests admission or denial of the statement:

> Hamilton's public announcements concerning the size and value of contracts on the A400M aircraft project were based in part on representation by Airbus Military as to the number of actual orders and the number of projected orders for the aircraft.[128]

Defendants object to the relevance of these requests.  On their face the requests appear relevant and relate directly to plaintiff's claims against defendants and its damage calculations.  Therefore, the court overrules defendants' objection and directs defendants to provide a response to Request for Admission Nos. 53 and 54.

**III.    Sanctions**

---

[125]  *Id.*

[126]  *W. Res., Inc. v. Union Pac. R.R. Co.,* 2002 U.S. Dist. LEXIS 1004 (D. Kan. Jan. 21, 2002) (citing *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. Apr. 18, 2000)).

[127]  *Plaintiff's Motion to Compel* (Exhibit D, *Defendant's Responses to Plaintiff's First Request for Admission* at p. 11).

[128]  *Id.* at 12.

Under Fed. R. Civ. P. 37(a)(4)(C) when a court grants in part and denies in part a motion to compel, the court can "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner."  Whether to impose sanctions lies within the court's discretion.[129]  The court "must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[130]  In deciding whether to grant sanctions based on Rule 37(a)(4)(C), the court in *Mackey v. IBP, Inc*., found that  "[j]ustice requires that each party be responsible for its own costs and expenses incurred upon the motion [to compel]" because "[b]oth parties took legitimate positions on the motion [to compel]."[131]

Here, the court believes it appropriate and just for plaintiff and defendants to bear their own expenses and fees incurred in connection with the present motion because both parties took legitimate positions on the motion to compel.

Accordingly,

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel (Doc. 80) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that by **May 31, 2007**, defendants shall produce those documents sought by plaintiff's Document Request Nos. 2-5, 7, 9, 20-28, 31-33, 37-39 and 43-57; provide answers to plaintiff's Interrogatory Nos. 7(e), 9,12, 15; and respond to plaintiff's Requests for Admission Nos. 6, 53 and 54.

---

[129] *Barnes v. Akal Sec. Inc.*, No. 04-1350, 2005 U.S. Dist. LEXIS 33262, at *21 (D. Kan. December 9, 2005)(citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).

[130] *Id.* (citing *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999)).

[131] *Mackey v. IBP Inc.*, 167 F.R.D. 186, 207 (D. Kan. 1996).  *See also Lawrence-Leiter & Co. v. Paulson*, No. 96-2535, 1997 U.S. Dist. LEXIS, at *7 (D. Kan. June 23, 1997)(concluding that because "the parties took legitimate positions on the motion [to compel] . . . sanctions are not justified.").

**IT IS FURTHER ORDERED** that plaintiff's Motion to Compel is denied as to Document Request Nos. 10-12, 14, 29-30 and 34-36; and Interrogatory Nos. 2, 4, 6(c), 7(a), 7(c) - 7(d) and "7(c)[sic] - 7(e)[sic]" and defendants need not respond further to these discovery requests.

**IT IS SO ORDERED.**

Dated this 30th day of April, 2007, at Topeka, Kansas.

K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge