IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, a Kansas Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HAMILTON SUNDSTRAND CORPORATION, ) <br> ) <br> and ) <br> ) <br> RATIER-FIGEAC, S.A.S., a French Corporation, ) <br> ) <br> Defendants. ) | Case No. 05-4135-JAR |

**ORDER**

This matter comes before the court upon defendants' Motion for Protective Order (Doc. 158). Plaintiff has filed a response (Doc. 178) to which defendant Ratier has replied (Doc. 215). The issues are thus fully briefed and ripe for discussion. As discussed below, defendant's motion is granted in part and denied in part.

**I.     Background**

On March 26, 2007, pursuant to Rule 30(b)(6), plaintiff noticed defendant Ratier that plaintiff intended to take depositions of defendant Ratier's designated corporate representatives on April 10, 2007 at 9:00 A.M. at the law offices of plaintiff's counsel.[1]  This Notice also stated "Please note that the undersigned is willing to discuss and negotiate an alternative date for this deposition at a mutually convenient time."[2]  This Notice did not state that the location of the depositions were negotiable.

---

[1]Motion for Protective Order (Doc. 158) at (Exhibit 2).

[2]*Id.*

On April 2, 2007, defendants' counsel called plaintiff's counsel regarding this Notice and underlying deposition. This call lasted three minutes. On April 2, 2007, defendants filed the present motion seeking a protective order due to the "undue burden or expense" the 30(b)(6) depositions would impose.[3]

Specifically, defendant pray for an order "barring plaintiff ICE Corporation from taking the deposition of defendant Ratier-Figeac, S.A.S.'s corporate representative under Federal Rule of Civil Procedure 30(b)(6)" or "[i]f the Court allows the deposition to occur" for an order "requiring that any such deposition occur in France."[4] As yet another alternative, defendants asked that if the court were to require the depositions to occur and take place in the United States, defendants seek an order "requiring ICE to pay all expenses associated with travel to and from the State of Kansas and costs incurred during the witnesses' stay that may be incurred by defendant Ratier . . . ."[5]

## II. Certification Requirement

Fed. R. Civ. P. 26(c) provides in part "the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoying, embarrassment, oppression, or undue burden or expense" upon "motion by a party . . . accompanied by a certification that the movant has in good faith *conferred* or attempted to confer with other affected partes in an *effort to resolve the dispute without court action* . . . ."[6] To that end, our local rules instruct that "[e]very certification required by Fed. R. Civ. P. 26(c). . . related to the efforts of the parties to

---

[3]Motion for Protective Order (Doc. 158) at p. 4.

[4]*Id.* at 11.

[5]*Id.*

[6](Emphasis added).

2

resolve discovery or disclosure disputes shall describe with particularity the steps taken by all counsel to resolve the issue in dispute."[7] Indeed, D. Kan. Rule 37.2 instructs:

> The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26. . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to filing a motion. Every certification required by Fed. R. Civ. P. . . 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes shall describe with particularity the steps taken by all counsel to resolve the issue in dispute. A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult and deliberate or in good faith attempt to do so.

Regarding certification, defendants' motion states: "Pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 37.2, defendants counsel conferred with ICE's counsel by telephone on April 2, 2007. Specifically, defendants' counsel requested that ICE agree to withdraw the Rule 30(b)(6) deposition notice, but counsel for ICE refused to do so."[8] Plaintiff describes this phone call as "a 3 minute telephone conversation [which] peremptorily demanded withdraw of the 30(b)(6) deposition notice" followed less than an hour later by the filing of the present thirteen page motion.[9]

The court believes that defendants' efforts constitute an insufficient "*effort to resolve the dispute without court action*." A reasonable effort to confer "requires that the parties in good faith converse, confer, compare views, consult and deliberate or in good faith attempt to do so." The parties clearly failed to confer, compare views, consult and deliberate.

Even if the movant has failed to adequately confer, the court will generally decide the motion to compel on its merits when (1) the time for filing another motion has expired, (2) the respondent

---

[7]*See* D. Kan. Rule 37.2.

[8]Motion for Protective Order (Doc. 158) at p. 10.

[9]Response (Doc. 178) at p. 2. *See also id.* at 5-6.

3

opposes the motion on its merits and (3) the respondent offers no possibility of compromise.[10]

In the briefings before the court plaintiff has opposed the motion on its merits and offered no possibility of compromise. Considering the litigious filings by both sides, the court believes that the best course of action is to consider the motion on its merits.

As detailed below, the court grants the motion in part and denies the motion in part.

### III.  Standard

The party seeking the protective order has the burden of demonstrating good cause for it.[11] To establish good cause, the moving-party must offer "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[12] Whether to enter a protective order lies withing the court's discretion.[13]

A party may only obtain a protective order if the party demonstrates that the basis for the protective order falls within one of the categories enumerated in Rule 26(c).[14] Rule 26(c), the rule governing protective orders, provides in part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense".

Rule 30(b)(6) provides in part:
A party may in the party's notice . . . name as the deponent a public or private corporation . . . and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or

---

[10]*Id.*

[11]*Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)(citation omitted).

[12]*Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)).

[13]*Id.* (citing *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995)).

[14]*Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003).

managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . .  The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

**IV.     Discussion**

Defendants argue that the parties' took the depositions of five Ratier employees in February and that defendants would use these same witnesses for 30(b)(6) deposition purposes.  "Had Ice issued its Notice prior to the Ratier employees' depositions in early February, Ratier would have identified, prepared and produced appropriate individuals to act as corporate representatives."[15]  Defendants argue that defendants and their counsel expended a great deal of time and expense in preparation of these February depositions and to now depose these same individuals would require be an unreasonable burden.  Defendants also argue that Ratier's 30(b)(6) witnesses are "currently engaged on the A400M Project and work[] upwards of ten hours per day, five days per week" and to require these witnesses to stop working on this time sensitive project could cause significant expense and delay.[16]  Defendants further argue that the topics identified in the 30(b)(6) Notice are "duplicative of topics on which the Ratier employees were questioned" during their depositions and are thus redundant.[17]

**A.     Defendants arguments as to "undue burden and expense" are unpersuasive.**

The court finds that defendants have failed to meet their burden to demonstrate the necessity of a protective order to bar completely plaintiff from taking the deposition of defendant

---

[15] Motion for Protective Order (Doc. 158) at p. 5.

[16] *Id.* at 3.

[17] *Id.* at 5.

5

Ratier's designated corporate witnesses under 30(b)(6). Plaintiff argues: "[j]ust because Ratier may choose to designate certain individuals as its corporate designees whose fact depositions have already occurred does not insulate Ratier from the requirements of Rule 30(b)(6). Such a finding would eviscerate Rule 30(b)(6)."[18] The court agrees.

Rule 30(b)(6) itself provides that "subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules." Moreover, as a general principle "methods of discovery may be used in any sequence . . ."[19] In the instant case, defendants fail to cite, and the court has failed to find, any authority whereby the previous deposition of certain witnesses prevents 30(b)(6) depositions of those same witnesses. In fact, Rule 30(b)(6) anticipates such an occurrence, wherein a party believes the opposing party's witnesses have "sandbagged" during their testimony in their individual capacities.

As articulated in *Sprint Communications Co., L.P. v. The.globe.com, Inc.*,[20]

> Thus, Rule [30(b)(6)] makes clear that a party is not permitted to undermine the beneficial purpose of the Rule by responding that no witnesses is available who personally has knowledge concerning the areas of inquiry. If need be, the responding party 'must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits.' Any other interpretation of the Rule would allow the responding corporation to 'sandbag' the deposition process.[21]

That such depositions could be onerous to the corporation- party makes little difference.

> Although the Court readily acknowledges that the requirements listed above may be onerous, the burden upon such a responding entity is justified since a corporation can only act through its employees. These requirements negate any possibility that an inquiring party will be

---

[18]Response (Doc. 178) at p. 9.

[19]*See* Fed. R. Civ. P. 26(d).

[20]236 F.R.D. 524 (D. Kan. 2006).

[21]*Id.* at 528.

6

directed back and forth from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding upon that corporation.[22]

Here, plaintiff argues that Ratier's corporate representatives, when testifying in their individual capacities, "repeatedly claimed lack of knowledge and deferred to other Ratier witnesses."[23] Regardless of whether or not "sandbagging" occurred, plaintiff was entitled to notice 30(b)(6) witness depositions of Ratier, especially where, as here, more than a month of discovery remained. To hold otherwise, as defendants argue, would negate the purpose of Rule 30(b)(6) to prevent "the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaim knowledge of facts that are clearly known to persons in the organization and thereby to it."[24]

### B. Defendants' argument that any 30(b)(6) depositions should take place at Ratier's principle place of business is persuasive.

Defendants argue, in the alternative, that if the depositions of Ratier's 30(b)(6) witnesses should take place, such depositions should occur in France at Ratier's principal place of business. The court agrees.

An initial presumption exists that "a defendant should be examined at his residence or the principal place of business."[25] In *GFSI, Inc., v. J-Looning Trading, LTD.*, the court found that this "initial presumption can be overcome by a showing that factors of cost, convenience, and efficiency

---

[22]*Id.* (citations omitted).

[23]Response (Doc. 178) at p. 13.

[24]Rule 30(b)(6), Advisory Committee Notes.

[25] *Starlight Int'l., Inc. v. Herlihy*, 186 F.R.D. 626, 644 (D. Kan. 1999).

weigh in favor of a different location."[26]  "Under the particular circumstances presented" the court found that plaintiff had demonstrated that taking the depositions of defendants' two 30(b)(6) witnesses in Kansas City, rather than Hong Kong, was the more cost effective and convenient option.[27]  The court considered that the billable hours of sending both parties' counsel to Hong Kong meant that flying two 30(b)(6) witnesses to Kansas City, Missouri was the more convenient cost saving option.[28]  As a result, the court denied defendant's motion for a protective order and required both parties to equally bear any cost incurred by defendant in bringing its corporate representatives to Kansas City, Missouri.[29]  The court also notes that in the present case plaintiff has offered no such compromise.

While the court believes that plaintiff has the right to seek 30(b)(6) deposition testimony from Ratier, plaintiff has not overcome the general presumption that such depositions should take place at Ratier's principle place of business.  First, the holding in *GFSI Inc.*, is limited to "the particular facts presented."  Moreover, Ratier has indicated that it will designate at least four 30(b)(6) witnesses.  As a result, the expense of flying all four or more witnesses to Kansas City and housing them during the duration of their stay makes such travel an expensive proposition.  While this cost would likely be offset by not having both parties' counsel fly to France, that is not the only relevant inquiry.  Indeed, plaintiff has presented no argument to the court that flying Ratier's 30(b)(6) witnesses to Kansas City would prove more convenient for the *parties*.  To hold that it is

---

[26] Case No. 05-2302-KVH, 2006 U.S. Dist. LEXIS 22644 at *2 (D. Kan. April 18, 2006).

[27]*Id.* at *3-4.

[28]*Id.* at *5.

[29]*Id.*

8

always more cost effective and convenient to have the 30(b)(6) witnesses of foreign corporations deposed in the United States would eviscerate the general presumption regarding the place for taking such depositions.

Accordingly, under the particular circumstances of this case, the court will grant defendants a limited protective order requiring that the depositions of Ratier's 30(b)(6) witnesses need not take place in Kansas City. Should the parties and their counsel find and agree to a more cost effective approach than taking these depositions in France, the court would encourage such an arrangement.

Accordingly,

IT IS THEREFORE ORDERED that defendants' Motion for Protective Order (Doc. 158) is granted in part and denied in part. The 30(b)(6) witness depositions of Ratier's designated corporate witnesses shall take place within forty-five (45) days of the issuance of this order. These depositions shall take place at Ratier's principle place of business unless otherwise agreed to by the parties.

IT IS SO ORDERED.

Dated this 21st day of May, 2007, at Topeka Kansas.

                                              s/ K. Gary Sebelius
                                              K. Gary Sebelius
                                              U.S. Magistrate Judge