IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, a Kansas Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 05-4135-JAR |
| | ) |
| HAMILTON SUNDSTRAND CORPORATION, | ) |
| | ) |
| and | ) |
| | ) |
| RATIER-FIGEAC, S.A.S., a French Corporation, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the court upon defendants' Motion to Compel Plaintiff to Answer

an Interrogatory and Produce Documents (Doc. 164). Plaintiff has filed a response (Doc. 187) to

which defendants have filed a reply (Doc. 217). These issues are thus fully briefed and ripe for

decision. As discussed below, defendants' Motion to Compel (Doc. 164) is granted.

**I.      Background**

In 2004, Hamilton and Ratier, a French corporation and a subsidiary of Hamilton's parent

company United Technologies Corporation, and ICE formed a business relationship to develop a

deicing propeller system for the A400M military transport aircraft. The parties subsequently entered

into a Memorandum of Understanding setting forth the details of the transaction. In June 2005

production was halted on the deicing system and ICE filed suit against Hamilton and Ratier claiming

breach of contract, breach of implied contract, unjust enrichment, negligent misrepresentation, and

misappropriation of trade secrets under K.S.A. 60-3320(4).

The present motion asks the court to compel plaintiff to answer Interrogatory No. 2 of

defendant Ratier's Second Set of Interrogatories and to produce documents responsive to Request

Nos. 2-5 of Defendants' Third Request for Production of Documents.  These documents relate to

plaintiff's work on a new project, ("Project X").[1]  In the present motion, defendants contend that

these documents "are critical to defendants' ability to respond to the damages claimed by ICE in this

action."[2]  More specifically, defendants claim these documents are relevant to a claim of "offsetting

benefits."  The "offsetting benefits rule", as cited by defendants, is explained as follows:

> The theory of offsetting benefits, or the "offsetting benefits rule," applies in Kansas to
> determine actual damages in tort or breach of contract actions if the defendant has conferred
> a benefit on the plaintiff that offsets the plaintiff's loss or injury suffered.  When the rule
> applies, the defendant is permitted to introduce evidence that the plaintiff's alleged injury
> also resulted in a benefit to plaintiff and, if proved, the plaintiff's damages will be reduced
> by the amount of the benefit. . . . The Kansas Supreme Court has summarized the rule as follows:
> Basically where the defendant's tortious misconduct or breach of contract causes damages,
> but also operates directly to confer some benefit upon the plaintiff, the plaintiff's claim for
> damages may be diminished by the amount of benefit received.  The offset theory can only
> be utilized when the benefits accruing to the plaintiff are sufficiently proximate to the
> contract to warrant reducing the plaintiff's damages and the failure to do so would permit the
> plaintiff to obtain unreasonable damages.[3]

Defendants also argue that plaintiff has waived any objection to these discovery requests.

In turn, ICE contends the information and documents sought under defendants' Interrogatory

No. 2 of  Ratier's Second Set of Interrogatories and Request Nos. 2-5 of Defendants' Third Request

for Production of Documents are not relevant and otherwise are privileged which privileges have

not been waived.

---

[1]Motion to Compel (Doc. 164) at p. 1.  The project itself has a different name.  But for
the purposes of confidentiality, the court will simply refer to the project by the term used by
defendant: "Project X."  Many of the exhibits submitted by the parties and used by the court in
this order were filed under seal. In the present order, the court has endeavored to omit any
information cited from these exhibits which it believes could be considered confidential.

[2]*Id.*

[3]*Resolution Trust Corp. v. Fleischer*, 880 F. Supp. 1446, 1449 (D. Kan.1995)(citation
omitted).  *See also Penncro Assocs., Inc. v. Sprint Spectrum LP*, 2006 U.S. Dist. LEXIS 48571
(D. Kan. July 17, 2006). *See* Reply (Doc. 217) at p. 6.

## II.     Preliminary Issue: Did ICE Waive its objections?

Defendants argue that plaintiff has waived its objections to Defendants' Third Request for Production and Ratier's Second Set of Interrogatories.

### A.     Standard

In support of their proposition that ICE has waived its objections to defendants' discovery requests, defendants cite *Fretz v. Keltner.*[4]  In *Fretz*, a 1985 case from the District of Kansas the non-moving party failed to respond to the moving-party's request for production of documents.  The case cites then Fed. Rule Civ. P.  33(a), the rule governing interrogatories, for the proposition that the nonmoving party had "thirty (30) days in which to serve an answer or object.  Failure to answer or object in a timely manner constitutes a waiver of the right to object."[5]  Defendants cite this portion of *Fretz* in the present motion.[6]

After its 1993 Amendment, however, Rule 33(b)(4) now provides that: "All grounds for an objection to an interrogatory shall be stated with specificity.  Any ground not stated in a timely manner is waived *unless the party's failure to object is excused by the court for good cause shown.*"[7]

Case law in the District of Kansas supports defendants' argument that the court should apply the waiver provision of Rule 33(b)(4) to requests for production governed under Rule 34.  However, this case law has applied *both* the waiver rule *and* the good cause provision of Rule 33(b)(4) to

---

[4]109 F.R.D. 303, 309 (D. Kan. 1985).

[5]*Id.*

[6]Motion to Compel (Doc. 164) at p. 5.

[7]*See* Fed. R. Civ. P. 33 advisory committee notes (1993 Amend).

requests for production governed by Rule 34.[8]

**B.    Discussion**

As a result, the court will consider whether good cause should excuse plaintiff's late submission of its amended answer to Ratier's Second Set of Interrogatories and amended response to Defendants' Third Request for Production.

Here, the parties agree that plaintiff's responses to both discovery requests were due on March 5, 2007 and that plaintiff asked for, and received from defendants, an extension until March 12, 2007 to submit its answers to Ratier's Second Set of Interrogatories.  On March 12, 2007, plaintiff submitted *both* its answers to the Second Interrogatories and its responses to the Third Request for Production, neither of which included any objection as to relevancy.[9]   A week later, on March 19, 2007, after realizing its previous responses had omitted certain objections, plaintiff submitted amended answers to both sets of discovery requests wherein plaintiff objected to the relevancy of Interrogatory No. 2 and Request for Production Nos. 2-5.[10]

Plaintiff informs the court that these omissions occurred due to a series of factors including one attorney's leaving of the firm, the critical illness of another attorney's parent, and an almost 400 hour workload in the month of March shouldered by the two remaining litigation attorneys and their

---

[8]*See Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 496-97 (D. Kan. 1998)("Fed. R. Civ. P. 33(b)(4) provides that untimely objections are 'waived unless the party's failure to object is excused by the court for good cause shown.'  The same standard applies to requests for production under Fed. R. Civ. P. 34.")(citing *Pulscard, Inc. v. Discovery Card Servs., Inc.*, 168 F.R.D. 295, 303 (D. Kan. 1996)).

[9]*See* Motion to Compel (Doc. 164) at (Exhibit E); Reply (Doc. 217) at (Exhibit A).

[10]*See* Reply (Doc. 217) at (Exhibit B); Motion to Compel (Doc. 164) at (Exhibit G).

legal assistants regarding only this case .[11]

The court agrees with plaintiff that its omission "is not a situation where the matter [was] being poorly attended"[12] and finds that plaintiff has demonstrated sufficient good cause so as to excuse the one week's worth of untimeliness of its amended responses to Defendants' Third Request for Production and defendant Ratier's Second Set of Interrogatories.[13]

As plaintiff's objections are not now untimely, plaintiff's objections are also not waived. Thus, the court will considered plaintiff's Amended Responses to Defendants' Third Request for Production of Documents and defendant Ratier's Second Set of Interrogatories.[14]

### III.    Request Nos. 2-5 and Interrogatory No. 2.

Requests Nos. 2-5 seek information regarding "[t]he contract between ICE and ["X"] described by Patrick Connelly on page 198 of his deposition (the "Project X")."   Specifically, Request No. 3 seeks "Documents sufficient to show the total sales made by ICE to date under [Project X] and ICE's net profit on those sales."  Request No. 4 seeks "Any and all estimates or projection s of ICE's anticipated future sales and profits under [Project X]."  Request No. 5 seeks "Documents sufficient to show the employees of ICE who have worked or are currently working on [Project X] . . .  the number of hours that each person has worked on that project since June 1, 2005 and the percentage of each person's total work hours that were spent on that project during that time

---

[11]Response (Doc. 187) at p. 3-4.

[12]*Id.* at p. 3.

[13] *See Black's Law Dictionary* 693 (6th ed.1990)("Phrase 'good cause' depends on the circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which decision is committed.").

[14]Reply (Doc. 217) at (Exhibit B); Motion to Compel (Doc. 164) at (Exhibit G).

5

period."[15]

Plaintiff objects as follows to each of these requests:

All information concerning [Project X] is confidential and protected from disclosure by law. Project X is under "Executive order to be kept secret in the interest of national defense and foreign policy." Information relating to [Project X] is Competition Sensitive and is Privileged and/or proprietary and it exempt from public disclosure under Subsection(b), 5 USC 552. Plaintiff further objects to this request as not likely to lead to the discovery of relevant information, overbroad and unduly burdensome.[16]

Interrogatory No. 2 asks plaintiff to:

Identify all employees of ICE who have worked on or are currently working on [Project X] . . . and for each such person state the number of hours that he or she worked on that project from June 1, 2005 to December 31, 2005 and from January 1, 2006 to December 31, 2006, and the percentage of his or her total work hours that were spent on that project during those time periods.[17]

Plaintiff responds that:

ICE objects to the term "worked on" as vague, as not likely to lead to the discovery of relevant information, overbroad and unduly burdensome. Subject to this objection, the following are the ICE employees who have worked on [Project X] . . . . ICE does not keep its employees' time by project.[18]

## A.     Relevancy Objections.

Plaintiff has objected as to relevance of Request Nos. 2-5 and Interrogatory No. 2 and has

discussed these relevancy objections at length in its response to the present motion. Thus, the

_____

[15]Reply (Doc. 217) at (Exhibit B).

[16]*Id.*

[17]Motion to Compel (Doc. 164) at (Exhibit G)

[18] *Id.*

6

relevancy objections of these discovery requests are ripe for resolution.[19]

### 1. Standard

In *Pulsecard, Inc. v. Discovery Card Services*, a 1996 case from the District of Kansas, the court stated "[t]o determine whether discovery is relevant, the court examines the issues raised in the case.  Although relevancy is not limited by the matters stated in the pleadings, they do provide a basis from which to judge relevancy.  Discovery, like all matters of procedure, has ultimate and necessary boundaries."[20]

Neither *Pulsecard* generally, nor this particular section of its analysis,  has been overruled. Moreover, the court finds this portion of *Pulscard* instructive in that the pleadings "provide a basis from which to judge relevancy."  Moreover, the court believes that the 2000 amendments to the Federal Rules of Civil Procedure place an even greater importance on the necessity for the parties' pleadings to help guide the scope of the discovery sought.

Prior to its amendment in 2000, Rule 26 provided that "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."[21]   Defendants, in fact, quote this prior rule.[22]   The current Rule 26(b)(1) narrows

---

[19] "[W]hen ruling on a motion to compel, the Court will consider only those objections that have been (1) timely asserted, and (2) relied upon in response to the motion to compel." *Cardenas v. Dorel Juvenile Group, Inc*., 232 F.R.D. 377, 380 n. 15 (D. Kan. 2005).

[20] *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 310-11 (D. Kan. 1996)(citations omitted). Defendant also cites this case for the proposition that "relevancy is not limited to the matters raised by the pleadings."  Reply (Doc. 217) at p. 11.

[21] *See Pulsecard*, 168 F.R.D. at 310 (citing Fed. R. Civ. P. 26(b)(1)).

[22] *See* Reply (Doc. 217) at p. 11 (citing *Pulsecard* for the proposition that "Relevancy is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.").  In fact, all the case law regarding relevance cited by plaintiff

discoverable information to that which "is relevant to the *claim or defense of any party*" and only for good cause shown can the court can order further discovery "of any matter relevant to the *subject matter* involved in the action."[23]

As a general matter, relevancy is "broadly construed," and a discovery request "should be considered relevant if there is 'any possibility' that the information sought may be relevant to the *claim or defense of any party*."[24]  "When the discovery sought appears relevant, the party resisting the discovery must show that it  (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery."[25]  When relevancy is *not* readily apparent, however, the party seeking discovery has the burden of showing the relevancy of the discovery request.[26]

### 2.    Preliminary Issue: Whether the offsetting benefits rule is an affirmative defense is not an issue properly before the court.

The parties disagree regarding whether or not the offsetting benefits rule is an affirmative defense.  Both sides appear to believe that such a determination directly relates to the issue of

---

predates the 2000 amendment to Rule 26.  *See* Reply (Doc. 217) at p. 11 (citing *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991); *Snowden v. Connaught Lab.*, 137 F.R.D. 325, 329 (D. Kan. 1991)).

[23]*See* Fed. R. Civ. P. 26(b)(1)(emphasis added).  *See also Airport Sys. Int'l Inc. v. AIRSYS ATM, Inc.*, No. 00-2717-KVH, 2002 U.S. Dist. LEXIS 994 at *9 (D. Kan. January 21, 2002)(citing the rule in *Pulsecard* and stating that "the Court will examine the relevancy of each of these requests at issue as they relate to each of Plaintiff's alleged causes of action.").

[24]*Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

[25]*Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004).

[26]*Hammond*, 216 F.R.D at 670.

relevancy.  While the court does not believe this issue is dispositive of the relevance question at hand, the court believes that there is some evidence to indicate that the offsetting benefits rule is an affirmative defense.  Indeed, in *Roberts v. Korn*, the court found "that defendant. . . . failed to plead any affirmative defense, as is required pursuant to Fed. R. Civ. P. 8(c), contending that plaintiffs had been fully compensated by other defendants."[27]  Moreover, Chief Judge Lungstrum, in *Penncro v. Sprint Spectrum L.P.*, applied the "offsetting benefits rule" and found that as a threshold matter defendant had to "establish[] that [plaintiff] 'avoided loss' as a result of the breach."[28]  This alone indicates that defendants' initial burden of proof as to an offset claim is an affirmative defense to be plead pursuant to Rule 8(c).  To that end, in *Penncro*, Chief Judge Lungstrum cited a case regarding mitigation of damages to support requiring defendant to establish that plaintiff "avoided loss" as a result of the breach.[29]  It is well established that in federal court, mitigation of damages is an affirmative defense.[30]  The court also notes that the defendants in *Penncro* pled the offsetting benefits rule as an affirmative defense[31] so the question of whether the offsetting benefits rule constitutes an affirmative defense was likely never raised.

Defendants, in arguing that the offsetting benefits rule is not an affirmative defense, cite an unpublished case from the Kansas Court of Appeals which states that this rule "is a common-law

---

[27] 420 F. Supp. 2d 1196, 1199 (D. Kan. 2006).

[28] 2006 U.S. Dist. LEXIS 48571 at *26 (D. Kan. July 17, 2006).

[29] *Id.* (citing *John Call Engineering, Inc. v. Manti Cit Corp.*, 795 P.2d 678, 681 (Utah App. 1990)).

[30] *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1230 (10th Cir. 2000) ("A defendant bears the burden of proving the affirmative defense of failure to mitigate.").

[31] *See* Case No. 04-2549-JWL Answer (Doc. 13) at p. 5.

*evidence* rule that allows admission of certain evidence on the issue of plaintiff's damages.  We

know of no authority that requires a party to assert as an affirmative defense its intent to invoke any

of the *Kansas Rules of Evidence*."[32] Based on this case, if the court is inclined to believe that the

offsetting benefits rule is based on Kansas Rules of Evidence, the applicability of this rule to the

present case, which is pending in *federal* court, might be at issue.  However, such an unconsidered

issue is not relevant to the issues currently before the court.

To that end, the court need not decide whether the offsetting benefits rule is an affirmative

defense because such an issue is not presently before  the court.  What is at issue before the court

is whether the disputed discovery sought regarding "Project X" could lead to relevant evidence as

to the claims or defenses of the parties.

### 3.    Discovery sought is not facially relevant to the claims or defenses of the parties.

Here, the court finds that the information sought by Request Nos. 2-5 and Interrogatory No.

2 do not appear relevant to any claim or defense of the parties.  Neither Hamilton's Answer to

Amended Complaint or Amended Answer (Doc. 111 and Doc. 122), filed on December 4, 2006 and

December 13, 2006, respectively, nor Ratier's Answer to Amended Complaint (Doc. 118), filed on

December 8, 2006, allege any type of offsetting benefits claim or mitigation of damages defense.[33]

---

[32]*See* Reply (Doc. 217) at p. 7-8 (citing *Raney v. Total Fitness Athletic Center, Inc.*, 111 P.3d 663, No. 92,670, 2005 WL 1214255, at * 6 (Kan. Ct. App. May 15, 2006)(emphasis added)).

[33]None of defendants' other responsive pleadings contain any reference to mitigation of damages or offsetting benefits.  *See* Defendant Hamilton's First Answer (Doc. 13); Defendant Ratier's First Answer (Doc. 14); Hamilton's Amended Answer (Doc. 25); Ratiers' Amended Answer (Doc. 26); Ratier's Second Amended Answer (Doc. 67); Hamilton's Second Amended Answer (Doc. 68); Ratier's Answer to Amended Complaint (Doc. 118); Hamilton's Answer to Amended Complaint (Doc. 111); and Hamilton's Amended Answer to Amended Complaint

In the court's April 30, 2007 Memorandum and Order, the court found plaintiff's requests for production of documents regarding defendants' relationship with third parties on projects *other* than the A400M irrelevant on their face.[34]

However, in its April 30, 2007 Memorandum and Order this court also found that requests for production by plaintiff as to defendants' profits for the A400M were facially relevant as to the expectancy damages plead in plaintiff's *amended complaint*.[35]  Because plaintiff pled in its amended complaint that it was seeking expectancy damages related to the A400M project, the court found that information related to defendants' profitability on that project was facially relevant.

Here, while defendants' answers to plaintiff's amended complaint refute plaintiff's damage calculations[36], defendants fail to plead or even suggest any type of offsetting benefits rule or mitigation of damages defense.  While a failure to plead such a defense may or may not prove dispositive of this issue at trial, such a failure further indicates to the court that evidence of offset is not facially relevant to the claims or defenses of the parties.   Indeed, a refutation of a plaintiff's damages does not itself suggest a claim for "offsetting benefits."  As a result, the court finds that the discovery sought by plaintiff is not facially relevant.

---

(Doc. 122).

[34]*See* Memorandum and Order (Doc. 208) at p. 16.

[35]*Id.* at p. 20-21(citing Amended Complaint (Doc. 108)).

[36]*See* Ratier's Answer to Amended Complaint (Doc. 118) at p.10, 12, 25-26, 28-29 and 31; *see also* Hamilton's Amended Answer to Amended Complaint  (Doc. 122) at p. 11-13, 25-27, 29 and 31.

11

**4.      Defendants have met their burden to establish relevance.**

As the documents do not appear facially relevant, defendants have the burden of demonstrating such relevancy.[37]  As discussed below, defendants have met this burden.

**a.      Defendants' "lost profits are at issue" argument.**

As a general matter, defendants argue that  "plaintiff has placed the subject of lost profits at issue"[38] and thus documents regarding plaintiff's profitability on other projects would be relevant. The court disagrees.  The court finds defendants' argument that plaintiff "has placed the subject of [defendants'] lost profits at issue" so as to make plaintiff's own profits on projects unrelated to the AM400 relevant is an insufficient demonstration of relevancy.

**b.      Defendants' "substitute contract argument."**

To further demonstrate relevancy, defendants argue that "Project X is a substitute contract for the alleged contract between ICE and Ratier."[39]  As a result, defendants argue that evidence regarding this substitute contract are relevant to a potential offsetting benefits claim.

Defendants provide several exhibits that indicate that Project X could be construed as a substitute for the A400M project.  As a preliminary matter, the court notes that the relationship between ICE and the defendants dissolved in June of 2005.  In an email dated June 29, 2005 Patrick Connelly, president of ICE Corp., stated:

> God gives and God takes away.  ICE has just been notified that we have been awarded a significant new contract.  Upon receipt of the notification that our MOU is terminated, I will send Ratier the invoice for effort expended per the MOU until June 15, 2005. . . .  Based on this information I am immediately reassigning Arlie and his staff to the new contract and

---

[37]*Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

[38]Motion to Compel (Doc. 164) at p. 4; Reply (Doc. 217) at p. 11.

[39]Motion to Compel (Doc. 164) at p. 5.

previous schedules and time frames on . . . the propeller system should be considered void.[40]

In his deposition, Mr. Connelly stated that the new contract referenced in this June 29, 2005 email is Project X.  Mr. Connelly further testified that:

Q:    And did you perform under that contract [Project X]?
A:    We're in the process, yes, sir.
Q:    And is it a profitable contract?
A:    Absolutely.[41]

ICE's Chief Design Engineer Arlie Stonestreet, presumably the Arlie referenced in the June 29, 2005 email, testified that the scope of Project X was "roughly similar" to the scope of ICE's work on the A400M Project.[42]

In his deposition Harold Kraus, another ICE employee, testified:

Q:    In the summer of 2005 when ICE stopped working on the A400M project, did you begin working on a new project?
A:    Yes.
Q:    How soon did you move to the new project after stopping work in the A400M project?
A:    I don't recall.  We had a kickoff meeting in August.  On or about August.
Q:    Was the for [Project X]?
A:    Yes.[43]

In a sworn affidavit, Patrick Connelly, the president of ICE, contends that Project X was "simply a separate business opportunity" which was "unrelated" and "not in any way conditioned upon or related . . . to the A400M Project."[44]  Specifically, Mr. Connelly testified:

---

[40]Response (Doc. 187) at (Exhibit 2 at p. 2).

[41]Motion to Compel (Doc. 187) at (Exhibit A).

[42]*Id.* at (Exhibit B).

[43]*Id.* at (Exhibit C).

[44]Response (Doc. 187) at p. 7.

> [Project X] was not [a "replacement project"] and I did not testify that it was.  ICE went after the unrelated helicopter project [Project X] long before it was terminated by Raiter, and that is one of the purposes of going after business, to grow revenues and profits.  ICE sought the business opportunity of [Project X] in December, 2002, and formally proposed involvement on [Project X] in May, 2004.  This was more than a year before Ratier unilaterally terminated ICE on the A400m project, in June, 2005.[45]

Moreover, Mr. Connelly testified that ICE's customer for Project X knew of ICE's involvement on the A400M project meaning Project X was not considered a substitute project by either the customer or ICE.[46]   Furthermore, Mr. Connelly asserted that ICE applied its Quality Policy to both Project X and the A400M project.  This Quality Policy required ICE to evaluate not only the time its projected costs of material and labor, etc. but also its "resources and need to support new and existing projects."[47]  Implicitly, Mr. Connelly argues that this Quality Policy prevented Project X from acting as a substitute contract.  Mr. Connelly also testified that Project X and the A400M project differed in nature and required different commitments of time and skill[48] and thus Project X did not substitute for the A400M project.

Defendants argue that at this stage in the proceedings they are not required to prove Project X is a substitute project.[49]   The court agrees that it will not now decide whether the offsetting benefits rule is an affirmative defense or whether Project X is a substitute project for the A400M or whether evidence regarding Project X could ultimately be used at trial.  The relevant inquiry is whether at this stage in *discovery* defendants have demonstrated the relevance of these discovery

---

[45]*Id.* (Doc. 187) at (Exhibit 1 p. 2).

[46]*Id.*

[47]*Id.* at p. 3.

[48]*Id.* at p. 6-7.

[49]Reply (Doc. 217) at p. 12.

14

requests.  While the testimony provided by Mr. Connelly could well demonstrate that Project X is not a substitute contract for the A400M, defendants also have provided credible evidence that Project X could be considered a substitute contract for the A400M.  To side with plaintiff now and prevent discovery on the issue of Project X would effectively prevent defendants from raising this issue at trial.

Defendants could seek to amend their pleading in order to affirmatively plead an offsetting benefits claim or mitigation of damages defense.  Conversely, the trial court, or this court upon proper motion, could find such an amendment unnecessary thereby potentially opening the door for defendants to make their arguments regarding Project X.  Regardless, for the purposes of demonstrating relevance, the court believes defendants have met their burden.  As a result, the court overrules plaintiff's relevancy objections as to Request Nos. 2-5 and Interrogatory No. 2.

### B.    Plaintiff's other objections.

Plaintiff fails to discuss its burdensomeness, vagueness, and overbreadth objections in its response brief.  Consequently, the court will not consider these objections and deems them waived.[50]

### 1.    Confidentiality Objections.

Plaintiff's responsive briefing does raise the issue of confidentiality. Plaintiff states "[t]here are also confidentiality issues, as explained in the Declaration of Patrick Connelly . . . ."[51] and "[d]efendants seek confidential proprietary information concerning revenues and profits . . . ."[52]

---

[50] "[W]hen ruling on a motion to compel, the Court will consider only those objections that have been (1) timely asserted, and (2) relied upon in response to the motion to compel." *Cardenas v. Dorel Juvenile Group, Inc*., 232 F.R.D. 377, 380 n. 15 (D. Kan. 2005).

[51] Response (Doc. 187) at p. 2

[52] *Id.* at p. 11.

Plaintiff concludes that "the information Defendants seek as to the unrelated project is confidential proprietary information concerning ICE's revenues and profits.  ICE should not be required to produce that information for self-evident reasons . . . ."[53]

However, confidentiality of documents "does not equate to privilege."[54] "As such, information is not shielded from discovery on the sole basis that such information is confidential."[55] "It is well settled that no absolute privilege exists for trade secrets or proprietary business information."[56] Consequently, "asserting an objection to a discovery request that the [information] sought contains trade secrets or proprietary information does not shield the documents from discovery."[57]

Here, the court has reviewed the "confidentiality issues" in Mr. Connelly's deposition and the parties' briefings and finds that plaintiff has not supported its privilege objection.  Without further explanation, plaintiff's response to these discovery requests that the program is under "'Executive order to be kept secret in the interest of national defense or foreign policy.' Information relating to [Project X] is Competition Sensitive and is Privileged and/or proprietary and it exempt from public disclosure under Subsection(b), 5 USC 552" is insufficient.  Defendants' following of the precautions and procedures outlined in the parties' joint protective order[58] should resolve

---

[53]*Id.* at p. 12.

[54]*Williams v. Board of County Comm'rs*, 2000 U.S. Dist. LEXIS 8986, at *16 (D. Kan. June 21, 2000).

[55]*Id.  See also DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 689-90 (D. Kan. 2004).

[56]*Puccinelli*, 224 F.R.D. at 690.

[57]*Id.*

[58]*See* Protective Order (Doc. 46).

plaintiff's privacy concerns.

## III.   Sanctions

While neither party has moved for sanctions, the court takes this opportunity to find that sanctions in the present case are not appropriate.[59]   Rule 37(a)(4)(A) states that "the court shall" require the party necessitating the motion to pay the reasonable expenses, including attorney's fees, caused by the failure, "unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."   Whether to impose sanctions lies within the court's discretion.[60]   The court "must consider on a case-by-case basis whether the party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate."[61]

Here, the court finds that plaintiff's objections to the discovery matters were substantially justified. While the court has granted the underlying motion, the court did so only after defendants established the relevancy of their discovery requests.   Moreover, as detailed in this order, defendants did not specifically plead any sort of mitigation of damages or offsetting benefits defense.   The court believes plaintiff took a substantially justified position that defendants' failure to so plead prevented

---

[59] *See e.g., Heatland Surgical Speciality Hosp., LLC v. Midwest Division, Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 13386 at *24-25 (D. Kan. February 23, 2007)(finding under the given circumstances that sanctions under Rule 37(a)(4)(A) were unjust).

[60] *Barnes v. Akal Sec. Inc.*, No. 04-1350, 2005 U.S. Dist. LEXIS 33262, at *21 (D. Kan. December 9, 2005)(citing *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).

[61] *Id.* (citing *Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 646 (D. Kan. 1999)).

the discovery of the information sought.  Accordingly,

IT IS THEREFORE ORDERED that defendants' Motion to Compel Plaintiff to Answer an Interrogatory and Produce Documents (Doc. 164) is granted.  By **June 14, 2007** plaintiff shall produce all relevant documents in their care, custody and control responsive to Defendants' Third Request for Production Nos. 2-5.  By **June 14, 2007**, plaintiff shall answer Interrogatory No. 2 to Ratier's Second Set of Interrogatories.

IT IS SO ORDERED.

Dated this 24th day of May, 2007, at Topeka, Kansas.

  s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

18