## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Case No. 05-4135-JAR |
| v. ) | |
| ) | |
| HAMILTON SUNDSTRAND ) | |
| INCORPORATED, ) | |
| and ) | |
| RATIER-FIGEAC, S.A., ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION AND ORDER

This matter comes before the court upon the Honorable Julie A. Robinson's Minute Order referring for Report and Recommendation plaintiff's Motion to Strike Defendants' Defenses and Memorandum in Support (Doc. 195).[1] Defendants have filed a response to plaintiff's motion (Doc. 311) to which plaintiff has filed a reply (Doc. 335). Defendants have also filed a Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Strike Defendants' Defenses (Doc. 354). While plaintiff has not yet filed a response, the court finds further briefing on this issue unnecessary and is prepared to rule. Also pending before the court is defendants' related Motion to Strike and Memorandum in Support of Motion to Strike Plaintiff's Motion to Strike Defendants' Defenses (Doc. 211). Plaintiff has filed a response to this motion (Doc. 249) to which defendants have filed a reply in support (Doc. 281). As a result, the court considers these motions ripe for disposition.

---

[1] *See* Minute Order (Doc. 337).

Plaintiff's Motion to Strike Defendants' Defenses asks the court to sanction defendants by "striking Defendants' defenses as to liability on all claims."[2] Plaintiff grounds its Motion to Strike on several bases. First, plaintiff argues that defendants' representatives falsely testified under oath and falsely responded to interrogatories. Second, plaintiff argues that defendants have obfuscated and unnecessarily delayed responding to discovery and have withheld crucial information. In plaintiff's reply in support of the present motion, plaintiff also alleges further examples of "repeated and continuing misrepresentations" on the part of defendants. The court will subsequently address these additional examples of alleged misconduct in connection with defendants' Motion for Leave to File a Surreply.

### A.  Standard

Defendants, both in their response to plaintiff's Motion to Strike and in their own Motion to Strike Plaintiff's Motion to Strike, allege that plaintiff has failed to meet the requirements of Fed. Rule Civ. P. 11, Fed. Rule Civ. P. 37, or Fed. Rule Civ. P. 56.[3] In turn, plaintiff argues that it has brought its motion *solely* on the basis of the court's inherent power to strike defendants' defenses.[4] As a result, the court will only consider plaintiff's motion on the basis of the court's inherent powers.[5]

---

[2]Reply (Doc. 335) at p. 4.

[3]*See* Response (Doc. 249); Motion to Strike Plaintiff's Motion to Strike (Doc. 211).

[4]"Plaintiff does not seek relief under Rules 56 or 37[.]" Response (Doc. 249) at p. 2. *See also* Reply (Doc. 335) at p. 1-2.

[5]Federal Rule of Civil Procedure 37(b)(2) provides that "if a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just and among others . . . (C)An order striking out pleadings or parts thereof . . . or rendering a judgment by default against the disobedient party."
    Similarly, when a party "fails to disclose information required by Rule 26(a) or 26(e)(1),

Specifically, plaintiff argues that the court possesses the inherent power to sanction a party for bad faith litigious conduct, including entry of judgment against a party who has perpetuated a fraud on the court.[6] Plaintiff cites the Supreme Court's decision in *Chambers v. NASCO, Inc.*, for this proposition. *Chambers* provides:

> Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.[7]

The *Chambers* court discussed "[p]rior cases" which have "outlined the scope of the inherent power of the federal courts" including that federal courts have the power to (1) control admission to its bar (2) discipline attorneys who appear before it and (3) punish for contempt conduct occurring before the court and beyond the court's confines.[8]

In considering the court's inherent powers as outlined by *Chambers*, the Tenth Circuit in *Chavez v. City of Albuquerque* has held "[a]mong the multifarious manifestations of the courts' inherent powers is the authority to vacate a judgment when a fraud has been perpetrated on the court, such as when a party has perjured himself during the discovery process."[9] The Tenth Circuit also

---

or to amend a prior response to discovery as required by Rule 26(e)(2)" and such failure is not harmless, after affording the opportunity to be heard, the court may sanction the failing party as authorized under Rule 37(b)(C).

[6]Motion to Strike (Doc. 195) at p. 21.

[7]*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)(citations omitted).

[8] *Id.*

[9]*Chavez v. City of Albuquerque*, 402 F.3d 1039, 1043-44 (10th Cir. 2005)(citing *Archibeque v. Atchison, Topeka, and Santa Fe Railway Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995)).
The Tenth Circuit appears to have treated dismissing a case because of "fraud on the

counsels that while it is within the district court's discretion to dismiss, such discretion must be exercised with restraint and is only appropriate in instances of "willfulness, bad faith, or [some] fault of petitioner."[10]  So too, *Chambers* also provides "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion.  A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."[11]  To that end, the Tenth Circuit has articulated "a number of factors that may inform the district court's discretion in determining whether dismissal is an appropriate sanction" including:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.[12]

---

court" in the form of perjury committed in the discovery process differently from "the inherent power of a court to set aside its judgment if procured by fraud upon the court." *See United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002).  When a party seeks to set aside a judgment procured by fraud on the court, the Tenth Circuit defines "fraud on the court" narrowly as only "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.  It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court.  It is thus fraud . . . where the impartial functions of the court have been directly corrupted." *Id.* (citing *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985)).

[10]*Chavez*, 402 F.3d at 1044 (citing *Archibeque*, 70 F.3d at 1117).

[11]*Chambers*, 501 U.S. at 44.

[12]*Chavez*, 402 F.3d at 1044 (citing *Ehrehaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

These factors are "not exhaustive"[13], do not constitute a "rigid test"[14] and are not necessarily of equal weight.[15] Dismissal is appropriate if the "aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits."[16] However, "because dismissal with prejudice defeats altogether a litigant's right of access to the courts, it should be used as a weapon of last, rather than first, resort."[17]

### B.   Discussion

As detailed below, the court finds that "striking defendants' defenses" constitutes an inappropriate sanction.

#### 1.   The court's inherent power to strike defendants' defenses.

First, the standard articulated in *Chambers* and by the Tenth Circuit in *Chavez v. City of Albuquerque* and *Archibeque v. Atchison, Topeka, and Santa Fe Railway Co.* specifically applies to *petitioners* who have committed perjury during the discovery process so as to warrant *dismissal* of petitioner's claims. In contrast, *plaintiff* in the present case seeks to have the court strike defendants' defenses due to alleged perjury committed by defendants during the discovery process. While such relief is specifically allowed pursuant to Fed. Rule Civ. P. 37(b)(2), the court has been unable to find, and plaintiff has failed to provide, any case law within the Tenth Circuit wherein the

---

[13]*Id.*

[14] *Archibeque*, 70 F.3d at 1174.

[15]*The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005)(citing *Chavez*, 402 F.3d at 1044).

[16]*Id*. (citing *Ehrenhaus*, 956 F.2d at 921).

[17]*Ehrenhaus*, 956 F.2d at 920.

court employed its inherent power to strike a defendant's defenses due to alleged perjury committed during the discovery process.

Plaintiff does cite *Chrylser Corp. v. Carey*[18] a case from the Eighth Circuit in which the court affirmed the district court's decision to "strike a party's pleading." However, the *Carey* court affirmed the district court's decision to "strike a party's pleading *under Rule 37*" as "within the range of appropriate sanctions when a party demonstrates a 'blatant disregard of the Court's orders and the discovery rules,'" when the sanctioned party has engaged "in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case."[19] This court believes that a strict reading of *Carey* merely affirms what Rule 37 provides on its face, that the court through Rule 37 has the power to strike a party's pleading.

However, the court in *Carey* also held that "when a litigant's conduct abuses the judicial process, . . . dismissal of a lawsuit [is] a remedy within the inherent power of the court."[20] Yet, the district court in *Carey* did not *dismiss* the lawsuit pursuant to its inherent powers, rather it *struck* the defendant's pleadings. However, a broad reading of the *dicta* in *Carey* could evidence that the court has the inherent power to strike a defendants' defenses.[21] This court could also reason that if the

---

[18]186 F.3d 1016 (8th Cir. 1999). Plaintiff also cites several district court cases from outside the Tenth Circuit. *See* Reply (Doc. 335) at p. 29 (citing *REP MCR.Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984 (N.D. Ill. 2005); *Wachtel v. Healthnet, Inc*., 239 F.R.D. 81 (D. N.J. 2006)). However, in these cases the court did not strike defendants' defenses pursuant to its inherent powers.

[19]*Id.* at 1022 (emphasis added).

[20] *Id.* (citing *Pope v. Federal Express Corp*., 974 F.2d 8982, 984 (8th Cir. 1992)).

[21] The Eight Circuit noted that the "district court imposed the sanction under Rule 37 . . . and the inherent authority to the court." *Id.* at 1019.

court has the inherent power to dismiss a lawsuit in certain circumstances pursuant to its inherent powers, then in those same circumstances the court might also have the inherent power to impose the same sanction on the defending party, i.e. to strike defendants' defenses.

Nevertheless, as discussed below, even if the court were to assume that its inherent powers alone allow the court to strike defendants' defenses, the undersigned will recommend that the District Court not levy this sanction of "last resort."

### 2. Defendants' alleged "false" testimony and responses to interrogatories.

#### a. Mr. Siminel's testimony.

Plaintiff contends that Ratier's employee Bruno Seminel, Ratier's head engineer in charge of development of the deicer controller, falsely testified under oath that none of ICE's design information, materials or documents were provided to Artus.[22] Specifically, Mr. Seminel agreed that "it would be wrong to turn over ICE's design information to Artus." Further, he denied that a document drafted by ICE was furnished to Artus.[23] Plaintiff contends Ms. Seminel's testimony is "false" because ICE believes it has proof that "entire pages of ICE's proprietary and trade secret materials developed by ICE on the A400M project were copied into ARTUS' materials for use on the project."[24]

The court finds plaintiff's contentions insufficient so as to warrant the relief it seeks. Plaintiff has supplied the court with certain information under seal which it believes demonstrates

---

[22]Motion to Strike (Doc. 195) at p. 6-7.

[23]*Id.* at p. 7-8.

[24]*Id.* at p. 8.

defendants passed along ICE's proprietary information to Artus.[25] Yet plaintiff offers no explanation as to how these various exhibits prove that point. Without further explanation of these documents, some technical, some not, the court lacks the background and understanding needed in order to evaluate whether defendants supplied ICE's proprietary information to third-parties.

Plaintiff has also cited several internal emails sent between defendant Hamilton's employees expressing concern about Ratier supplying third-parties with ICE's proprietary information.[26] Specifically, in a July 7, 2007 email to Ken Mantha, a Hamilton manager, Dave Danielson, a Hamilton project engineer wrote:

> I also think we need to officially remind Ratier personnel that they should not be sharing details of the ICE design with other suppliers. I was very frank with Bruno [Seminel] on the phone this morning saying that I hope that they are being VERY careful with the information that they are providing to any potential suppliers. We have a lot of detailed design information from ICE on what they were doing and it not right for this information to be shared with their potential competitors.
> I don't know how we can prevent them from doing this as they are going out on their own (without our involvement) to get other quotes–and they have most of the data that ICE has shared with us . . . .

To that end, Mr. Danielson sent Mr. Siminel an email on July 12, 2005 which states in part "Note that this document was written by ICE Corp. (as indicated on the cover page) so I believe that this cannot be provided to any of ICE's competitors in this form–but that is a question for the lawyers–not me."[27] Chris Rising, a manger at Hamilton stated in a July 7, 2005 email "Let's politely discuss with RF (next Monday?) the limit on what can and should be shared with the new outfit

---

[25]*Id.* at p. 8 (citing Exhibit 13, Exhibit 14, Exhibit 15, Exhibit 16, Exhibit 17, Exhibit 18 and Exhibit 19).

[26]*Id.* at p. 8-10.

[27]*Id.* at (Exhibit 20).

quoting this job. That way if too much is shared, we have some protection for ourselves."[28] Similarly, in an email dated August 3, 2005, Robert Perkinson, a Hamilton engineer, stated "I am very concerned about how much and what kind of technical information has been transferred to these guys by R.F. . . . I just want to be sure that we are not violating any proprietary agreements with ICE."[29]

While these emails demonstrate a concern on defendant Hamilton's part to protect ICE's proprietary information, they do not clearly establish that Mr. Siminel perjured himself during his deposition. Should this case reach a jury, the finder of fact might well consider these emails, along with the technical exhibits provided by plaintiff, as evidence in support of plaintiff's claims. However, they do not convince the court at this time that Mr.Siminel lied under oath.

Moreover, even assuming that defendants did supply proprietary information to third-parties, this would not make Mr. Seminel's testimony necessarily "false." Mr. Siminel qualified his responses regarding Ratier's handling of ICE's proprietary information with "If I was aware" and "[n]ot that I know of."[30] Even if plaintiff were to demonstrate that Ratier did provide third-parties with ICE's proprietary information that would not automatically demonstrate that Mr. Siminel's qualified testimony was unequivocally "false."

As the court does not believe that plaintiff has demonstrated that Mr. Siminel committed perjury during the discovery process, the court need not consider the factors outlined in by the Tenth Circuit in *Chavez*. However, the court finds that the degree of actual prejudice to ICE has been

---

[28]*Id.* at (Exhibit 22).

[29]*Id.* at (Exhibit 21).

[30]*Id.* at p. 8.

-9-

minimal. Plaintiff has not suffered prejudice via Mr. Siminel's denial so much as it has found evidence that casts doubt on Mr. Siminel's statements. As to the amount of interference with the judicial process the court finds little. Moreover, the culpability of the defendants themselves in light of Mr. Siminel's testimony appears slight, if any. Again, Mr. Siminel was not testifying as a 30(b)(6) witness for Ratier, rather he offered his qualified opinions in his capacity as an employee of Ratier. Moreover, the court has not warned the defendants in advance that striking of their defenses would be a likely sanction. Finally, the court believes that even if plaintiff had demonstrated Mr. Siminel committed perjury, other sanctions, rather than striking defendants' defenses would prove effective.

### b. Defendants' responses to plaintiff's interrogatories.

Plaintiff also argues that defendants have falsely responded to plaintiff's various interrogatories. Specifically, as to ICE's First Set of Interrogatories, No. 13, plaintiff asked from each defendant independently to

> Identify all persons, entities, or companies to whom either Defendants provided (whether orally, electronically, in written form or by other means), any information, materials, documents, drawings, diagrams, specifications, software, or hardware designed, developed, produced, created or prepared by ICE in connection with the deicing system for the A400M Project, including a description of the specific information, materials or documents provided, the date provided, the name address and telephone number of the recipient of such information, materials or documents and the purpose of such dissemination.[31]

In response to this Interrogatory No. 13, both defendants simply replied "None."[32]

As a result of the technical evidence provided by plaintiff along with the email discussions amongst Hamilton employees and between Hamilton employees and Ratier employees, plaintiff now

---

[31] *See id.* at (Exhibit 11 and Exhibit 12).

[32] *Id.*

-10-

contends that this Interrogatory response is "false." As with Mr. Siminel's testimony, the court does not believe that the evidence provided by plaintiff constitutes clear evidence of fraud upon the court so as to warrant striking defendants' defenses.

Moreover, Ratier's Second Amended Answers to Interrogatories, No. 2 state that the only contracts or agreements between defendants and any other party concerning the design, development or manufacture of the propeller deicing system for the A400M Project were identified as the ICE Memorandum of Understanding and the Purchase Agreement dated November 14, 2005, between Ratier and Artus.[33] However, plaintiff contends that "in an effort to evade the consequences of the terms of Ratier's contract with Artus, Defendants assert that an unsigned November 5, 2005 email transmitting a compliance matrix for the AM400 Project . . . is a contract document that modified Ratier's rights under the later-executed Purchase Agreement."[34]

The court will address defendants' production of these design documents from Artus in a subsequent memorandum and order.[35] However, the court does not conclude that by failing to identify a November 5, 2005 email between Ratier and Artus in Ratier's Second Amended Answers

---

[33]*See id.* at (Exhibit 23). Plaintiff also contends that Hamilton Sundstrand's Third Amended Answers to Interrogatories, No. 2 also failed to identify this email. *See id.* at p. 10. However, Hamilton's Third Amended Answer to Interrogatory, No. 2 did not identify the November 14, 2005 Memorandum of Understanding and Purchase Agreement between Ratier and Artus either. *See id.* at (Exhibit 24). The court reasons this is likely because the November 14, 2005 Purchase Agreement was not between Hamilton and Artus directly. Similarly, the November 5, 2005 email is not between Hamilton and Artus either. As a result, the court will not address plaintiff's argument that Hamilton's Third Amended Answer to Interrogatory, No. 2 "failed" to identify the November 5, 2005 email between Ratier and Artus.

[34]*Id.* at p. 10.

[35]*See* Plaintiff's Supplemental Motion to Compel (Doc. 297).

to Interrogatories No. 2 that defendant Ratier's conduct constitutes a fraud upon the court so as to warrant striking defendants' defenses.

Likewise, as the present motion has not been brought under Rule 37(c), the court need not consider whether defendants should have seasonably supplemented their responses to plaintiff's interrogatories pursuant to Rule 26(e) and whether sanctions under Rule 37(c) are appropriate. However, the court reminds defendants of their duty to seasonably supplement their answers to interrogatories and responses to plaintiff's requests for production as required by Rule 26(e).

Evaluating defendants' responses to plaintiff's interrogatories under the factors in *Chavez*, the court finds striking defendants' defenses is not warranted.[36] First, the degree of actual prejudice to the plaintiff seems minimal. As the court has explained, the court will separately address the pending motion regarding the documents plaintiff seeks. During that memorandum and order, the court can evaluate whether other lesser sanctions are warranted. Moreover, even if defendants' responses to these interrogatories are inaccurate, the amount of interference with the judicial process has not been significant. To that end, the court has not warned defendants that striking their defenses would be the likely sanction for noncompliance.

### 3. Abusive discovery practices.

As detailed below, the court finds that striking defendants' defenses based upon their alleged "abusive discovery practices" is unwarranted.

#### a. Discovery abuses alleged in plaintiff's original motion.

---

[36]*Chavez*, 402 F.3d at 1044 (citing *Ehrehaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

The court notes that all of the "abusive" discovery practices plaintiff cites in support of its original motion to strike have been resolved by the court in various separate orders. The court has found several of defendants' objections to written discovery unfounded and has granted, in part, plaintiff's motions to compel.[37] So too, the court has either denied defendants' motions for protective orders[38] or merely granted defendants a limited protective order.[39] The court also notes that in certain instances defendants "failed to confer, compare views, consult and deliberate" in violation of D. Kan. Rule 37.2[40] and cited outdated versions of the Federal Rules of Civil Procedure.[41] However, the court has already addressed these discovery disputes and in several instances expressly found sanctions unwarranted.[42] Moreover, the court has also granted a motion to compel filed by defendants,[43] albeit only after defendants established the relevance of the

---

[37]*See* Memorandum and Order (Doc. 208)(granting in part and denying in part plaintiff's Motion to Compel); Memorandum and Order (Doc. 230) (granting in part and denying in part plaintiff's Motion to Compel).

[38]*See* Memorandum and Order (Doc. 278) (denying defendants' motion for protective order); Memorandum and Order (Doc. 289)(denying defendants' motion for protective order and requiring defendants to show cause as to why sanctions should not be imposed);

[39]*See* Memorandum and Order (Doc. 255)(granting in part and denying in party defendant Ratier's Motion for Protective Order).

[40]*See* Memorandum and Order (Doc. 255) at p. 3 (granting in part and denying in part defendant Ratier's Motion for Protective Order).

[41]*See* Memorandum and Order (Doc. 265) at p. 7-8 n. 22 ("In fact, all the case law regarding relevance cited by [defendant] predates the 2000 amendment to Rule 26."); *id.* at p. 3.

[42]*See e.g.* Memorandum and Order (Doc. 208) at p. 32-33.

[43]*See* Memorandum and Order (Doc. 265) (granting defendants' motion to compel).

documents it sought, and has also denied plaintiff's own motion for a protective order.[44] In both of these instances, the court expressly declined to award sanctions against plaintiff.[45]

While in certain instances defendants might have walked the fine line between zealously advocating for their clients and engaging in overly aggressive discovery practices, the court believes defendants have stayed on the appropriate side of that line. In the one Memorandum and Order in which the undersigned considered levying sanctions against defendants, the court ordered defendants to show cause why the court should not sanction defendants by awarding plaintiff its reasonable costs in defending the motion.[46] To that end, the court will address this matter in a separate memorandum and order.

### b. Discovery abuses alleged in plaintiff's reply in support of the present motion.

In plaintiff's reply in support of the present motion, plaintiff lists further examples of defendants' alleged "pattern of discovery abuses."[47] Specifically, plaintiff contends that defendant Ratier's 30(b)(6) witnesses were unprepared and failed to bring necessary documents to their depositions.[48] The court will not address this instance of alleged "discovery abuse" in the present order. Should plaintiff seek to have the court sanction defendant Ratier based on Ratier's 30(b)(6)

---

[44]*See* Memorandum and Order (Doc. 294)(denying plaintiff's motion for protective order).

[45]*Id* at p. 9 ("Under the circumstances, the court believes it would prove unfair to sanction plaintiff for following in defendants' misguided footsteps."); Memorandum and Order (Doc. 265) at p. 17.

[46]Memorandum and Order (Doc. 289) at p. 12.

[47] *See* Reply (Doc. 335) at p. 23.

[48]*Id.* at p. 23-24.

witnesses' lack of responsiveness, such a request should be raised in a separate motion based on Rule 30(b)(6).[49] Raising this issue in a separate motion would allow defendant Ratier to fully respond and would provide the court with a complete record. Consequently, the court will not herein address plaintiff's argument as to what transpired during Ratier's 30(b)(6) witness testimony. Plaintiff shall have an addition eleven (11) days from the date of the order within which to file such a motion if it chooses to do so.

Plaintiff also cites defendants' actions regarding the deposition and document production of Dr. Colgren, defendants' expert.[50] Pursuant to the order of this court, plaintiff conducted a second deposition of Dr. Colgren.[51] This second deposition occurred on June 8, 2007, and in response to plaintiff's accompanying subpoena Dr. Colgren brought only "a small number of materials" but testified that he had brought all documents responsive to the subpoena with him.[52] Nevertheless, plaintiff asserts that after Dr. Colgren's deposition, and two days before the close of discovery, defendants produced over 1,800 pages of material relating to Dr. Colgren's opinions. Plaintiff contends that some of these documents were never contained in Colgren's file and were not produced at or before either of his depositions. Defendants, in their proposed surreply dispute

---

[49]*See* Rule 30(b)(6); Rule 37(d); *T & W Funding Co. XII L.L.C., v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730 (D. Kan. 2002).

[50] Reply (Doc. 335) at p. 28.

[51]*See* Memorandum and Order (Doc. 278) (denying defendants' motion for a protective order).

[52]*Id.*

plaintiff's characterization of these events, and in turn describe mere "minor discrepancies between defendants' document production and Dr.Colgren's[.]" [53]

As with plaintiff's arguments concerning Ratier's 30(b)(6) witness deposition testimony, the court believes that a separate motion seeking leave to redepose Dr. Colgren and/or for sanctions against defendants pursuant to Rule 37 would provide a better forum within which to address this issue. Plaintiff shall have an additional eleven (11) days within which to file such a motion, if it chooses to do so.

Because the court will not consider these "additional" examples of discovery misconduct in the present report and recommendation and memorandum and order, the court need not afford defendants leave to file a surreply to address these issues.[54]

### C. Conclusion

In summation, the court does not believe that plaintiff established that defendants have committed a fraud upon the court so as to warrant striking defendants' defenses. Even if the court found plaintiff had proved its allegations, under the factors outlined in *Chavez*, the "aggravating factors" would not "outweigh the judicial system's strong predisposition to resolve cases on the merits."[55] Indeed, this court takes seriously the caution that because the relief plaintiff seeks would

---

[53] *See* Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Strike (Exhibit A) at p. 15-16.

[54] *See* Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Strike Defendants' Defenses (Doc. 354).

[55] *Ehrehaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).

"defeat[] altogether a litigant's right of access to the courts, it should be used as a weapon of last, rather than first, resort."[56]

Accordingly,

IT IS THEREFORE RECOMMENDED that the District Court deny plaintiff's Motion to Strike Defendants' Defenses and Memorandum in Support (Doc. 195). Pursuant to 28 U.S.C. § 636 (b)(1), as set forth in Federal Rule of Civil Procedure 72(b) and D. Kan Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

IT IS FURTHER ORDERED that defendants' Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Strike Defendants' Defenses (Doc. 354) is denied as moot.

IT IS FURTHER ORDERED that defendants' Motion to Strike and Memorandum in Support of Motion to Strike Plaintiff's Motion to Strike Defendants' Defenses (Doc. 211) is denied as moot.

IT IS FURTHER ORDERED that plaintiff shall have an additional eleven (11) days within which to file a motion pursuant to Rule 37 or Rule 30(a)(2) for defendants' alleged discovery misconduct as related to Ratier's Rule 30(b)(6) depositions as well as the deposition of Dr. Colgren described above.

IT IS SO ORDERED.

Dated this 9th day of August, 2007, at Topeka, Kansas.

                                s/ K. Gary Sebelius
                                K. GARY SEBELIUS
                                U. S. MAGISTRATE JUDGE

---

[56]*Id.* at 920.