IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| ICE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4135-JAR |
| | ) | |
| HAMILTON SUNDSTRAND | ) | |
| CORPORATION and RATIER-FIGEAC, | ) | |
| S.A.S., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court upon plaintiff's Renewed Motion to Compel Defendants

to Execute Business Records Releases Directed to Artus and Airbus (Doc. 297). Defendants have

filed a response (Doc. 310) to which plaintiff has replied (Doc. 321). Accordingly, the court finds

this motion ripe for disposition. As detailed below, the court grants in part and denies in part the

present motion.

**I.      Background**

In 2004, Hamilton Sundstrand and Ratier-Figeac, a French corporation and a subsidiary of

Hamilton's parent company United Technologies Corporation, ("defendants) and ICE Corp.

("plaintiff") formed a business relationship to develop a deicing propeller system for the A400M

military transport aircraft project being built by Airbus. The parties subsequently entered into a

Memorandum of Understanding outlining the details of this transaction.

Plaintiff claims that in designing the deicing system for the A400M, plaintiff's engineers

developed, and shared with defendants, a new method of design for the deicing controller which

relied on an innovative approach to sequencing of power and component communication. In June

2005, plaintiff and defendants relationship ended. Defendants replaced ICE with Artus, a French

company, to work on the deicing portion of the AM400 project.  In November of 2005, ICE initiated

the instant suit against defendants claiming breach of contract, breach of implied contract, unjust

enrichment, negligent misrepresentation, and misappropriation of trade secrets under K.S.A. 60-

3320(4).

On May 9, 2007 the undersigned granted in part and denied in part plaintiff's Second Motion

to Compel (Doc. 140).  In plaintiff's Second Motion to Compel, plaintiff asked the court to compel

defendants to sign authorizations pursuant to a its Second Request for Production No. 4 which

provided

> Plaintiff requests that Defendants sign the attached Business Records Releases for Airbus
> and Artus.  Please indicate whether or not Defendants will sign the attached records
> releases."

Defendants responded as follows:

> Response: Defendants object to Request No. 4 on the grounds that it does not seek the
> production of documents but instead requests that Defendant take some other action that is
> not within the scope of Rule 34 or the Federal Rules of Civil Procedure and that Defendants
> do not have the authority to grant ICE access to documents that are in the possession,
> custody or control of nonparties Airbus and Artus.  Accodinly [sic], Defendants cannot agree
> to sign the releases attached to Plaintiff's Requests.[1]

Plaintiff's Second Motion to Compel asserted that Artus had "stolen ICE's proposed [deicing]

design"for the A400M project and that plaintiff had requested all of Artus' design documents

relating to the deicing controller, including all schematics, project specifications, mechanical

drawings or communications with Artus relating to its design work on the A400M.[2]  However,

defendants had denied that they had possession, custody, or control of these design documents.

---

[1]Second Motion to Compel (Doc. 140) at (Exhibit 8) p. 3.

[2]*Id.* at p. 4.

For example, plaintiff's First Request for Production No. 42 sought:

All documents concerning, relating to or evidencing the design of the propeller deicing system and each of its components actually utilized by Defendants and/or Airbus Militarie in the development of the A400M Project, including but not limited to plans, blueprints, specifications, drawings, diagrams, details, assembly information or other descriptions.

In response, defendants asserted they "will produce responsive, nonprivileged documents in their possession, custody or control."[3]

To that end, plaintiff's Second Motion to Compel sought to have defendants execute releases to both Artus and Airbus to authorize the release of these design documents.[4]  However, the court found that because plaintiff had failed to seek these documents via Rule 45 first, the court was unwilling to allow plaintiff to bypass Rule 45.  In its briefing, plaintiff cites cases from *outside* the District of Kansas and the Tenth Circuit wherein courts required parties to the litigation to sign releases so as to allow third-parties to release various discoverable documents.

However, *Johnson* [*v. Kraft Foods North America, Inc.,*] a published case in the District of Kansas, counsels that "[i]t is only *after* the individuals or entities object on grounds of privilege or otherwise fail to produce the documents *pursuant to the subpoena* that the Court will consider a motion requesting (1)the court compel the entity to produce documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's general power to enforce its orders."[5]

Here, like *Johnson*, plaintiff has not attempted to subpoena the third-parties who have direct control over the documents at issue.  As a result, "at this juncture . . . there is no basis under Rule 34 to allow this Court to compel [defendants] to sign the release forms as requested."[6]

_____

[3]First Motion to Compel (Doc. 80) at (Exhibit B) at p. 12.  Plaintiff made several other requests for production that were similar in nature. *See e.g.*, Request for Production No. 51.

[4]Plaintiff had failed to include copies of the releases at issue in its original motion.  See Memorandum and Order (Doc. 230) at p. 3.

[5] 236 F.R.D. 535, 549 (D. Kan. 2006)(emphasis added).

[6]Memorandum and Order (Doc. 230) at p. 2-3.

As a result, the court declined to grant plaintiff's Second Motion to Compel to the extent it sought to compel defendants to execute releases for designs physically possessed by Airbus and Artus regarding the AM400 project.

Plaintiff has now filed the present motion seeking execution of releases by defendants directed to both Airbus and Artus.[7] In turn, defendants argue that plaintiff has failed to comply with Rule 45 thus the court should deny the instant motion. Plaintiff also argues, and includes evidence in support, that these design documents are in the "control" of defendants and should be produced for that reason.

As detailed below, the court will order the production of these design documents because they are within the "control" of defendants and responsive to discovery requests already ordered to be produced by the undersigned. However, to the extent the instant motion seeks execution of releases as to Artus and Airbus, such relief is denied.

---

[7]Plaintiff has included these releases as Exhibits. *See* Renewed Motion to Compel (Doc. 297) at (Exhibit 1 and 2)(permitting plaintiff's counsel to obtain, among other things, (A) All current and previous specifications for the propellor deicing system on the A400M; (B) All documents reflecting the proposed design for the propellor deicing system on the A400 M, including both the presently exiting and previous proposed design documents).

4

**II.     The design documents plaintiff seeks from Artus are within the "control" of defendants.**

When contemplating whether to compel a party signature, courts in the District of Kansas routinely address the issue of whether the documents at issue are in the "control" of that party.[8] However, whether the court should compel a party's signature and whether the documents are in that nonmoving party's control are separate and not necessarily related injures.  As the Honorable Judge Botswick explained:

> The Court does not agree with Defendants' argument that [plaintiff] cannot file a motion to compel Defendants to produce documents pertaining to a non-party pursuant to Fed. R. Civ. P. 34, until [plaintiff] has attempted to obtain those documents by means of a subpoena to the non-party under Fed. R. Civ. P. 45.  Where [plaintiff] has some evidence that would indicate that a party has 'control' over documents of a non-party, even though the non-party has actual possession of the documents, [plaintiff] can proceed under Rule 34 if it can meet the burden of proving that the Defendants do have the requisite 'control' of the documents.[9]

Here, plaintiff has argued, and defendants have attempted to refute, that defendants have "control" over the design documents at issue.  The issue is therefore briefed and ripe for decision.

---

[8]*See e.g.*, *Directv, Inc. v. Hess*, No. 04-2233-GTV, 2005 U.S. Dist. LEXIS 2346 at *3-4 (D. Kan. Feb. 9, 2005)(finding that "the relationship between Defendant and the prospective entities to which the authorizations will be sent is not sufficient to establish control at this juncture of the discovery process" and noting separately that the moving party had not attempted to secure copies of the documents at issue for the third party via Rule 45); *Shaw v. Management & Training Corp.*, No. 04-2394-KVH, 2005 U.S. Dist. LEXIS 2348 at *6-7 (D. Kan. Feb. 9, 2005) (same); *EEOC v. Thorman & Wright Corp.*, 2007 U.S. Dist. LEXIS 41200 at *4-5 (D. Kan. June 5, 2007) (same); *Stoldt v. Centurion Indus.*, No. 03-2634-CM, U.S. Dist. LEXIS 2343 at *24-25 (Feb. 3, 2005)(same).

[9]*Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc.*, No. 05-2164-MLB U.S. Dist. LEXIS 22090 at *64 n. 23 (D. Kan. March 26, 2007)

A.      **Standard for "Control" of documents under Rule 34.**

The Federal Rules of Civil Procedure require production of documents "which are under the possession, custody or control of the party upon whom the request is served."[10]  The party seeking production of documents bears the burden of proving that the opposing party has the control required under Fed. R. Civ. P. 34(a).[11]  "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents."[12]  Specifically, "Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the *legal right to obtain the documents on demand*."[13]  However, "[l]egal ownership is not determinative of whether a party has custody, possession, or control of a document for the purposes of Rule 34."[14]

Therefore, Rule 34(a) enables a party seeking discovery to require production of documents beyond the actual possession of the opposing party if such party has retained "any right or *ability*

---

[10]*See* Fed. R. Civ. P. 34(a).

[11] *Super Film of America, Inc., v. UBC Films,* Inc., 219 F.R.D. 649, 653 (D. Kan. 2004) (citing *Norman v. Young*, 422 F.2d 470, 472 (10th Cir. 1970)).

[12] *Super Film*, 219 F.R.D. at 651 (citing *Comeau v. Rupp*, 810 F. Supp. 1127, 1166 (D. Kan. 1992); *see also McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 692 (D. Kan. 2000); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 307 (D. Kan. 1996)).

[13]*Heartland Surgical Specialty Hospital, LLC. v. Midwest Division, Inc.*, No. 05-2164, MLB, 2007 U.S. Dist. LEXIS 22090 at * 61 (D. Kan. March 26, 2007) (citing *Starlight International v. Herlihy*, 186 F.R.D. 625 (D. Kan. 1999))(emphasis added).

[14]*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992).  *See also* 2-15 Moore's Federal Practice and Procedure § 15.16 (2007) ("It should be noted that legal ownership of the requested items or things is not determinative [.]").

6

*to influence* the person in whose possession the documents lie."[15]   Put another way, "Rule 34 performs the salutary function of creating access to documentation in an economical and expeditious fashion by requiring a party to produce relevant records not in its physical possession when the records can be *obtained easily* from a third-party source."[16] "Production of documents not in a party's possession is required if a party has the *practical ability* to obtain the documents from another, irrespective of legal entitlements to the documents."[17] To that end, "[t]he ability to obtain documents on demand is not affected by the source's retention of ownership or its unilaterally imposed restriction on disclosure."[18]

For the moving party to demonstrate control may prove difficult because the discovery sought is in the actual possession of a party other than the party to whom the request is addressed.[19] That said, "it is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request."[20] Without an expanded scope of production, a third

---

[15] *Super Film*, 219 F.R.D. at 651(citing *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mutual Insurance Group, et. al.*, 2003 U.S. Dist LEXIS 12160, * 5-6. (D. Kan. June 4, 2003))(emphasis added).

[16]*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111(D. Colo. 1992) (emphasis added).

[17]*American Maplan Corp. v. Heilmayer*, No. 00-2512-JWL, 2002 U.S. Dist. LEXIS 993 at * 4 (D. Kan. January 21, 2002).

[18]*Id.* (citing *National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 566 (D. Kan. 1994)).  *See also* 2-15 Moore's Federal Practice and Procedure § 15.16 (2007)("Legal restrictions that may limit a party's ability to obtain certain items or to disclose them to others will not necessarily preclude a finding that the party has possession, custody, or control over those items.").

[19] *Super Film*, 219 F.R.D. at 653-54.

[20] *Id.* at 654 (citing *Compagnie Française D'Assurance Pour Lo Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 33 (S.D.N.Y. 1984)).

party with a significant interest in the litigation could stymie the rules of discovery to the disadvantage of the party seeking production and the court.[21]  However, discovery is intended to "disclose the real points of dispute between the parties and to afford an adequate factual basis in preparation for trial."[22]  To further these purposes, the federal courts afford a "broad and liberal treatment" to the rules of discovery.[23]

In *Société Internationale v. Rogers*[24] the Supreme Court directed "lower courts to closely examine the actual relationship between the two corporations" when addressing the issue of control and to "guard against not just fraud and deceit, but also sharp practices, inequitable conduct, or other false and misleading actions whereby corporations try to hide documents or make discovery of them difficult."[25]  This liberal construction of Fed. R. Civ. P. 34 fits within the American civil process, which "puts a premium on disclosure of facts to ascertain the truth as the means of resolving disputes."[26]

Following the Supreme Court lead,[27] lower courts have interpreted control under Rule 34 to warrant production where "the parties' history, association, and assignments and transactions

---

[21]*Id.*

[22] *Id.* (citing *Alimenta v. Anheuser-Busch Cos, Inc.*, 99 F.R.D. 309, 312 (N.D. Ga. 1983)).

[23] *Id.* (citing *Alimenta,* 99 F.R.D. at 312, citing *Hickman v. Taylor*, 329 U.S. 495, 506 (1947)).

[24] 357 U.S. 197, 204 (1958).

[25]  *Super Film*, 219 F.R.D. at 654 (citing *Uniden America Corp.*, 181 F.R.D. at 306).

[26] *Id.*

[27] *Société Internationale*, 357 U.S. 197, 206 ("Rule 34 is sufficiently flexible to be adapted to the exigencies of particular litigation.").

together show sufficient mutuality,[28] and where the " non-party agrees to produce documents at the request of a party."[29]

Other factors to consider when determining whether a party has control of documents are

(1) the use or purpose to which the materials were employed (2) whether the materials were acquired, or maintained with the party's assets (3) whether the party determined the material's use, location, possession, or access (4) who actually had access to and use of the materials (5) the extent to which the materials serve the party's interest (6) any formal or informal evidence of a transfer or ownership or title.[30]

Consideration of factors regarding "control" of documents should " focus on the other corporation's actual control or inferred control, including any 'complicity' in the storing or withholding documents."[31]

**B.    Plaintiff has met its prima facie burden to establish that defendants have "control" over the design documents at issue.**

Plaintiff has provided compelling evidence that defendants could request these design documents from Artus.   Defendants' Master Terms Agreement ("MTA") with Artus, dated November 14, 2005 provides:

17.10 Certain Intellectual Property Rights.  The property rights in all inventions, patents, *designs*, process data and information and improvements thereto ("Intellectual Property") owned by HS Company prior to or created by HS Company or Supplier under this MTA or the applicable PA *shall at all times remain vested in HS Company or immediately vest in HS*

---

[28]   *Super Film*, 219 F.R.D. at 654 (citing *Bank of New York v. Meridien BIAO Bank of Tanzania, Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997) (Defendant ordered to produce documents in the possession of its co-defendant's successor-in-interest, who was not a party to the action.)).

[29] *Id.* (citing *Holland American Merchants Corp., v. Rogers*, 23 F.R.D. 267, 269 (S.D.N.Y. 1959) (Production ordered because agreement by third party implied existence of control)).

[30]Moore's Federal Practice and Procedure § 15.16 (2007).

[31]*Super Film*, 219 F.R.D. at 654 (citation omitted).

*Company as they are created.*  The property rights in all Intellectual Property owned by Supplier prior to this MTA or the applicable PA shall at all times remained vested in Supplier.  HS Company shall have a paid up license to use such pre-existing Supplier-owned Intellectual Property only for the purpose of this MTA or the applicable PA.

To the extent permissible by law, all Intellectual Property produced or first reduced to practice in the performance of this MTA, PA or Release shall be deemed "works made for hire" or otherwise the property of the applicable HS Company.  Supplier, on behalf of itself, its employees and its subcontractors, hereby irrevocable assigns to the HS Company *all right, title and interest to all Intellectual Property produced or first reduced to practice in the performance of this MTA, PA or Release,* and agrees to do all things reasonably necessary to enable the HS Company to secure worldwide patents, copyrights and any other rights relating to such Intellectual Property, including execution of a specific assignment of title of such Intellectual Property to the HS Company.[32]

Defendants argue that "it is not clear that the detailed design drawings are included in the scope of 'Intellectual Property' as defined by the" Master Terms Agreement.[33]  In light of defendants' failure to elaborate on this argument and considering the plain language of this provision which expressly applies to *designs*, the court disagrees.  After reviewing this section of defendants' MTA with Artus, it seems clear to the court that defendants own the *designs* created either by defendants or Artus under this MTA or the parties' Purchase Agreement ("PA").  A plain reading of the MTA reveals as much.  The court wonders what, if anything, would constitute "Intellectual Property" as discussed in the MTA if the design drawings, which the MTA specifically designates as "Intellectual Property" and which defendants hired Artus to complete, could not be classified as such.  As a result, the court finds that plaintiff has provided sufficient evidence to demonstrate that defendants "own" and thus control the design documents in Artus' physical possession.

---

[32] Response (Doc. 310) at (Exhibit 7) (emphasis added)..

[33] Response (Doc. 310) at p. 6.

However, aside from arguing that it "believes similar [contractual] provisions may exist in Airbus Military contracts"[34] plaintiff has not demonstrated any reason to believe that defendants have control over any design documents in Airbus' actual possession.  A moving-party fails to meet its burden to demonstrate control when it merely asserts that the adverse party has control over documents.[35]  As a result, the court will only consider whether plaintiff has met is prima facie burden that defendants control the design documents in the actual possession of Artus, not Airbus.

**1.    The court is not persuaded by defendants' arguments that it has no control over the design documents in Artus' physical possession.**

Defendants go to great lengths to refute that they "control" the design documents at issue.[36]  First, defendants argue that even if "Intellectual Property" encompassed the design drawings at issue, it would prove irrelevant because the provisions of the Purchase Agreement take precedent over any *conflicting* term in the Mater Terms Agreement.[37]  Defendants point out that the MTA provides an order of preference which "[i]n the event of any conflict or inconsistency between the provisions of this MTA, the PA, the Releases and the applicable terms and conditions of purchase, such conflict or inconsistency shall be resolved by giving precedence" to the PA over the MTA.[38]  In turn, defendants note that the PA provides in the Definitions section under the heading

---

[34]*See* Reply (Doc. 321) at p. 2.

[35]*See e.g.*, *Directv, Inc. v. Hess*, No. 04-2233-GTV, 2005 U.S. Dist. LEXIS 2346 at *3-4 (D. Kan. Feb. 9, 2005)(finding that "the relationship between Defendant and the prospective entities to which the authorizations will be sent is not sufficient to establish control at this juncture of the discovery process.").

[36]*See e.g.*, Response (Doc. 310) at p. 1, 5, 6, 8.

[37]*Id.* at p. 6 (emphasis added).

[38]*Id.* at (Exhibit 7) at p. 9.

"Applicable documents" "*The supply of Products* is governed by the following documents in the decreasing order of priority indicated below" wherein the "SOW" has priority over the MTA.[39] Defendants then argue that the SOW, or the Statement of Work "was modified by Artus and Ratier to eliminate the *requirement* that Artus provide Ratier with detailed design drawings" via an emailed compliance matrix.[40]  Defendants then argue that this compliance matrix provides "Artus intends to delivery only assembly drawings.  The other drawings can be seen on site only."[41]

The court is not persuaded by defendants' contention that the "compliance matrix" modifies the relationship between defendants and Artus so that defendants have no "control" over the detailed drawings they "own" as a result of the MTA.  First, defendants correctly point out that the MTA provides "[i]n the event of any *conflict* or *inconsistency* between the provisions of this MTA, the PA, the Releases and the applicable terms and conditions of purchase, such conflict or inconsistency shall be resolved by giving precedence" to the PA over the MTA.[42]  However, the court can reason no inconsistency or conflict between the MTA and the PA.  As previously mentioned, the court finds that the MTA provides ownership of the "Intellectual Property" and specifically these "designs" to defendants.  In turn, the PA provides under the "Definitions" section under the heading "Applicable documents" "*The supply of Products* is governed by the following documents in the decreasing order of priority indicated below" wherein the "SOW" has priority over the MTA.[43]  A plain reading of

---

[39]*Id.* at (Exhibit 8) at p. 4.

[40]*Id.* at p. 7 (emphasis added).

[41]*Id.* at (Exhibit 9) at p. 2.

[42]*Id.* at (Exhibit 7) at p. 9.

[43]*Id.* at (Exhibit 8) at p. 4.

12

this provision means that priority as to the *supply of Products* prioritizes the terms of the SOW over the MTA.  This definition section does not indicate that the SOW takes priority over the MTA as to the relationship of the parties, or as to the ownership of the Intellectual Property at issue. Moreover, neither the email, which attached the "compliance matrix", nor the "compliance matrix" offered by defendants as a "modification" of the SOW, references the SOW.  In fact, defendants have failed to explain who sent this email.  Indeed, defendants have not provided the SOW to the court, so the court cannot evaluate whether the SOW would even allow for modifications.

Finally, even if the court were to agree that the "compliance matrix" could modify the SOW and thus the relationship between defendants and Artus, the court is not persuaded that this modified agreement would conflict with the MTA.  The compliance matrix spreadsheet contains a row labeled "detail drawing."   In this row under the heading "ARTUS document name/comments" the compliance matrix provides "ARTUS *intends* to deliver only assembly drawings.  The other drawings can be seen on site only."[44] However, in this "detail drawing" row, next to this comment under the heading "ARTUS document reference" the compliance matrix confusingly states: "not OK?"[45]

This "comment" that ARTUS "intends" to delivery only the assembly drawings along with the statement that "other drawings" can be viewed only on site is not enough to indicate to the court that defendants would have not right to "control" the "other documents" if it so wished.  Again, even as characterized by defendants, this provision simply "*eliminate*[d] the *requirement* that Artus

---

[44]*Id.* at (Exhibit 9) p. 2.

[45]*Id.*

provide Ratier with detailed design drawings"[46] it did not redefine the ownership or control of such drawings.

Moreover, irrespective of the meaning of the comment, that the phrase "_not OK?_" is adjacent to this comment implies that defendants and Artus did not have a meeting of the minds as to the inclusion of this comment in their agreement.  As defendants fail to mention the "not OK?" note, much less explain their interpretation of its meaning, the court is further at a loss.

Defendants further attempt to argue that they do not "control" the documents at issue by noting that the in a case from the District of Massachusetts regarding control, cited by plaintiff in the instant motion, defendants had the "right, upon reasonable notice, to examine and copy the information" sought by plaintiffs.[47]  In turn, defendants argue that "the contract between Ratier and Artus does not give defendants control over Artus's documents or the right to demand _copies_ of those documents.  In particular, the Master Terms Agreement . . . between Artus and Ratier does not give Ratier the right to obtain detailed design documents from Artus."[48]  What defendants fail to comprehend, and what a simple search of the case law in the District of Kansas regarding "control" in the context of Rule 34 would have revealed, is that an express agreement allowing for the "copying" of documents between a party and a third-party is not a prerequisite for the court to find that the party "controls" the said documents.

---

[46]_Id._ at p. 7 (emphasis added).

[47]Response (Doc. 310) at p. 6. (citing _Rosie v. Romney_, 256 F. Supp. 1115 (D. Mass. 2003)(emphasis by defendants).

[48]_Id_ (emphasis added).

      **2.      Defendants, as the owners of the designs, have the legal right to obtain the documents on demand.**

      In the District of Kansas, "Courts have universally held that documents are deemed to be within the possession, custody or control if the party has actual possession, custody or control or has the *legal right to obtain the documents on demand*."[49]  Here, based on the unambiguous section of the MTA, defendants own the designs and thus, the court infers, have the legal right to obtain the documents on demand.  Moreover, while courts have cautioned that "[l]egal ownership is not determinative of whether a party has . . . control of a document for the purposes of Rule 34"[50] the court takes this to mean: if the third-party has "legal ownership" of the document, the inquiry as to control does not end there.  Conversely, if a party does have legal ownership, as here, the court finds a strong indication that defendants possess the very definition of "control" over these documents.

      **3.      Even if defendants did not own the designs, plaintiff has still demonstrated that defendants sufficiently control the designs.**

      Moreover, a party has "control" of documents under Rule 34 if such party has retained "any right or *ability to influence* the person in whose possession the documents lie."[51]  While defendants base their argument on the fact that the contract between themselves and Artus does not expressly allow for the *copying* of these documents, defendants have failed to persuade the court that they could not simply ask, or employ their "right or ability to influence", Artus for copies of the designs.

---

[49]*Heartland Surgical Specialty Hospital, LLC. v. Midwest Division, Inc.*, No. 05-2164, MLB, 2007 U.S. Dist. LEXIS 22090 at * 61 (D. Kan. March 26, 2007) (citing *Starlight International v. Herlihy*, 186 F.R.D. 625 (D. Kan. 1999))(emphasis added).

[50]*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992).  *See also* 2-15 Moore's Federal Practice and Procedure § 15.16 (2007) ("It should be noted that legal ownership of the requested items or things is not determinative [.]").

[51] *Super Film*, 219 F.R.D. at 651(citing  *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mutual Insurance Group, et. al.*, 2003 U.S. Dist LEXIS 12160, * 5-6. (D. Kan. June 4, 2003)).

Here, the court has every reason to believe that these designs can be "*obtained easily*" from Artus[52] and that defendants possess the "the *practical ability* to obtain the documents from [Artus], irrespective of legal entitlements to the documents."[53] To that end, even if the court were to believe that Artus felt it could restrict defendants to viewing the design documents on cite, defendants' control of the documents still could be established because "[t]he ability to obtain documents on demand is not affected by the source's retention of ownership or its unilaterally imposed restriction on disclosure."[54]

Further, under the circumstances, the court believes that several factors additionally counsel that defendants "control" the design documents physically possessed by Artus.  Here, even under defendants' interpretation of the emailed "compliance matrix" between defendants and Artus, defendants have "access to and use of the materials[.]"[55] Indeed, in a carefully worded affidavit attached to a separate motion to compel, an employee of defendant Ratier asserts "Artus is not *required* by the contract with Ratier to deliver to Ratier copies of detailed schematics or mechanical drawings . . . .  Ratier has the right to view such drawings at Artus's [sic] location."[56]  Further,

---

[52]*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 111(D. Colo. 1992) (emphasis added).

[53]*American Maplan Corp. v. Heilmayer*, No. 00-2512-JWL, 2002 U.S. Dist. LEXIS 993 at * 4 (D. Kan. January 21, 2002).

[54]*Id.* (citing *National Union Fire Ins. Co. v. Midland Bancor, Inc*., 159 F.R.D. 562, 566 (D. Kan. 1994)).  *See also* 2-15 Moore's Federal Practice and Procedure § 15.16 (2007)("Legal restrictions that may limit a party's ability to obtain certain items or to disclose them to others will not necessarily preclude a finding that the party has possession, custody, or control over those items.").

[55]Moore's Federal Practice and Procedure § 15.16 (2007).

[56]Memorandum and Order at p. 27 (citing Defendants' Response (Doc. 90) at (Exhibit 7) to plaintiff's Motion to Compel (Doc. 80)).

considering the "use of purpose to which the [designs] were employed"[57] it is undisputed that defendants hired Artus to replace plaintiff so as to create certain design elements for the AM400 project.  Finally, even if the court believed the compliance matrix altered defendants' ability to demand copies of the design documents, based on the compliance matrix itself it seems that defendants  determined the "use, location, possession, or access"[58] of the designs.  Because it appears that defendants had a significant hand in placing these designs in Artus' actual possession and considering that the court should "focus on the other corporation's actual control or inferred control, including any '*complicity*' in the storing or withholding of documents"[59], production of these design documents is warranted.

The court has previously ordered defendants to produce all responsive documents in their custody and control to various requests for production, including plaintiff's First Request for Production No. 42 which sought:

> All documents concerning, relating to or evidencing the design of the propeller deicing system and each of its components actually utilized by Defendants and/or Airbus Militarie in the development of the A400M Project, including but not limited to plans, blueprints, specifications, drawings, diagrams, details, assembly information or other descriptions.[60]

The court finds the detailed design drawings, located in the physical possession of Artus, responsive to this and other requests for production.  To that end, the court will require defendants

---

[57]Moore's Federal Practice and Procedure § 15.16 (2007).

[58]*Id.*

[59]*Super Film*, 219 F.R.D. at 654 (citation omitted)(emphasis added).

[60]First Motion to Compel (Doc. 80) at (Exhibit B) at p. 12.  Plaintiff made several other requests for production that were similar in nature. *See e.g.*, Request for Production No. 51.

to produce copies of these detailed design drawings currently in the possession of Artus to plaintiff within twenty (20) days of this order.

Moreover, the court warns that there can be no collusion between defendants and Artus to deny plaintiff access to the design documents it seeks. Defendants cannot hold Artus at arms length, claiming no ability to control the documents for the purposes of this litigation, but still hold the power to simply request, either formally or informally, either pursuant to their general relationship with Artus, or pursuant to an express contractual provision in the MTA, for Artus to simply turn over these documents.[61]  Put simply, defendants cannot officially "ask" Artus to produce these documents, pursuant to the court's order, all the while implying to Artus that this "compliance matrix" means Artus need not provide these documents. There can be no "official request" with a proverbial knowing wink to the third-party that it need not comply. While the court has no reason to distrust defendants or their counsel, the court cautions the parties that it will not tolerate any insincere or half-hearted attempt to obtain these documents.

## III.    Execution of Releases

Defendants argue, and the court agrees, that plaintiff has made a feigned attempt to meet the requirements of Rule 45. Specifically, plaintiff failed to give defendants proper notice of the subpoenas *prior* to their service pursuant to Rule 45.[62]

---

[61]The court wonders if in a dispute between Artus and defendants wherein Artus argued that it "owned" the intellectual property associated with the creation of the AM400 project if defendants would continue to maintain the position that they did not own, much less "control" the intellectual property at issue.

[62]Defendants also argue that plaintiff failed to subpoena Artus or Airbus pursuant to the Hague Convention. The procedure outlined in *Johnson* does not contemplate such a requirement.  *See Johnson*, 236 F.R.D. at 549.
    Moreover, courts have routinely held that Fed. R. Civ. P. 45 and the procedures outlined

Rule 45(b)(1) states in part that "prior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)."  In turn, Rule 5(b) provides that a party can make service either by delivery or mail or by electronic means.  The 1991 Advisory Committee Notes to Rule 45 indicate that "the purpose of the notice requirement is to provide opposing parties an opportunity to object to the subpoenas.  For an objection to be reasonably possible, notice must be given well in advance of the production date."[63]  The Tenth Circuit has held that "Rule 45(b)(1) requires notice to be given prior to the service of a subpoena."[64]

Here, it is undisputed that plaintiff only provided defendants with notice of these subpoenas on June 8, 2007 when plaintiff filed their Return of Service.[65]  However these subpoenas were served on May 18 and May 25, 2007.[66]  The court's previous order required defendants to make a good faith effort to comply with Rule 45.

---

in the Hague Convention constitute completely different requirements.  *See e.g., First Am. Corp. v. Price Waterhouse*, 154 F.3d 16, 21 (2d Cir. 1998)(rejecting the contention that the "primary resort to the Hague Convention is or should be mandatory if the demand for discovery  is addressed to a non-party witness and noting that "Rule 45 draws no distinction between parties and non-parties concerning the scope of discovery."); *id* ("The Hague Convention is not the exclusive means for obtaining discovery from a foreign entity.  Nor is the Convention necessarily the means of first resort.").

[63]*Butler v. Biocore Medical Technologies, Inc*., 348 F.3d 1163, 1173 (10th Cir. 2003)(citing 1991 Advisory Committee Note to Rule 45).

[64]*Id.*; *see also Allender v. Raytheon Aircraft Co.*, 220 F.R.D. 661, 663-64 (D. Kan. 2004) (applying the rule in *Butler* and finding "[d]efendant's failure to give notice to plaintiff prior to serving its subpoenas [on third-parties] is a violation of Rule 45(b)(1).").

[65]*See* Return of Service (Doc 291); Return of Service (Doc. 292).

[66]*Id.*

19

As a result, the court finds that plaintiff made a half-hearted attempt to comply with the previous order of this court to meet the requirements outlined in Rule 45 and in *Johnson*.[67] Moreover, as the court has directed defendants to produce the design documents in the actual possession of Artus, the court finds plaintiff's request to compel defendants to authorize the releases at issue is largely moot.  Finally, the court also notes that the releases proposed, which were not included in plaintiff's original motion to compel, seek an overly broad sweep of documents and do not merely seek the known design documents as plaintiff implied in its original motion.  For these reasons the court sees no reason to contravene the general rule that the court cannot compel a party signature pursuant to Rule 34.

Accordingly,

IT IS THEREFORE ORDERED that plaintiff's Renewed Motion to Compel Defendants to Execute Business Records Releases Directed to Artus and Airbus (Doc. 297) is granted in part and denied in part.

IT IS FURTHER ORDERED that defendants will produce copies of the detailed design drawings of the A400M project currently in the possession of Artus to plaintiff within twenty (20) days of this order.

IT IS SO ORDERED.

Dated this 22d day of August, 2007, at Topeka, Kansas.

       s/ K. Gary Sebelius
       K. GARY SEBELIUS
       U. S. MAGISTRATE JUDGE

---

[67]236 F.R.D. at 549.