**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ICE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-4135-JAR |
| | ) | |
| v. | ) | Judge Julie A. Robinson |
| | ) | |
| HAMILTON SUNDSTRAND | ) | Magistrate Judge K. Gary Sebelius |
| CORPORATION  and RATIER-FIGEAC, | ) | |
| S.A.S., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR RELIEF REGARDING DEFENDANT RATIER DEPOSITIONS**

Defendants Hamilton Sundstrand Corporation and Ratier-Figeac, S.A.S., by their attorneys, submit this brief in opposition to Plaintiff's Motion for Relief Regarding Defendant Ratier Depositions (Doc. No. 374).

**INTRODUCTION**

ICE Corporation's Motion asks this Court to penalize defendants for ICE's own failures by imposing on defendants a sanction that is both draconian and wholly unwarranted.  ICE's Motion asks the Court to preclude defendants "from introducing any evidence" based upon unspecified "corporate records not produced at Ratier's 30(b)(6) depositions," including "both any evidence regarding the economic and financial issues regarding the costs of the [de-icing] program and various pricing, and any evidence relating to the design issues."  (Doc. No. 374 at 10.)  It is absolutely clear, however, that Ratier's 30(b)(6) designees had no obligation to produce any documents at the Ratier 30(b)(6) deposition because ICE failed to make a timely and proper request that they do so.  Defendants cannot be sanctioned for failing to comply with an obligation that did not exist.

ICE's other complaints about the Ratier 30(b)(6) depositions are similarly baseless.  As if rearguing the motion for a protective order that was decided by the Court on May 21, 2007 (Doc. No. 255), ICE spends an inordinate amount of time complaining about the fact that <u>this Court</u> required ICE's counsel to travel to France to take the  Ratier 30(b)(6) depositions rather than requiring multiple Ratier employees to travel to Kansas City, Missouri.  (<u>Id.</u> at 8 (finding that ICE "ha[d] not overcome the general presumption that such depositions should take place at Ratier's principle place of business").)  ICE also asserts, without any legal or factual basis, that there was something improper about Ratier's designation of its 30(b)(6) witnesses.

The "decision to exclude evidence is a drastic sanction."   <u>In re Indep. Serv. Orgs. Antitrust Litig.</u>, 85 F. Supp. 2d 1130, 1162 (D. Kan. 2000) (citing <u>Summers v. Missouri Pac. R.R. Sys.</u>, 132 F.3d 599, 604 (10th Cir. 1997).)  ICE has not provided either a factual or legal basis for the relief that it seeks.  ICE has not demonstrated (and could not demonstrate) that defendants engaged in any improper conduct in connection with the  Ratier 30(b)(6) deposition, much less that defendants engaged in the sort of extreme misconduct necessary to justify the extraordinary sanction that ICE seeks here.

If anyone should be sanctioned in connection with the  Ratier 30(b)(6) depositions, it should be ICE and its counsel, not defendants.   ICE's counsel unilaterally canceled the depositions of two Ratier designees, Stephane Andrieu and Bruno Seminel, the day the depositions were scheduled to occur and after both witnesses and their counsel had spent time preparing for their depositions.  In fact, ICE's counsel announced that he was refusing to proceed with the deposition of Mr. Andrieu — or even to allow Mr. Andrieu to be sworn — <u>after</u> Mr. Andrieu had arrived at the location for the deposition and was ready to testify.  (<u>See</u> Record of Proceedings, June 28, 2007 (attached as Ex. A) at 1-9.)  Federal Rule of Civil Procedure 30(g)

explicitly provides that sanctions may be imposed in this circumstance.  See Fed. R. Civ. P. 30(g) ("a party who, expecting a deposition to be taken, attends in person . . . may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to . . . attend and proceed with the deposition.") (emphasis added).  Indeed, one could readily conclude from the conduct of ICE's counsel that ICE never intended to use the Rule 30(b)(6) deposition of Ratier as a device to discover information.  Rather, ICE and its counsel sought to use the Ratier 30(b)(6) deposition to manufacture yet another discovery dispute in the hope of persuading this Court to impose sanctions on defendants and thereby avoid having this case resolved on the merits.  The Court should not tolerate this kind of gamesmanship.  ICE's baseless Motion should be denied.

## BACKGROUND

ICE's Motion attempts to confuse and mislead the Court by means of a highly selective and inaccurate rendition of the facts relating to the Ratier 30(b)(6) deposition.  Because the true facts make clear beyond any doubt that there is no basis for ICE's Motion, defendants include in this Response a detailed description of those events.

ICE filed its initial Notice of Rule 30(b)(6) deposition of Ratier's corporate representative on March 26, 2007, noticing the deposition for April 10, 2007, in Kansas City, Missouri.   (Doc. No. 149 at 1.)  The Notice set forth 25 topics on which testimony would be sought and explicitly declared that the Notice was "not a request for production, nor subject to Rule 34."  (Id.)  On April 2, 2007, defendants filed a Motion for Protective Order, which asked the Court to bar ICE from taking the 30(b)(6) deposition of Ratier on the ground that because all of the potential Rule 30(b)(6) designees reside in France ICE could and should have taken that deposition in February of 2007, when Ratier's counsel were already in France for the depositions of Ratier's employees,

and that as a result it would be unduly burdensome to require Ratier to produce witnesses for a Rule 30(b)(6) deposition.  (See Doc. No. 158 at 1.)  Defendants further argued that, if the Court permitted ICE to proceed with the Ratier 30(b)(6) deposition, the deposition should be conducted in Figeac, France, Ratier's principal place of business, rather than in Kansas City.  (Id.)  Although this Court's May 21, 2007 Order denied defendants' motion to prohibit the Ratier 30(b)(6) deposition, the Court found that ICE had failed to overcome the presumption that a Rule 30(b)(6) deposition should take place at the location of the corporation's principal place of business and directed that ICE depose Ratier's corporate representatives in France.  (Doc. No. 255 at 9.)[1]

In advance of a May 30, 2007, telephonic status conference set by the Court (Doc. No. 236), the parties filed a number of motions, including ICE's Motion to Permit Limited Specified Discovery or to Limit Discovery (Doc. No. 234).  Defendants' May 25, 2007 Response to that Motion — filed just days after the Court's Order allowing the Ratier 30(b)(6) deposition to go forward — proposed June 27 and 28, 2007, as dates for the Ratier 30(b)(6) deposition in Figeac, France.  (Doc. No. 271 at 4.)  Defendants specifically noted, however, that there was "one potential Ratier designee" who "might need to be deposed on the afternoon of June 26."  (Id. (emphasis added).)  The day after the May 30, 2007 status conference, defendants emailed to ICE a preliminary list of the Ratier representatives who would be designated to testify on 19 of the 25 topics on ICE's 30(b)(6) Notice.  See May 31, 2007 Email from S. Hemeryck to T.

---

[1] Although ICE complains in its Motion about Ratier's designation of Sebastien Mounier, who was unable to travel as a result of an injury he sustained at the end of March, the Court did not even mention this fact in reaching its determination that the Ratier 30(b)(6) deposition should proceed in France.  (See Doc. No. 255 at 7-9.)

Buchanan (attached as Ex. B).)  That list identified Stephane Andrieu, Philippe Atrous, Sebastien Mounier and Bruno Seminel.  (Id.)[2]

On June 11, 2007, ICE served an Amended Notice scheduling the 30(b)(6) deposition for June 27 and 28, 2007.  (Doc. No. 295.)  The Amended Notice identified Ratier's corporate headquarters as the location of the deposition and delineated 20 topics and 12 included subtopics, several of which were entirely new.[3]  (Id.)  The Amended Notice did not include a specific request for documents but stated that "[i]f Defendants claim that some of the responsive materials sought in the 30(b)(6) Notice to Hamilton Sundstrand are not in Defendant Hamilton Sundstrand's care, custody or control but are in Defendant Ratier-Figeac's care, custody or control, Plaintiff requests that those materials be produced at the deposition." (Id. at 1 (emphasis added).)  Defendants filed objections to the Amended Notice on June 19, 2007.  (Doc. No. 305.)

Defendants objected to holding the depositions at Ratier's corporate headquarters and informed ICE that defendants had reserved conference rooms at a hotel within five minutes of corporate headquarters.  (Id. at 2.)  Defendants also objected to ICE's attempt to require Ratier to produce documents at the deposition as contrary to the provisions of Federal Rules of Civil Procedure 30 and 34:

---

[2]  Mr. Atrous was designated to testify regarding four narrow topics included in ICE's initial Notice: the United Technologies code of ethics (Topic 19); the training of Ratier employees regarding the "use and confidentiality of information provided by suppliers" (Topic 20); and "[a]ny investigation, discipline, or employment action contemplated" as a result of Bruno Seminel's prior testimony or the alleged "delivery of ICE materials to Artus for use on the A400M project"  (Topics 20-21).  (Id.; see also Doc. No. 149 at 4-5.)  ICE did not object to Ratier's designation of Mr. Atrous to testify about any of these topics.

[3]  Defendants objected to the addition of these new topics as a violation of the Court's May 30, 2007 Order (Doc. No. 277), as ICE had neither conferred with defendants regarding the new topics nor filed a motion and received an affirmative ruling before proceeding with the new discovery, as required by the Court's May 30 Order.  (See Doc. No. 305 at 2.)

> To the extent [ICE's] instruction [regarding the Hamilton Sundtrand 30(b)(6) notice] is intended as a request for the production by Ratier of documents identified in Exhibit B to the Amended Notice of 30(b)(6) Deposition to Hamilton Sundtrand, the Amended Notice improperly attempts to circumvent the procedures set forth in the Federal Rules of Civil Procedure 30 and 34 and shorten the time within which Ratier is required to serve a written response to the requests. Rule 30 provides that the procedures of Rule 34 apply to a request for the production of documents by a deponent. Fed. R. Civ. P. 30(b)(5). Rule 34 allows 30 days to file a written response after service of requests for production. Fed. R. Civ. P. 34(b). The Amended Notice, however, purports to require Ratier to produce the documents identified in Exhibit B by June 27, just two weeks after the date that the Amended Notice was served. A party may not unilaterally shorten the response period provided by Rule 34 by noticing a deposition and requesting document production at that deposition. See Premier Resort Krabi, Ltd. v. Mohawk, Inc., 1997 WL 18154, *1 (D. Kan. Jan. 14, 1997).

(Id. at 3.)

On June 19, 2007, defendants sent to ICE's counsel a complete list of Ratier's designees on the topics listed in ICE's Amended Notice, adding Pierre Launet and Pascal Renaud to the list of previously identified corporate representatives. (See Email from S. Hemeryck to T. Buchanan (attached as Ex. C).)[4] At that time, defendants also confirmed — as they had forewarned on May 25, 2007 — that the deposition of Philippe Atrous would need to take place on the afternoon of June 26, 2007, as that was the only time that Mr. Atrous was available. (Id.) When ICE's counsel expressed concern that his chosen court reporter would have to change her flight in order to arrive on the afternoon of June 26, defendants offered to share the cost of changing her travel arrangements. (See June 22, 2007 Email from F. Sperling to T. Buchanan (attached as Ex. D).) ICE never responded to that offer. Instead, ICE's counsel advised defendants' counsel on the

---

[4] In response to the Amended Notice, Philippe Atrous was designated to testify concerning Topics 3 ("relationship between Hamilton Sundtrand and Ratier-Figeac, corporate reporting and hierarchy," etc.); 5 ("completeness and accuracy of the discovery responses made by Ratier-Figeac in this case"); and 18 ("content of United Technologies code of ethics," etc.). (Ex. C.) Defendants designated Mr. Atrous to testify about these topics because, as Ratier's in-house counsel, he was already knowledgeable about these topics.

afternoon of June 22, 2007 that ICE was withdrawing the topics for which Mr. Atrous had been designated.  (See June 22, 2007 Email from F. Sperling to T. Buchanan (attached as Ex. E).)

On Sunday, June 24, 2007 — just three days before the depositions were to begin and after defendants' counsel had departed for France — ICE's counsel sent an email to defendants' counsel that stated: "Since you have refused to produce Ratier's 30(b)(6) witnesses at corporate headquarters, at least please have each of them bring to their deposition the specific documents and materials they review to prepare."  (Email from T. Buchanan to F. Sperling (attached as Ex. F).)  Although ICE had known since June 19 that defendants objected to producing Ratier's 30(b)(6) witnesses at Ratier's corporate headquarters, ICE made no effort to bring this issue before the Court prior to the deposition.

The deposition proceeded at the Best Western hotel in Figeac, France, on June 27 and 28, 2007.  The questioning of Ratier's principal witness, Sebastien Mounier, took most of the day on June 27.  ICE's counsel did not ask Mr. Mounier a single question concerning what documents he had reviewed in preparing for the 30(b)(6) deposition, nor did he ask Mr. Mounier to produce any additional corporate records.  In the single instance in which ICE's counsel inquired about the completeness of a previously produced document marked as an exhibit during the deposition, defendants' counsel promptly located and provided to ICE's counsel a complete, color copy of the document so that the witness would be able to testify about information that could not be read on the black-and-white copy of the document that had originally been produced.[5]  Later in the day, counsel for defendants voluntarily located a second document bearing column headings

---

[5]  See Tr. of 6/27/07 Deposition of Sebastien Mounier (excerpts filed under seal as Ex. G), at 55:19 – 56:1 ("During the break we were able to obtain a complete and unredacted copy of the document that counsel has marked as 312 and this is a complete color copy that we've provided to counsel, and I believe that the witness is able to expand on testimony he gave concerning the document and provide a more complete answer.").

that had been inadvertently omitted from the Bates-numbered version of the document entered as an exhibit by ICE's counsel.[6]  No other issues concerning documents arose during Mr. Mounier's deposition.

Mr. Mounier's testimony was followed by the brief deposition of Pascal  Renaud, who had been designated to testify about a single, narrow topic:

> Any criticism by on the A400M project against Hamilton Sundstrand,  Ratier-Figeac, Artus or any other party, in regard to timing, expected deliveries, costs, specifications or other issues, concerning any shipset assemblies or any component thereof, of which the de-icing controller is incorporated.

(See Tr. of 6/27/07 Deposition of Pascal  Renaud (filed under seal as Ex. H), at 4:21-23 (stating that Mr. Renaud had been designated for topic No. 16 of  ICE's Amended Notice) and Doc. No. 295 (amended notice).)  Mr. Renaud testified that he is the "contact for engineering with Airbus" on the A400M project.  (Ex. H at 7:15-16.)  As the engineering contact with Airbus, Mr. Renaud had personal knowledge of the topic for which he was designated.  He had no need to review any documents in order to prepare for his testimony, and he testified in his deposition that he had not done so.  (Id. at 8:18-9:14.)

On the morning of June 28, counsel for ICE "advised . . . that he [had] decided not to take the testimony of Bruno Seminel for the topics which he was designated."  (Ex. A at 4:24 – 5:2.)  Mr. Seminel was notified after he had already spent considerable time preparing to testify but early enough that he did not have to appear at the deposition site.  Stephane Andrieu was less fortunate.  After he arrived for his deposition and defendants' counsel provided to ICE's counsel two previously produced Bates-numbered documents that Mr. Andrieu  had  reviewed  in preparing for the deposition and to which he might need to refer in order to testify, ICE's counsel

---

[6]  Id. at 90:11-15.

refused to have the witness sworn.  (Id. at 5-8.)[7]  Having made no inquiry whatsoever as to the witness's preparation, and having been reassured by defendants' counsel that Mr. Andrieu was both "prepared and . . . ready to testify" (id. at 5:17-18), ICE's counsel announced that he was "not going to take his testimony based on this level of preparation" and adjourned the deposition (id. at 7:25 – 8:1).  Given ICE's counsel's failure to ask Mr. Andrieu a single question, ICE's excuse concerning Mr. Andrieu's "level of preparation" as grounds for refusing to take his testimony is pure pretext.

ICE's counsel did question the other witness who was scheduled to testify on June 28, Pierre Launet.  The questioning of Mr. Launet, who had been designated for five topics, lasted less than an hour.  In response to questions from ICE's counsel, Mr. Launet testified about what he had done to prepare for the deposition, including his review of information contained on Ratier's computerized accounting system and his preparation of a document — provided to ICE's counsel at the beginning of the deposition — memorializing certain of that information that had been specifically identified in ICE's Amended Notice.  (See Tr. of 6/28/07 Deposition of Pierre Launet (filed under seal as Ex. I).)[8]

---

[7]  Mr. Andrieu was one of two  Ratier employees who had been designated to testify concerning the following topic: "For each of the Selected Dates [defined in the Amended Notice], the design of the deicing controller for the A400M, including . . . CAN Bus . . . ." (Doc. No. 295 at 3.)  In order to ensure that he would be able to testify accurately on this topic, Mr. Andrieu brought with him to the deposition the then-current table of fault codes for the CAN bus.  That table contained approximately 20 different codes, and Mr. Andrieu did not believe that he would be able to recall all of them from memory.  Mr. Andrieu also brought with him an Artus-created document from September of 2005 that described Artus's design as of that date.  There was nothing improper in  Mr. Andrieu's bringing to his deposition previously produced documents to ensure that he would be able to testify accurately about topics that were specifically identified in ICE's Amended Notice.

[8] ICE notes that Mr. Launet stated during his testimony that counsel had told him not to bring other documents with him to the deposition.  (See Doc. No. 374 at 9 (citing  Launet Dep. Tr. (see Ex. I at 6:10-12)).)  Given the absence of a timely request by ICE that Ratier's 30(b)(6) witnesses produce documents at the deposition, there was nothing improper about counsel

## ARGUMENT

### I.   ICE'S COMPLAINTS ABOUT RATIER'S DESIGNATION OF ITS 30(b)(6) WITNESSES ARE BASELESS.

Although ICE complains about defendants' selection of certain witnesses — in particular, Philippe Atrous and Pierre Launet — the Federal Rules and applicable case law do not invest ICE (or any other party taking a 30(b)(6) deposition) with an ability to interfere with the corporation's designation of its 30(b)(6) representatives.   Indeed, Rule 30(b)(6) explicitly provides that "the organization" named in the 30(b)(6) deposition notice "shall designate" the persons who are to testify on its behalf.  Fed. R. Civ. P. 30(b)(6).   The only applicable requirement is that the corporation find someone who is or can become knowledgeable about each topic and then ensure that that person is adequately prepared to testify: "With regard to choosing a deponent to speak on behalf of the corporation, companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully answer questions in a non-evasive manner about the designated subject matter."  Raytheon Aircraft Co. v. United States, No. 05-2328-JWL-DJW, 2007 WL 2668725, at *4 (D. Kan. Sept. 6, 2007).   The deposing party has no authority to approve or disapprove a competent, well-prepared 30(b)(6) witness.  See, e.g., Dillman v. Indiana Ins. Co., No. 3:04-CV-576-S, 2007 WL 437730, at *1 (W.D. Ky. Feb. 1, 2007) ("The defendants are correct that Rule 30(b)(6), by its terms, does not permit the plaintiff to designate a deponent to speak for the corporate defendants. And the plaintiff's attempt to do so is not appropriate."); Frasier Yachts Fla., Inc. v. Milne, No. 05-21168-CIV-JORDAN, 2007 WL 1113251, at *2 (S.D. Fla. Apr. 13, 2007) ("When a party notices a Rule 30(b)(6) deposition,

---

advising Mr. Launet that he was not required to bring any documents other than the ones upon which he would need to rely in testifying..

however, it leaves to the corporation's discretion who it chooses to be its representative."); Earthlite Massage Tables, Inc. v. Lifegear, Inc., No. 05CV0667 DMS, 2006 WL 2056397, at *1 (S.D. Cal. July 3, 2006) ("Defendant clearly has the right to designate whomever it wishes in response to Plaintiff's 30(b)(6) deposition subpoena.").

As ICE not only refused to allow Mr. Atrous to testify but withdrew altogether the topics for which he had been designated, ICE has no basis for challenging defendants' compliance with Rule 30(b)(6) on those subject areas.  Nor does ICE's Motion dispute either the competence or preparedness of Mr. Launet to testify about the topics for which he was designated.

ICE's arguments about Ratier's witness designations also conflate the affirmative obligations of Rule 26(a) with the defensive obligations of Rule 30(b)(6).  ICE argues that defendants' designation of Messrs. Atrous and Launet was improper because those individuals were not identified in defendants' Rule 26 disclosures or preliminary witness list.  (See Doc. No. 374 at 3 (objecting that "Launet was not listed on Defendants' initial disclosures, nor on their Preliminary Witness List"); id. at 4 (stating that "Atrous was not listed as a witness in Defendants' Initial Disclosures, nor in their Preliminary Witness List").)  Defendants are not aware of any rule, case law or other authority limiting the selection of 30(b)(6) designees to previously identified persons an entity plans to use in prosecution or defense of its case, and ICE identifies none.  Indeed, given that 30(b)(6) topics are compiled by the opposing party, it stands to reason that, in many instances, the topics of the deposition would be previously unknown (as well as unhelpful) to the party being deposed, who therefore would not be expected to have previously identified witnesses on those topics.  See Rule 26(a)(1) (requiring parties to identify persons the "disclosing party may use to support its claims or defenses" (emphasis added)).  In this case, for example, it is scarcely surprising that defendants had not previously identified an

individual who would testify regarding either the Hamilton Sundstrand Code of Ethics or the sufficiency of defendants' document production (two of the topics for which Mr. Atrous had been designated). (See Doc. No. 374 at 4.)  Moreover, if ICE truly had legitimate concerns about the designation of Messrs. Atrous and Launet, it had ample time and opportunity to raise the issue with the Court, given that defendants identified Mr. Atrous on May 31, 2007, and Mr. Launet on June 19, 2007.  ICE did not do so.  (Indeed, ICE never expressed any objection to the designation of Mr. Launet until after he had been deposed.)  ICE's objections to defendants' 30(b)(6) designations are meritless and lend no support to ICE's request for the imposition of sanctions on defendants.

## II.     RATIER HAD NO OBLIGATION TO BRING DOCUMENTS TO THE 30(b)(6) DEPOSITIONS.

### A.     ICE Failed To Make A Proper And Timely Request for Documents.

As defendants noted explicitly in their Objections to ICE's Amended Notice (Doc. No. 305), Rule 30 provides that the procedures of Rule 34 apply to a request that a party produce documents at a deposition. Fed. R. Civ. P. 30(b)(5).  Rule 34 allows 30 days to file a written response after service of requests for production.  Fed. R. Civ. P. 34(b).  ICE's attempt in its Amended Notice to require Ratier to produce documents at a deposition scheduled to take place sixteen days from the date of the Amended Notice was clearly improper under Rule 30.  See Premier Resort Krabi, Ltd., 1997 WL 18154, at *1 (stating that a party may not unilaterally shorten the response period provided by Rule 34 by noticing a deposition and requesting document production at that deposition); Epling v. UCB Films, Inc., Nos. 98-4226-RDR, 98-4227-RDR, 00-4062-RDR, 2001 WL 534355, at *3 (D. Kan. Apr. 2, 2001) (affirming determination of Magistrate Judge that defendant was not required to re-produce party deponent due to deponent's failure to produce documents at his deposition because the deposition notice

did not provide 30 days for production of documents and therefore did not create any obligation for the party deponent to produce documents at his deposition).  Moreover, apart from being untimely, ICE's Amended Notice did not even include a request for production of documents "reviewed by" witnesses in preparing for their testimony.  ICE only requested those documents in the email that ICE's counsel sent to defendants' counsel on Sunday, June 24, 2007 — a mere three days before the Ratier 30(b)(6) depositions.   That email could not, under any circumstances, have created an obligation on the part of  Ratier to produce documents at the 30(b)(6) depositions.  Defendants cannot be sanctioned for failing to comply with an obligation that did not exist.

There is also no basis for  ICE's suggestion that  Ratier's objection to conducting the 30(b)(6) deposition at its corporate headquarters somehow created an obligation for  Ratier's witnesses to produce documents at the deposition or otherwise supports the relief that ICE seeks. ICE provides no legal authority for such a position, and ICE's own conduct demonstrates that the issue is a red herring.  ICE's original Notice of Rule 30(b)(6) deposition to Ratier identified the location of the deposition as Kansas City, Missouri — more than 4,500 miles from  Ratier's corporate headquarters in Figeac, France — while at the same time explicitly disclaiming any request for Ratier to produce documents.  The Rule 30(b)(6) deposition of defendant Hamilton took place, at the agreement of ICE's counsel, in Chicago, almost a thousand miles from Hamilton's corporate headquarters in Windsor Locks, Connecticut.  As late as June 19, 2007, ICE's counsel told defendants' counsel that it was likely he would take the  Ratier 30(b)(6) deposition by telephone. (See June 19, 2007 Email from T. Buchanan to S. Hemeryck, attached hereto as Ex. J.)  ICE's counsel suggested that if he were to take the deposition by phone he would premark the exhibits for the deposition and ship them to the hotel and that the court

reporter (who would still need to travel to France) "could then hand the exhibits to the witness" as they were discussed. (See June 18, 2007 Email from T. Buchanan to L. Laubach-Rose (court reporter), attached hereto as Ex. K.)  ICE's counsel clearly had no concerns at that point about his ability to conduct the Ratier deposition using the documents that had already been produced by defendants, regardless of where the deposition was conducted.  ICE's complaints about Ratier's refusal to hold the depositions at Ratier's corporate headquarters are entirely disingenuous and do not provide a basis for the relief that ICE seeks.

**B.  Neither Federal Rule Of Evidence 612 Nor The Cases Cited By ICE Support ICE's Position.**

ICE's primary authority for the relief it seeks is a thoroughly inapposite case involving Federal Rule of Evidence 612: Audiotext Commc'ns Network v. US Telecom, Inc., 164 F.R.D. 250 (D. Kan. 1996).  Federal Rule of Evidence 612 provides that "if a witness uses a writing to refresh memory for the purpose of testifying . . . an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which related to the testimony of the witness."  Fed. R. Evid. 612. Although Rule 612 can apply to deposition testimony, there is a rigorous test that must be met in order to trigger the disclosure requirement: "(1) the witness must use the writing to refresh his or her memory; (2) the witness must use the writing for the purpose of testifying; and (3) the court must determine that production is necessary in the interests of justice."  Audiotext Commc'ns Network, Inc., 148 F.R.D. at 254.

ICE cannot meet even the first prong of this test.  ICE's counsel never asked a single 30(b)(6) witness whether the witness had reviewed any documents that refreshed his memory, much less to specifically identify any such documents.  Furthermore, Rule 612 does not impose any obligation to produce documents unless a court has determined that production "is necessary

in the interests of justice."  There has been no such determination here.  Even if this Court were to make such a determination — and there is no basis whatsoever for it to do so — that determination could not be used to sanction defendants for failing to produce documents prior to the time that the determination had been made.  In other words, ICE cannot use Federal Rule of Evidence 612 to retroactively create an obligation for Ratier to produce documents at its 30(b)(6) deposition and then ask the Court to sanction defendants for Ratier's failure to comply.

The cases cited by ICE also fail to support the relief that ICE seeks.  The Audiotext Communications case involved a deponent's claim of work product protection in response to a post-deposition motion to compel the production of a notebook that had been reviewed by a deponent between the first and second days of his deposition. The court in Audiotext Communications required disclosure of the notebook after concluding that the three-part test articulated above had been met: "The court finds that the notebook reviewed by Mr. Reid had an impact on his testimony within the meaning of Fed.R.Evid. 612.  He testified that he 'flipped through' the notebook the night before the last day of his deposition.  He further testified that he was 'astonished' by some things he had forgotten.  He thus clarified or changed earlier testimony."  Audiotext Commc'ns Network, 164 F.R.D. at 254.  Even if ICE had brought a motion to compel — which it has not — ICE has offered not a shred of evidence indicating that any of the factors found in  Audiotext Communications exist in this case.  More importantly, nothing in the Audiotext Communications case supports ICE's position that defendants should be sanctioned because Ratier's 30(b)(6) witnesses did not bring documents to the deposition.

The other cases cited by ICE — Pepsi-Cola Bottling Co. v. Pepsico, Inc., No. 01-2009-KHV, 2002 WL 113879 (D. Kan. Jan. 22, 2002), and F.D.I.C. v. Wachovia Insurance Services, Inc., 241 F.R.D. 104 (D. Conn. 2007) — are similarly inapposite.  The Pepsi-Cola Bottling case

involved the review of a magistrate judge's order compelling a deponent to answer a question about the documents he had reviewed in preparing for his deposition.  The district court in that case agreed with the magistrate judge that the identity of the documents reviewed by the deponent was not protected by the attorney-client privilege or the attorney work product doctrine.  ICE does not and could not contend that any of the Ratier 30(b)(6) witnesses refused to identify the documents that they had reviewed in preparing for their testimony.  The Pepsi-Cola Bottling case did not raise any issue about either the production of documents at a deposition or the imposition of sanctions.

Wachovia Insurance Services involved a motion to compel the production of documents by a non-party pursuant to a subpoena for a Rule 30(b)(6) deposition of the non-party.  The subpoenaed non-party objected on work product grounds to a request that the non-party produce at the deposition "all documents reviewed in preparation for the instant deposition."  241 F.R.D. at 106.  There was no argument that the document request was untimely or otherwise improper. The court held that the requested documents were not protected by the attorney work-product doctrine and granted the motion to compel the production of such documents.  Id. at 106-08. Thus, in Wachovia Industries, the issue was whether the non-party deponent would be required to produce at its deposition certain documents that had been timely requested by the deposition subpoena.  The question raised by ICE's Motion, in contrast, is whether defendants can be sanctioned for not producing documents at a deposition that already has occurred when there was no timely request for such production.  The Wachovia Industries case, like the Audiotext Communications and Pepsi-Cola Bottling cases, simply has no bearing on that issue.  Finding no support in the law, ICE's Motion must be denied.

### III.   EVEN IF ICE HAD LEGAL AUTHORITY FOR THE RELIEF IT SEEKS, THERE IS NO RECORD UPON WHICH TO BASE IT.

Not only did ICE fail to serve a timely request that Ratier's 30(b)(6) designees produce documents at the 30(b)(6) deposition, but it also failed to create any record regarding what documents the vast majority of Ratier's 30(b)(6) witnesses reviewed in preparation for their testimony.   Because ICE has not identified <u>any</u> specific documents, or even categories of documents, that the witnesses reviewed in preparing to testify and that ICE has not already received in discovery, there can be no basis for prohibiting defendants from using thousands of pages of documents that ICE <u>does possess</u> — because defendants produced them to ICE — and that are essential to defendants' defense of this matter.

Ratier's principal 30(b)(6) witness, Sebastien Mounier, addressed considerably more than half of the topics (and subtopics) contained in ICE's Amended Notice.   During nearly a full day of testimony, ICE's counsel <u>never</u> questioned Mr. Mounier about what documents he had reviewed to prepare for the deposition.   Furthermore, ICE's counsel entered numerous documents into the record himself and used them to seek additional information from Mr. Mounier.[9]   In addition — notwithstanding ICE's complaints about not being permitted to take the depositions at Ratier headquarters and about defendants' alleged unwillingness to produce documents at the depositions — there were instances in which Mr. Mounier and counsel actually located and produced additional documents during the course of the deposition.   <u>See supra</u> notes 6-7 and accompanying text.

---

[9]   Notably, 37 of the 41 exhibits marked during Mr. Mounier's testimony were Bates-numbered documents previously produced by defendants.   The remaining four documents were the Amended Notice of Rule 30(b)(6) Videotaped Deposition (Ex. 311); the full, color version of Ex. 312 that defendants procured during the deposition (Ex. 349); a summary of employee hours prepared by Mr. Mounier to assist him in testifying (Ex. 350); and a more complete version of Ex. 318 (<u>i.e.</u>, with headings) that defendants located and produced during the deposition (Ex. 351).   (<u>See</u> Ex. G at 3:6 – 6:21 (listing exhibits).)

Pascal Renaud, who was designated to discuss a single, narrow topic about which he had personal knowledge, stated that he had not reviewed any documents in preparation for his testimony.  (See Ex. H at 8:18 – 9:14.)   Because of his personal knowledge of the topic, however, Mr. Renaud was able to answer all questions posed to him.  ICE's counsel did not challenge his knowledge, preparation or responsiveness but at the conclusion of the deposition said, "I think that's all I've got."  (Id. at 20:15-16.)  Mr. Launet, who was designated to testify about five topics, was deposed for barely 30 minutes on June 28.  In response to questions from ICE's counsel, he testified about what he had done to prepare for the deposition, including his review of information contained on Ratier's computerized accounting system and his preparation of a document memorializing certain of that information that had been specifically identified in ICE's Amended Notice.  Again, ICE's counsel made no objection to his preparation or his knowledge of topics for which he had been designated.

ICE declares in its Motion that "Ratier's Rule 30(b)(6) designees claim in recent affidavits to have actually reviewed a substantial number of documents and records to refresh their recollectiosn [sic] and prepare for their respective depositions."  (Doc. No. 374 at 8.)  This is a serious misrepresentation of the record.  Only one of Ratier's 30(b)(6) designees — Bruno Seminel — submitted an affidavit concerning his preparation for the 30(b)(6) deposition.[10]  As already noted, Mr. Seminel did not testify because ICE decided on the day that he was to appear not to depose him.  Because Mr. Seminel did not testify, the documents that he reviewed are utterly irrelevant.  In addition, neither Mr. Seminel in his affidavit nor any other witness in his

---

[10] Mr. Seminel's affidavit was submitted as Exhibit 12 to defendants' proposed Surreply in Opposition to Plaintiff's Motion to Strike Defendants' Defenses (Doc. No. 354-2), which the Court denied leave to file.

-18-

deposition testimony said anything about having "refresh[ed] . . . his recollection." ICE's claim that any of the Ratier 30(b)(6) designees ever made such a statement is sheer fabrication.

## CONCLUSION

The "decision to exclude evidence is a drastic sanction." In re Indep. Serv. Orgs. Antitrust Litig., 85 F. Supp. 2d at 1162. ICE has provided no basis whatsoever for the Court to impose such a sanction — or indeed any sanction — on defendants. Once again, ICE and its counsel have unreasonably and vexatiously multiplied the proceedings in this case and burdened both defendants and this Court with a motion that should never have been brought. For the foregoing reasons defendants ask that this Court enter an order denying ICE's Motion and granting such other and further relief as the Court deems just and proper to address and remedy the conduct of ICE and its counsel in continuing to file such unwarranted and burdensome motions. See 28 U.S.C. § 1927 (providing that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct"); Jones v. United Parcel Service, Case No. 03-0284-CV-W-GAF, 2005 U.S. Dist. Lexis 33553, *2-7 (W.D. Mo. July 19, 2005) (assessing costs and fees against counsel under 28 U.S.C. § 1927), aff'd sub nom. Clark v. United Parcel Service, 460 F.3d 1004 (8th Cir. 2006).

September 24, 2007                                 DEACY & DEACY, LLP

                                                      /s/ Dale L. Beckerman
                                                  _____
                                                  Dale L. Beckerman, KS Bar Number 15820
                                                  Mimi E. Doherty, KS Bar Number 15613
                                                  920 Main Street, Suite 1900
                                                  Kansas City MO 64105
                                                  Phone: (816) 421-4000
                                                  Fax:    (816) 421-7880
                                                  E-mail:  dlb@deacylaw.com
                                                            med@deacylaw.com

and

Frederick J. Sperling, IL Bar Number 3128237
Sondra A. Hemeryck, IL Bar Number 6207039
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606
Phone:  (312) 258-5500
Fax:     (312) 258-5600
E-mail:  fsperling@schiffhardin.com
             shemeryck@schiffhardin.com

Attorneys for Defendants Hamilton Sundstrand
Corporation and Ratier-Figeac, S.A.S.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2007, I electronically filed the foregoing

Defendants' Response in Opposition to Plaintiff's Motion for Relief Regarding Defendant Ratier

Depositions with the Clerk of the Court using the CM/ECF system which sent notification of

such filing to the following:

      Thomas R. Buchanan, Esq.
      Jason L. Buchanan, Esq.
      Michael J. Gorman, Esq.
      Linda C. McFee, Esq.
      McDowell, Rice, Smith & Buchanan
      Skelly Building
      605 West 47th Street, Suite 350
      Kansas City, Missouri  64112-1905
      ATTORNEYS FOR PLAINTIFF

                                                        _/s/ Dale L. Beckerman_
                                                **Attorney for Defendants Hamilton Sundstrand**
                                                **Corporation and Ratier-Figeac, S.A.S.**