ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-4135-JAR |
| ) | |
| HAMILTON SUNDSTRAND ) | |
| CORPORATION, and ) | |
| RATIER-FIGEAC, S.A.S., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

At the close of evidence, defendants Hamilton Sundstrand Corp. ("Hamilton") and Ratier-Figeac, S.A.S. ("Ratier") orally moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a).[1] Plaintiff orally responded, opposing the motion. As explained more fully below, the Court denies the motion.

Under Rule 50(a), a court may grant judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[2] A moving party "is entitled to a judgment if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[3] "The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly

---

[1] Defendants moved for judgment just prior to the jury instruction conference on March 3, 2009. At that time, the Court took the motion under advisement.

[2] Fed. R. Civ. P. 50(a)(1).

[3] *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (quotations omitted).

find for that party."[4] In order for a jury to properly find for a party, "more than a scintilla of evidence" must be presented to support a claim.[5] In considering a motion for judgment as a matter of law, the court reviews all of the evidence in the record and construes it in the light most favorable to the nonmoving party.[6] But the court must refrain from making credibility determinations and weighing the evidence.[7] "The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."[8]

Initially, defendants incorporated by reference their motions for summary judgment and for reconsideration of the Court's summary judgment memorandum and order.[9] The Court declines to revisit its summary judgment rulings.

Next, defendants stated that there was insufficient evidence at trial to support a plaintiff's verdict on any of the claims in this case; however, defendants only specifically argued the breach of good faith and fair dealing claim and the fraud and negligent misrepresentation claims. Defendants' motion is moot with regard to the fraud and negligent misrepresentation claims. Plaintiff withdrew its claims of negligent misrepresentation and the jury did not find defendant Ratier liable on the fraud claim.

---

[4] *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007).

[5] *Id.* (citing *Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003)).

[6] *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *Deters*, 202 F.3d at 1268).

[7] *Id.*

[8] *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotations and citation omitted).

[9] Specifically, defendants referred to Docs. 499, 501, 543, 544, 559, and 664.

To prove a claim for breach of the covenant of good faith and fair dealing, plaintiff must (1) plead a cause of action for breach of contract, and (2) "point to a term of the contract which the defendant allegedly violated by failure to abide by the good faith spirit of that term."[10] The breach of good faith and fair dealing claim is premised on a breach of the provision in the Memorandum of Understanding ("MOU") that states it may only be terminated upon the award of the agreements listed on page three [Master Term Agreement, Purchase Agreement, and Product Support Agreement]; or by "agreement of both parties to terminate." The evidence established that none of the definitive agreements identified in the MOU was ever signed by either Ratier or ICE. Ratier argued that there was no evidence that the MOU was otherwise terminated; therefore, plaintiff could not establish a claim that Ratier terminated the MOU in breach of its duty of good faith and fair dealing. Ratier pointed to Patrick Connelly's testimony that the MOU was never terminated and asserted that there was no other evidence in the record that the MOU was terminated.

Defendants are correct that Connelly, who signed the MOU on behalf of ICE, testified that he never received a *formal* notice from Ratier that it was terminating the MOU. He also testified multiple times that he never agreed to terminate the MOU pursuant to the termination provision. Connelly testified about the e-mail correspondence in Exhibit 587, dated June 28-30, 2005, where Ken Mantha of Hamilton informed him that "[m]ost likely you will see an e-mail soon that states our position that RF will be going out for quote [sic] to other deicer controller suppliers. This may prove that your latest offer is fair and you remain the supplier of choice. Not sure." Later in this series of e-mails, Connelly relayed to Mantha that "I don't feel like I'm

---

[10]*Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1201 (D. Kan. 2004).

choosing to walk away from this contract, I feel like I'm being forced out." Furthermore, in a letter e-mailed to individuals at both Ratier and Hamilton on July 1, 2005, Connelly referenced the meeting at the Paris Air Show and that

> Mr. Haslin determined that ICE should stop all development work [sic] the FH386 program until an agreement was reached on production pricing. That stop-work-order has now been in effect for two weeks and no significant progress being made towards an amicable agreement. Because the MOU was not terminated, ICE has continued to receive equipment, supplies, and components dedicated to the FH386 program. This action is a double sided sword, it allows ICE to immediately restart the development process with the minimum delay to the agreed time line as soon as Ratier-Figeac gives ICE the start work order. At the same time, should Ratier-Figeac decide to terminate the MOU, each day inflates the cost of termination as more and more previously ordered items arrives on ICE's dock.[11]

The evidence at trial also conclusively showed that Ratier subsequently chose Artus to be the preferred supplier after receiving quotes from other deicing suppliers. Mantha wrote an e-mail to Connelly on July 6, 2005 that states "I believe as far as RF is concern [sic] that the existing MOU is considered null and void due to the fact that the A/C Deicer Controller is not part of this MOU. Therefore I recommend that you submit your invoice to RF for all labor and material cost expended to date."[12]

All of this evidence, when considered as a whole, could lead a jury to properly find for plaintiff on the breach of good faith and fair dealing claim. Giving full weight to the evidence and inferences to be drawn therefrom, the jury could properly find that Ratier unilaterally terminated the MOU by soliciting bids from other suppliers and failing to reach an agreement in

---

[11] Trial Ex. 595 at 2.

[12] Trial Ex. 603 at 2.

good faith with ICE to terminate. Therefore, judgment as a matter of law is inappropriate on this claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' pre-verdict motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) is **denied**.


Dated:  April 22, 2009

                                         S/ Julie A. Robinson
                                         JULIE A. ROBINSON
                                         UNITED STATES DISTRICT JUDGE