# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-4135-JAR |
| ) | |
| HAMILTON SUNDSTRAND ) | |
| CORPORATION, and ) | |
| RATIER-FIGEAC, S.A.S., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Before the Court is defendants Hamilton Sundstrand Corporation ("Hamilton") and Ratier-Figeac, S.A.S.'s ("Ratier") Motion to Vacate the Judgment Based on ICE's Misconduct During the Litigation (Doc. 833), filed on August 10, 2009, and plaintiff's Motion to Submit Supplemental Statement of Attorneys' Fees (Doc. 848). The motions are now fully briefed and the Court is prepared to rule. As described more fully below, the motion to vacate is denied and the motion to supplement is denied.

*Background*

On June 6, 2006, Judge Sebelius entered a Joint Protective Order in this matter, as it is a case that involves allegations of trade secret misappropriation. The protective order provides in part:

> Any Producing Party may designate any document, thing, material, portion of transcripts or videotapes of depositions or other testimony, or other information derived therefrom, or response to discovery (including answers to interrogatories and discovery requests), as "CONFIDENTIAL MATERIAL" under the terms of this Order. All CONFIDENTIAL MATERIALS shall be used and

> disclosed solely in accordance with the terms of this Order and for the purposes of the prosecution or defense of this matter and shall not be used or disclosed for any other purpose, unless ordered by this Court, or another court or any administrative agency having jurisdiction in this action.[1]

"Confidential Materials" is defined in the protective order:

> any and all materials, information and testimony, whether disclosed during a deposition, in a document, in a discovery response or otherwise, which constitutes or contains trade secrets, know how, proprietary data or other confidential information, including without limitation technical, financial, product and other proprietary information generally protected by law from dissemination. In particular, documents which contain the following types of information may be designated as Confidential: non-public information about each party's business, business opportunities, products, product ideas, know how, designs, development, systems, manufacture, or testing, its sales, revenue, expenses, profits, financial status and income tax returns, the party's suppliers, customers and manufacturing processes, information about defendants' transactions with plaintiff and information subject to non-disclosure agreements with nonparties. This Order specifically contemplates that discovery will be had of materials and information exchanged between one or both of the defendants with, or otherwise developed by, the company that is currently performing the services that were to have been performed by the plaintiff.[2]

After a protracted and contentious discovery period, the parties filed extensive summary judgment motions. This Court denied defendants' motion for summary judgment on a number of plaintiff's claims and the case proceeded to trial.

The jury returned its verdicts on March 9, 2009. Against defendant Ratier, the jury considered plaintiff's claims for breach of the duty of good faith and fair dealing, fraud, and misappropriation of trade secrets. The jury found defendant Ratier liable for breach of good faith and fair dealing and misappropriation of trade secrets, explicitly finding that Ratier

---

[1] (Doc. 46 ¶ 2.)

[2] (Doc. 46 ¶ 1(a).)

misappropriated all three trade secrets at issue. It awarded plaintiff $153,708 on the breach of contract claim and $4,795,300, the full amount of lost profits damages sought, on the misappropriation of trade secrets claim. The jury additionally found Ratier acted willfully, wantonly, or maliciously on the misappropriation of trade secrets claim. It provided an advisory punitive damages award in the amount of $10,000,000. The jury found defendant Ratier not liable on plaintiff's fraud claim. Against Hamilton, the jury considered plaintiff's claims for unjust enrichment and misappropriation of trade secrets.[3] The jury found Hamilton liable on both the unjust enrichment claim and the misappropriation of trade secrets claim, awarding $35,825 on the unjust enrichment claim. The jury additionally found Hamilton acted willfully, wantonly, or maliciously on the misappropriation of trade secrets claim. It provided an advisory punitive damages award in the amount of $2,500,000.

On May 7, 2009, after a bench trial and oral argument, the Court made findings of fact and conclusions of law with regard to the compensatory damages claim against Hamilton, finding damages in the amount of $4,795,300.[4] The Court also independently evaluated the statutory factors under Kansas law for an award of punitive damages and imposed punitive damages in the amount of $9,590,600 against defendant Ratier and $2,397,650 against defendant Hamilton. The Court additionally reviewed its punitive damages awards according to the requisite guideposts under Supreme Court jurisprudence and did not find them to be unconstitutionally excessive.[5]

---

[3] Plaintiff voluntarily dismissed its claims against both defendants for negligent misrepresentation just prior to closing arguments.

[4] (Doc. 802.)

[5] (Doc. 801.)

3

The parties filed post-trial motions, including plaintiff's Motion for Attorney's Fees (Doc. 806), which was filed on May 21, 2009. Plaintiff was granted leave until July 6, 2009 to file a memorandum in support of that motion, to which it attached affidavits in support of the motion and counsel's billing records (Doc. 824). Defendants filed the instant motion on August 11, 2009, arguing that these billing records reveal that plaintiff knowingly misused defendants' confidential information in violation of the protective order and withheld important information during discovery. They argue that this misconduct must be sanctioned, either by vacating the judgment pursuant to Fed. R. Civ. P. 60(b), or by vacating the judgment as a sanction pursuant to the Court's inherent powers.

*Motion to Vacate Judgment Pursuant to Rule 60(b)*

Defendants move to vacate the judgment pursuant to Rule 60(b), either based on plaintiff's misconduct under Rule 60(b)(3), or based on newly discovered evidence under Rule 60(b)(2). The Court has discretion to grant relief as justice requires under Rule 60(b),[6] but this relief "is extraordinary and may only be granted in exceptional circumstances."[7]

**1. Rule 60(b)(3)**

Rule 60(b)(3) permits the Court to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The Tenth Circuit applies a heightened standard of fraud on the court to all motions under Rule 60(b)(3).[8]

---

[6]*See, e.g.*, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000).

[7]*Schmier v. McDonald's LLC*, 569 F.3d 1240, 1243 (10th Cir. 2009).

[8]*Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291–92 & n.8 (10th Cir. 2005).

Under this standard, a party must prove fraud, misrepresentation, or misconduct by clear and convincing evidence.[9] "'[T]he challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed to trial.'"[10] And it requires a showing "'that one has acted with an intent to deceive or defraud, by means of a deliberately planned and carefully executed scheme.'"[11] In *Zurich North America v. Matrix Services, Inc.*, the Tenth Circuit acknowledged the distinctions between fraud on the court and fraud between the parties; however, it applied the heightened fraud on the court standard, stating that it was "bound by prior panel decisions."[12]

Defendants argue that the judgment should be vacated pursuant to Rule 60(b) because, (1) plaintiff used confidential information obtained during discovery to amend its patent application, in violation of the protective order, and (2) plaintiff intentionally withheld communications between Arlie Stonestreet, ICE's chief engineer and expert witness, and plaintiff's counsel that should have been produced. The Court addresses each in turn.

    a.    **Use of Documents Subject to Protective Order**

According to defendants, in the spring and summer of 2007, Ratier and Artus ("the company that is currently performing the services that were to have been performed by the plaintiff") produced documents to plaintiff disclosing the Artus design for its deicing controller

---

[9]*Id.* at 1290.

[10]*Id.* (quoting *Woodworker's Supply Inc.*, 170 F.3d 985, 993 (10th Cir. 1999).

[11]*Id.* (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999)).

[12] *Id.* n.8. Defendants suggest in a footnote that *Zurich* should not be construed as holding that Rule 60(b)(3) requires the heightened fraud on the court standard. In support of this construction, they criticize the cases relied upon by the *Zurich* panel. The Court declines to follow defendants' lead and question the clear holding of the most recent case on this issue, which is binding.

5

for the A400M aircraft, which included detailed drawings and design specifications. Ratier also provided a detailed description of the Artus design in a response to one of plaintiff's interrogatories. Defendants argue that the billing records submitted in conjunction with plaintiff's motion for attorneys' fees show that plaintiff used that information for a purpose entirely unrelated to this case—to tailor the claims of plaintiff's then-pending patent application to cover Artus's design. In support of this claim, defendants point to various billing entries by plaintiff's counsel indicating that after the spring and summer of 2007, plaintiff's trial counsel and Stonestreet worked closely with plaintiff's patent counsel on patent issues and a proposed patent amendment and to the fact that plaintiff's amended patent application was seemingly amended to tailor its claims to include design elements of Artus's controller.

The Court is unable to find that defendants have met their high burden of showing by clear and convincing evidence that plaintiff acted with an intent to deceive or defraud, by means of a deliberately planned and carefully executed scheme. Defendants offer circumstantial evidence in the form of what is essentially a timeline. None of these billing entries indicate that the confidential documents at issue were shared with plaintiff's patent attorney or were used to amend the patent application. Instead, defendants argue that because certain billing entries indicate that trial counsel worked on "patent issues" and worked closely with plaintiff's patent attorney, in between the production and the patent amendment, plaintiff must have utilized the confidential documents in amending their application. This is insufficient to show that plaintiff deliberately violated the protective order in this matter by utilizing confidential documents for a purpose other than this case, which is fatal to defendants' motion under Rule 60(b)(3).

  **b.**   **Communications Between Stonestreet and Plaintiff's Counsel**

Defendants maintain that plaintiff also committed misconduct by failing to produce communications between plaintiff's counsel and Stonestreet concerning his expert opinions. Defendants heavily rely on the fact that Judge Sebelius granted a motion to compel filed by plaintiff, seeking certain documents prepared by David Danielson, in connection with Danielson's deposition.[13] Danielson is a systems engineer for Hamilton and was designated an expert on many of the same issues for which Stonestreet provided expert opinions. Plaintiff served a *duces tecum* document request on June 15, 2007 that sought among other things, "all communications with Dave Danielson about the litigation . . . Please provide a privilege log of any materials withheld."[14] Defendants argued that the motion to compel was moot with regard to certain specific documents, but the Court proceeded to consider the motion since the *duces tecum* requested other materials as well. The Court granted the motion, noting authority that work product protection and the attorney-client privilege are "waived with regard to protected materials prepared by or transmitted to a non-testifying expert in anticipation of litigation but subsequently read and reviewed by a testifying expert—even if the testifying expert avers under oath that he did not actually consider such materials in formulating his opinion."[15]

While "a failure to disclose requested information during discovery may constitute misconduct under Rule 60(b)(3)[,] . . . this usually requires the violation of a specific discovery request or order."[16] Plaintiff argues that defendants knew from the beginning of the case of

---

[13] (Doc. 446.)

[14] (Doc. 285, Ex. B.)

[15] *W. Res., Inc. v. Union Pac. RR.*, No. 00-2043-CM, 2002 WL 181494, at *10 (D. Kan. Jan. 31, 2002).

[16] *Zurich N. Am.*, 426 F.3d at 1292 (citations omitted).

7

Stonestreet's participation, that communications regarding his lay opinion was privileged or protected work product, that it was not required to provide defendants with a log of documents withheld, and that defendants never served a specific discovery request seeking Stonestreet's communication, nor filed a motion to compel such information.

The Court agrees that defendants fail to meet their burden of showing that plaintiff did not produce documents responsive to a specific discovery request or order. The only document requests that defendants identify are general document requests 1 and 11 made on May 15, 2006 for "Any and all documents that refer or relate to the deicing propeller system for the A400M military transport aircraft," and "Any and all documents that refer or relate to the trade secrets or confidential and proprietary information that ICE contends were misappropriated by the Defendants, including but not limited to any and all documents that refer or relate to the allegations in paragraph 78 of the Complaint that such trade secrets and information are primary assets of ICE and that ICE has carefully guarded these trade secrets."[17] Plaintiff responded to the request on July 18, 2006. Plaintiff objected to both: "Plaintiff objects to this document request because it is overbroad and seeks attorney/client communications and attorney work product, and confidential, trade secret and proprietary information. Subject to these objections, see documents Bates Nos. ICEOOOOl-6861."[18] In August 2006, plaintiff advised defendants that it did not withhold any documents on the basis of this objection.[19]

Regardless of whether plaintiff actually withheld documents pursuant to defendants' May

---

[17](Doc. 837, Ex. E.)

[18](Doc. 842, Ex. 20.)

[19](Doc. 847, Ex. 2.)

8

15, 2006 document requests on the basis of overbreadth and confidentiality, the Court is unable to find that this discovery request is similar enough to the *duces tecum* request considered by Judge Sebelius approximately one and one-half years later that plaintiff would somehow be estopped from asserting that it was not required to produce communications between Stonestreet and plaintiff's counsel. Defendants did not specifically request communications between Stonestreet and ICE's counsel. Furthermore, defendants' judicial estoppel argument is unavailing. Plaintiff does not assert that the communications surrounding Stonestreet's expert testimony is privileged; it asserts that Stonestreet's communications regarding his lay opinion are privileged. The Court does not find this position at all inconsistent with plaintiff's motion to compel the Danielson documents.

In the absence of a more specific discovery request, coupled with clear and convincing direct evidence that plaintiff intended to defraud by withholding documents, the Court cannot find that the defendants have shown anything more than a discovery violation. "The proper remedy for any perceived violation of discovery is to seek redress under Rule 37(a)(2), not to wait until after summary judgment and file a Rule 60(b)(3) motion."[20]

## 2. Rule 60(b)(2)

In the alternative, defendants argue that the Court should vacate the judgment pursuant to Rule 60(b)(2), based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Defendants must show: "(1) the evidence was newly discovered since the trial; (2) [the moving party] was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely

---

[20]*Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1292 (10th Cir. 2005).

cumulative or impeaching; (4) the newly discovered evidence [is] material; and (5) that a new trial[ ] with the newly discovered evidence would probably produce a different result."[21]

Defendants argue that the time records, attached to plaintiff's memorandum in support of its motion for attorneys' fees, are newly discovered evidence. While the time records are newly discovered since trial, the problem with defendants' motion to vacate under this subsection is that the time records are not the evidence upon which they claim materiality. Their materiality argument is based on the impact of newly discovered evidence that plaintiff misappropriated defendants' confidential information. As already described, the billing records simply refer to phone calls, meetings and "extensive work" conducted by trial counsel with regard to the patent application and patent matters. They alone do not establish that plaintiff misappropriated anything. The patent was certainly relevant to the claims in this case; plaintiff sought to admit the patent as evidence in support of the trade secrets claim, specifically, that plaintiff owned the trade secrets at issue. So the Court does not presume that counsel's "extensive work" on patent matters was for a nefarious purpose.

Instead, defendants submit that the billing records, when viewed in chronological order and in conjunction with the production of Artus's design and the amendments to the patent application, are circumstantial evidence that plaintiff misappropriated the Artus design documents by utilizing them to amend their patent application. The Court is unable to find that this circumstantial evidence would "probably produce a different result" at trial. This is particularly true given that the Court excluded the patent at trial, sustaining defendants' objection that its prejudicial impact outweighed its probative value.

---

[21]*Id.* at 1290 (quoting *Graham v. Wyeth Lab.*, 906 F.2d 1399, 1416 (10th Cir. 1990)).

Furthermore, the Court is not convinced that defendants were diligent in discovering evidence of this alleged misappropriation. A key aspect of defendants' evidence of misappropriation is a comparison of the original patent application with the amended patent application. Defendants argue that it is clear that plaintiff amended the patent application to capture Artus's design. To the extent this is true, the Court finds that the amended patent application should have alerted defendants that plaintiff had misappropriated the information as early as December 2007. The original and amended patent applications are not new evidence. Given both parties' propensity toward seeking court intervention during discovery and sanctions in this case, the Court finds it notable that no motion to compel or for sanctions was ever filed with regard to this issue.

For these reasons, the Court denies defendants' motion to vacate pursuant to Rule 60(b)(2).

### *Motion to Vacate Pursuant to the Court's Inherent Power*

In *Chambers v. NASCO, Inc.*,[22] the Supreme Court observed that "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."[23] This is an inherent power vested in the courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[24] Included in this inherent power is "the authority to vacate a

---

[22] 501 U.S. 32 (1991).

[23] *Id.* at 43 (quotation omitted).

[24] *Id.* (quotation omitted).

11

judgment when a fraud has been perpetrated on the court, . . . ."[25]  "Fraud on the court which justifies vacating a judgment is narrowly defined as 'fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury.'"[26]  "Rules arising from the inherent powers of the courts have evolved to become exceedingly narrow, and to require that the power to set aside a judgment based upon fraud on the court involve the court actually being deceived by the misrepresentation."[27]

The Court is unable to find under this exacting standard that plaintiff's alleged misconduct constitutes fraud on the court.  Defendants do not and could not argue that this alleged misconduct is anything other than fraud between the parties.  Because this standard is the same as the Tenth Circuit's standard for vacating judgment pursuant to Rule 60(b)(3), the Court denies defendants' motion pursuant to the Court's inherent powers for the same reasons identified above.

*Motion to Supplement Statement of Attorneys' Fees*

Plaintiff asks the Court to allow it to supplement its motion for attorneys' fees to recover fees connected with responding to the motion to vacate.  According to plaintiff, "Defendants' motion is an unnecessary frivolous and vexatious multiplication of these proceedings, creating an unreasonable burden on the valuable time and resources of the Court and Plaintiff in violation of 28 U.S.C. § 1927."[28]  Despite plaintiff's verbose, ten-page recitation of the misrepresentations

---

[25]*Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005) (citing *Chambers*, 501 U.S. at 44; *Archibeque v. Atchison, Topeka, & Santa Fe Ry.*, 70 F.3d 1172, 1174 (10th Cir. 1995)).

[26]*United States v. Smiley*, 553 F.3d 1137, 1144 (8th Cir. 2009) (quoting *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985) and citing *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002)).

[27]*Id.*

[28](Doc. 848 at 1.)

12

and accusations made by defendants in their briefs on the motion to vacate, the Court does not find that a sanction of attorneys' fees is appropriate.

Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Such fees "are appropriate when an attorney acts recklessly or with indifference to the law.  They may also be awarded when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted."[29]

While the Court obviously was not persuaded that plaintiff engaged in misconduct, particularly misconduct that rises to the level required to vacate the judgment in this matter, it is equally unable to conclude that defendants' motion rises to the level necessary to justify a sanction under 28 U.S.C. § 1927.  The Court cannot find that defendants failed to cite controlling precedent—it is nothing more than zealous advocacy to argue that the appropriate standard might apply differently under the circumstances.  Defendants cited to this law and attempted to distinguish it.  This is not sanctionable conduct.  While the Court likewise disagrees that the billing records point to clear and convincing evidence of misconduct by plaintiff or plaintiff's counsel, their arguments do not rise to the level of intentionally misleading the Court.  For these reasons, sanctions are not appropriate and plaintiff's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Vacate the Judgment Based on ICE's Misconduct During the Litigation (Doc. 833) is **denied.**

---

[29]*Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005)).

**IT IS FURTHER ORDERED** that plaintiff's Motion to Submit Supplemental Statement of Attorneys' Fees (Doc. 848) is **denied**.

**IT IS SO ORDERED**.

Dated: March 30, 2010

                                                S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE