ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ICE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-4135-JAR |
| ) | |
| HAMILTON SUNDSTRAND ) | |
| CORPORATION and ) | |
| RATIER-FIGEAC, S.A.S., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Before the Court is plaintiff's Motion for Attorneys' Fees (Doc. 806). The motion is now fully briefed, both on the issue of entitlement to fees and on the amount of reasonable fees. As explained more fully below, the Court grants in part and denies in part without prejudice plaintiff's motion for attorneys' fees. While the Court finds that plaintiff is entitled to attorneys' fees under the Kansas Uniform Trade Secrets Act ("KUTSA"), in order to be recoverable, plaintiff has a duty to segregate from its fee application those fees associated with the trade secret claims. Therefore, the Court orders plaintiff to re-file its motion with fees appropriately segregated, as explained more fully below.

*Background*

Plaintiff initiated this case against defendants on November 15, 2005, alleging breach of contract, negligent misrepresentation, misappropriation of confidential proprietary information constituting unfair competition, and misappropriation of trade secrets. The breach of contract claims involved two contracts: the Memorandum of Understanding ("MOU") and the Proprietary

Information Agreement ("PIA"). Plaintiff also asserted claims against defendant Hamilton only for breach of implied contract and unjust enrichment and against Ratier only for fraud and fraudulent concealment. Plaintiff sought compensatory damages on all claims and punitive damages on the fraud and misappropriation of trade secrets claims.

Plaintiff filed a motion for summary judgment on the breach of contract claim and defendants filed a cross-motion on all claims.[1] Defendant Hamilton's motion for summary judgment was granted on the breach of contract/MOU claims (both express and implied), the unfair competition claim, and the breach of contract/PIA claim; it was denied on the unjust enrichment claim, the negligent misrepresentation claim, and the misappropriation of trade secrets claim. Defendant Ratier's motion for summary judgment was granted on the breach of contract/MOU claim that the MOU is a contract that governs Option 3 controllers, certain statements alleged on the fraud and fraudulent concealment claims, the unfair competition claim, and the breach of contract/PIA claim; it was denied on the breach of contract/MOU theory based on the covenant of good faith and fair dealing and unilateral termination, certain statements alleged on the fraud claims,[2] the negligent misrepresentation claim, and the misappropriation of trade secrets claim.

This case was tried to a jury beginning on February 10, 2009. At the conclusion of the evidence, plaintiff voluntarily dismissed its negligent misrepresentation claims. The jury returned its verdicts on March 9, 2009. Against defendant Ratier, the jury considered plaintiff's

---

[1] Defendant Ratier did not move for summary judgment on the breach of contract claim based on the theory of unilateral termination that implicates the duty of good faith and fair dealing.

[2] *See* Doc. 720 (correcting ruling in summary judgment order denying summary judgment on "Statement 6" with regard to the fraudulent concealment claim, as Statement 6 only pertained to the fraud claim).

claims for breach of the duty of good faith and fair dealing, fraud, and misappropriation of trade secrets. The jury found defendant Ratier liable for breach of good faith and fair dealing and misappropriation of trade secrets, explicitly finding that Ratier misappropriated all three trade secrets at issue. It awarded plaintiff $153,708 on the breach of contract claim and $4,795,300, the full amount of lost profits damages sought, on the misappropriation of trade secrets claim. The jury additionally found Ratier acted willfully, wantonly, or maliciously on the misappropriation of trade secrets claim and that it was entitled to punitive damages in the amount of $10,000,000. The jury found defendant Ratier not liable on plaintiff's fraud claim.

Against Hamilton, the jury considered plaintiff's claims for unjust enrichment and misappropriation of trade secrets.[3] The jury found Hamilton liable on both the unjust enrichment claim and the misappropriation of trade secrets claim, awarding $35,825 on the unjust enrichment claim. The jury additionally found Hamilton acted willfully, wantonly, or maliciously on the misappropriation of trade secrets claim and that plaintiff was entitled to punitive damages in the amount of $2,500,000.

It was brought to the Court's attention, two days after the verdict was published and the jury was released from its admonition, that the verdict form for Hamilton had mistakenly omitted a compensatory damages interrogatory.[4] The parties filed trial briefs and on April 17, 2009, the Court held a bench trial on the discrete issue of compensatory damages against Hamilton on the trade secrets claim and heard argument on punitive damages against both parties. On May 7, 2009, the Court made findings of fact and conclusions of law with regard to the compensatory

---

[3]Plaintiff voluntarily dismissed its claims against both defendants for negligent misrepresentation just prior to closing arguments.

[4]*See* Doc. 802 for a complete recitation of the background as it relates to this issue.

damages claim against Hamilton, finding damages in the amount of $4,795,300.[5] The Court also independently evaluated the statutory factors under Kansas law for an award of punitive damages and imposed punitive damages in the amount of $9,590,600 against defendant Ratier and $2,397,650 against defendant Hamilton.[6]

Defendants filed post-trial motions and plaintiff filed the instant motion for attorneys' fees based on the jury's finding of willful and malicious misappropriation of trade secrets against both defendants.

*Discussion*

    **A.**    **Entitlement**

Plaintiff moves for an award of attorneys' fees on its misappropriation of trade secrets claims against Ratier and Hamilton, pursuant to K.S.A. § 60-3323. In a diversity case, attorneys' fees are controlled by state law.[7] Under Kansas law, "attorneys' fees cannot be awarded absent statutory authority or an agreement."[8] The KUTSA provides that if "willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party."[9] The jury made explicit findings that each defendant's misappropriation was willful and malicious. The Court found that the evidence supported these findings and that plaintiff was entitled to substantial punitive damages as a result of defendants' conduct. For substantially the same reasons outlined in the Court's order awarding punitive damages, the Court finds that

---

[5](Doc. 802.)

[6](Doc. 801.)

[7]*Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008).

[8]*Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135 (Kan. 2006).

[9]K.S.A. § 60-3323.

4

plaintiff is entitled to reasonable attorneys' fees incurred in prosecuting its misappropriation of trade secrets claims.[10]

**B.      Amount**

Plaintiff requests fees for 8843.65 hours of time spent by at least three attorneys and at least two legal assistants, for a total request of $1,625,620.75 in attorneys' fees.  Defendants challenge the reasonableness of plaintiff's fee request on the following grounds: (1) plaintiff's counsel failed to segregate work on the misappropriation of trade secrets claim from work that does not permit an attorney fee award; and (2) plaintiff failed to submit meticulous and contemporaneous time records that would allow the Court to make a reasonableness determination.  Because these are threshold issues with regard to reasonableness, the Court must address them before proceeding to any reasonableness inquiry under Kansas law.

**1.      Segregation**

Under Kansas law, "[w]here several causes of action are joined and only some of them permit the award of attorney fees, the work on several causes must be segregated in determining an attorney fee award."[11]  An exception to this rule exists if the Court finds that the "'causes of action involved in this suit are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable.'"[12]  In order to determine whether claims are intertwined under this standard, Kansas courts have compared the factual allegations involved in

---

[10]The Court addresses defendants' argument about the size of the damages award and the contingency fee arrangement when assessing the reasonableness of the fees.

[11]*Despiegelaere v. Killion*, 947 P.2d 1039, 1045 (Kan. Ct. App. 1997); *see also Harris v. Am. Gen. Fin., Inc.*, 259 F. App'x 107, 112 (10th Cir. 2007); *Werdann v. Mel Hambelton Ford, Inc.*, 79 P.3d 1081, 1091–92 (Kan. Ct. App. 2003).

[12]*Despiegelaere*, 947 P.2d at 1044 (quoting *Stewart Title Gar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)).

each claim to determine if they are part of the same core of facts and circumstances that give rise to the fee-qualifying claim.[13] "If counsel have made no attempt in their time records to segregate their time as to different causes of action that are not mutual in their facts and impossible of segregation, it could well be that a court could find a failure of proof and award no attorney fees."[14]

It is undisputed that the misappropriation of trade secrets claim is the only claim upon which an award of attorneys' fees is permitted. Plaintiff takes the dual position that it has discounted its fee request to account for work spent on claims that do not permit an award of attorneys' fees and that it was not required to segregate the time it spent working on other claims in this case because all of its claims depend upon the same facts and circumstances and are thus, intertwined to the point of being inseparable. Defendants argue that plaintiff did not make an attempt to segregate its fees and should, therefore, be denied any award of attorneys' fees. Defendants attached to their reply a highlighted copy of plaintiff's billing records, indicating the entries that appear to pertain strictly to the trade secrets claims.

Plaintiff first contends that it has, in fact, segregated out fees on the misappropriation of trade secrets claim. According to Mr. Buchanan's declaration, submitted in support of plaintiff's fee request, "the total reductions to the fee request based on the case being handled solely as a misappropriation of trade secrets case is less than $100,000, which is itself considerably less than

---

[13]*See id.* (comparing allegations involved in breach of contract, fraud and Kansas Consumer Protection Act claims); *Harris*, 259 F. App'x at 112–13 (comparing factual bases of claims); *Unruh v. Purina Mills, LLC*, 221 P.3d 1130, 1144 (Kan. 2009) (affirming district court's finding that "[u]nder either theory, Plaintiffs were required to prove that Defendant made representations about its product that were false."); *York v. InTrust Bank, N.A.*, 962 P.2d 405, 430 (Kan. 1998) ("It was clearly necessary for all of the underlying facts of the transaction to be fully developed in order to prosecute the KCPA claim.").

[14]*Despiegelaere*, 947 P.2d at 1044–45; *see also Werdann.*, 79 P.3d at 1092.

the $265,000 voluntary reduction already included in the fee statement."[15] The Court has reviewed the billing statements and finds it impossible to determine that any of the reductions in this matter were made to segregate time spent on the trade secrets claims. The majority of the time entries that were discounted (i.e. "zeroed out") appear to be discounts made in the exercise of billing judgment, a separate duty imposed upon counsel.[16] Moreover, there is absolutely no way to tell based on these billing statements, how much time was discounted, as the time spent is reflected as ".00." However, even if the Court accepts as true counsel's representation that work spent on non-misappropriation of trade secrets amounted to less than $100,00 worth of work, for the reasons described below, the Court finds that this falls far short of fulfilling plaintiff's duty to segregate.

The Court must next determine whether plaintiff is relieved of its duty to segregate its time spent on the fee-qualifying claim because the claims are so intertwined, they are inseparable. The Court finds that this exception does not apply with respect to all of the claims advanced in this case by plaintiff. Given the amount of judicial intervention affirmatively sought by all parties in this case, the voluminous summary judgment record that was presented to the Court, and the fact that this Court presided over a lengthy trial in this matter, this Court is in a strong position to evaluate the factual claims at issue in this case and determine whether they are based on the same set of core facts. As defendants point out, plaintiff asserted against both defendants various breach of contract claims, negligent misrepresentation, misappropriation of confidential proprietary information constituting unfair competition, and misappropriation of

---

[15](Doc. 823, Ex. B ¶ 39(g).)

[16]"The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

trade secrets. The breach of contract claims involved two contracts: the Memorandum of MOU PIA. Plaintiff also asserted claims against defendant Hamilton for breach of implied contract and unjust enrichment and against Ratier for fraud and fraudulent concealment. The extensive record in this case fails to support the contention that the trade secret-related claims cannot be segregated from many of of plaintiff's other numerous claims.

In the Court's view, there are two clear categories of claims in this case: those associated with the MOU and those associated with trade secrets. Those claims associated with the negotiation, construction, and impact of the MOU include: (1) all breach of MOU claims, including the claim for unilateral termination and the claim for breach of implied contract against Hamilton; (2) all fraud claims; and (3) negligent misrepresentation. The second category of claims that are intertwined deal with the factual allegations involving the trade secrets claims: (1) misappropriation of trade secrets; (2) unjust enrichment against Hamilton; (3) common law unfair competition; and (4) breach of the PIA.

Plaintiff's first category of claims relied on the following factual allegations: the MOU was a contract for the design and manufacture of the deicing controller, including the Option 3 design; Ratier was bound to allow ICE to supply the Option 3 deicing controller under the MOU; Hamilton was bound by the MOU either expressly or impliedly; writings between the parties prior to executing the MOU help establish the terms of that contract; Ratier breached the MOU through unilateral termination as evidenced, in part, by its failure to negotiate in good faith on the price of the Option 3 deicing controller; defendants misrepresented that Ratier was a subsidiary of Hamilton and Hamilton exerted control over Ratier in connection with the A400M project; defendants misrepresented that the company selected to supply the deicing controller

8

would perform both design and manufacture of the controller; defendants misrepresented that plaintiff was being awarded a contract for the design and manufacture of the propeller deicing controllers for the A400M aircraft; defendants misrepresented that ICE would receive timely payment for Non-recurring expenses; defendants misrepresented that ICE would receive at least $3 million in sales in connection with the manufacturing of the deicing system based on the sale of 180 aircraft. None of these factual allegations were necessary in order to establish plaintiff's claims involving misappropriation of trade secrets in this case.

Plaintiff's second category of claims included factual allegations that: ICE's proposed communication method between the SCU and RCU, its Mechanical Design Work and Drawings, the CAN Bus Design Work; and the Built-in-Tests (BIT) (collectively, "the alleged trade secrets") derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; the alleged trade secrets were the subject of efforts that are reasonable under the circumstances to maintain their secrecy; the misappropriating party had access to the alleged trade secrets and the designs share similar features; defendants passed along the alleged trade secrets to Artus; plaintiff lost profits as a result of the misappropriation. As the Court explained in ruling on the post-trial motions, the unjust enrichment claim is based on the same facts as the trade secret claims and is preempted by the KUTSA. And in ruling on summary judgment, the Court found that the unfair competition was preempted by the KUTSA. The breach of the PIA claim directly pertains to the efforts taken by plaintiff to protect the confidentiality of the alleged trade secrets. Only the unjust enrichment and misappropriation of trade secrets claims proceeded to trial. The only claim in this second category upon which

9

plaintiff prevailed is the misappropriation of trade secrets claims.

Summary judgment was granted in favor of defendants on plaintiff's primary breach of MOU claim that defendants were bound under the MOU to allow plaintiff to manufacture the deicing controller for the A400M project. This claim was the subject of plaintiff's motion for summary judgment, with the exception of one page dedicated to the unilateral termination claim. This is but one example of easily segregated work that would not pertain to the trade secrets claims.

To be sure, claims involving the alleged trade secrets involved much more discovery and expert testimony than the MOU-related claims; the Court is not ruling that the fee request should simply be halved. The MOU-related claims primarily involved analysis of the MOU itself, the parties' negotiations leading up to the MOU, and the parties' price negotiations on the Option 3 controller. The representations and omissions made by defendants during this process formed the basis of the fraud and negligent misrepresentation claims. The trade secret-related claims, on the other hand, focused on the technical documents—whether they were confidential and proprietary, whether the technical information provided by plaintiff was protected by defendants, or shared with Artus, and the nature and circumstances of Artus's technical designs. None of these issues pertain to the MOU-related claims.[17]

---

[17] The sole factual issue that plaintiff is able to point to that overlaps somewhat is the issue of ownership of the trade secrets. Defendants argued on summary judgment, at trial, and in their post-trial briefing that defendants own the trade secrets under the following theories: (1) based on certain legal precedent that an independent contractor does not own trade secrets under similar circumstances; (2) because a draft MTA would have provided that Ratier owned any of plaintiff's trade secret; and (3) because one of Hamilton's engineers suggested the communication method to plaintiff's engineers. But the Court cannot find that this one issue removes plaintiff's duty to segregate. To the extent that a small portion of discovery on the MOU-related claims was helpful in responding to these arguments, such time would be reasonably related to the trade secret-related claims. However, given the wholesale failure to segregate, the Court is not currently in a position to make a reasonableness determination.

By finding that plaintiff's counsel had a duty to segregate the fee statements, the Court does not suggest, as defendants do, that there is no overlap in the expert testimony, discovery, trial preparation, and post-trial work performed by plaintiff's counsel.  But plaintiff's counsel mistakes "common core of facts and circumstances" with overlap in litigation strategy, which is not the standard.  To the extent discovery and expert retention applied fully to both the MOU-related claims and the trade secret-related claims, those fee requests would be reasonable.  In segregating the fee request, it is entirely proper for plaintiff to request the full amount of fees incurred as a result of retaining plaintiff's damages expert, Marc Vianello, who testified on the lost profits calculation.  In contrast, "trial preparation" was not applied fully to both categories of claims.  Some portion of that time was dedicated to the MOU-related claims and should be segregated.  For example, witness preparation for Patrick Connelly would have been primarily in furtherance of the MOU-related claims, while witness preparation for Arlie Stonestreet would have been primarily in furtherance of the trade secret-related claims.   In other words, if a fee request would have been chargeable in full if misappropriation of trade secrets was the only claim at issue in this case, it is fully recoverable to the extent it is reasonable.  But, to the extent the amount of hours would have been reduced if this had been the only claim, plaintiff has a duty to segregate out the reasonable fees associated with the trade secret-related claims.  Upon cursory review of plaintiff's billing statements, the Court finds that plaintiff's estimate of a $100,000 reduction, when compared to the overall amount of fees sought, is woefully inadequate in this regard.  Therefore, the Court is unable to conduct a reasonableness inquiry at this time.  Plaintiff is ordered to re-submit its fee application with segregated fees in line with this opinion.

      **b.**      **Failure to Keep Meticulous Time Records**

The duty of segregation is part and parcel of defendants' second complaint about the fee request: that plaintiff's practice of block billing makes segregation and a reasonableness determination impossible. As Judge Vratil recently explained, "'[b]lock billing' is the practice of lumping multiple tasks into a single entry of time such that the billing entry does not delineate how hours were allotted to specific tasks."[18] There is no rule in the Tenth Circuit that "mandat[es] reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing."[19] But the Court may discount the requested hours if it finds that the records submitted do not allow the Court to determine how the hours were allotted to specific tasks and the reasonableness of that time.[20]

Because the Court is denying the fee request in part based on the failure to segregate and requiring plaintiff to resubmit its fee request after it performs its duty to segregate, it withholds any further findings at this time on the reasonableness of the fees sought. The Court will evaluate this question, under the appropriate factors, after plaintiff resubmits its segregated billing records and fee request. However, the Court warns plaintiff that it is inclined to impose a general reduction of time to account for its failure to show how certain work was specifically allocated if it appears that counsel requests fees for work performed during a block of time that clearly includes both compensable and noncompensable time.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion for Attorneys' Fees (Doc. 806) is granted in part and denied in part without prejudice. The motion

---

[18]*Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *3 (D. Kan. Jan. 8, 2009).

[19]*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

[20]*Id.*

is granted on the issue of entitlement to reasonable attorneys' fees incurred prosecuting the misappropriation of trade secrets claims against both defendants. The motion is denied without prejudice on the issue of reasonableness, subject to refiling by plaintiff no later than April 30, 2010, in accordance with this opinion. Prior to this re-filing, **the parties are obligated to once again meet and confer pursuant to Rule 54.2.** Plaintiff's filing shall not be treated as a motion for reconsideration; it shall be considered a supplement to plaintiff's previously filed fee request and need not contain argument. Defendants may respond no later than May 14, 2010 on the issue of reasonableness of the segregated fees. Plaintiff may reply no later than May 28, 2010. The Response and the Reply shall be limited to fifteen pages or less.

Dated: March 30, 2010

 S/ Julie A. Robinson
 JULIE A. ROBINSON
 UNITED STATES DISTRICT JUDGE