**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ICE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-4135-JAR |
| | ) | |
| HAMILTON SUNDSTRAND | ) | |
| CORPORATION and | ) | |
| RATIER-FIGEAC, S.A.S., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Before the Court is plaintiff's Supplemental Submission in Support of Motion for Award of Attorneys' Fees (Doc. 872). The Court also considers defendants' fee request that was at issue on its Motion to Enforce the Court's September 10, 2008 Memorandum and Order (Doc. 750). The motions are now fully briefed and supplemented on the issue of the reasonableness of both requests for attorneys' fees. As explained more fully below, the Court awards plaintiff attorneys' fees and expenses in the amount of $1,138,013.25. This amount shall be reduced by $3575, the reasonable fees incurred by defendants in association with drafting supplemental replies to plaintiff's responses to their motions for summary judgment.

**Plaintiff's Supplemental Fee Application**

### I.    Background

This case has a lengthy procedural history that the Court has recited in numerous orders, and incorporates herein. On March 30, 2010, this Court granted in part and denied in part plaintiff's Motion for Attorney Fees (Doc. 860). The Court found that plaintiff was entitled to

recover reasonable attorneys' fees incurred prosecuting the misappropriation of trade secrets claims against both defendants. The Court further found that plaintiff's counsel had a duty to segregate the fee statements because it was only entitled to recover for work spent litigating the misappropriation of trade secrets claims, and claims related thereto. Finding that counsel had failed to properly segregate fees associated with the trade secrets-related claims, the Court ordered plaintiff to resubmit its fee request in accordance with the Court's opinion concerning properly segregated fees. Prior to this refiling, the Court directed the parties to once again meet and confer pursuant to D. Kan. R. 54.2.

Plaintiff filed its Supplement on May 14, 2010, and the renewed fee request discounted an additional amount of fees in response to the Court's order. Plaintiff has allocated 6512.75 hours of time spent prosecuting the misappropriation of trade secrets and related claims, reduced from its prior allocation of 8843.65 hours. Along with its Supplement, plaintiff submitted the declaration of Thomas R. Buchanan, lead counsel for plaintiff. Buchanan sets forth in his declaration the method by which counsel segregated the hours requested for compensable time, the circumstances surrounding the parties' attempts to meet and confer about the renewed request for attorneys' fees, and attests to the reasonableness of the rates sought by all timekeepers.

Defendants object to plaintiff's renewed claim on various grounds. First, defendants argue that the Court should decline to award fees altogether because ICE was awarded more than three times its claim of actual damages. Second, defendants complain that plaintiff's revised time records fail to provide sufficiently specific entries due to block billing, and due to vague descriptions for time entries. Finally, defendants contend that plaintiff's segregation

methodology is arbitrary and inaccurate.

## II.      Discussion

### A.      Duty to Meet and Confer

On April 26, 2010, Thomas Buchanan sent revised detailed accounting records to defendants' counsel, and explained in the cover e-mail, the methodology he and Ms. McFee used to segregate hours spent on the trade secret claims.  Counsel for plaintiff subsequently conferred twice with defendants' counsel on the revised fee request.  By agreement, the parties first conferred on April 29, 2010, at which time defendants' counsel identified no issues with plaintiff's fee submission, but indicated that their client had not had time to do review the fee submission.

On May 12, 2010, counsel again conferred.  During that conference, defendants objected to  block billing, and objected to three time entries as unrelated to the trade secret claims—October 6, 2006; October 10, 2006; and January 28, 2009.  While plaintiff's counsel believed that the time charged for the three time entries identified by defendants' counsel was related to the trade secret claims and resulting damage; they agreed to remove all time and charges for the three entries identified by defendants' counsel.  The Court finds that the parties are unable to reach an agreement about the attorneys' fee request in this matter and that plaintiff fulfilled its duty to confer pursuant to Rule 54.2.  The Court proceeds to determine a reasonable fee award.

### B.      Defendants' Request that the Court Deny Any Award of Attorneys' Fees

As an initial matter, the Court considers defendants' argument that the Court should altogether deny plaintiff reasonable attorneys' fees because plaintiff already received a

significant recovery in compensatory and punitive damages. Since plaintiff's counsel is compensated in this case through a contingency fee arrangement, defendants urge that the significant punitive damages award ensures that plaintiff's attorneys' fees would not diminish its compensatory damages award. To the extent defendants ask this Court to reconsider its determination on plaintiff's entitlement to reasonable attorneys' fees in this matter, the Court declines. The Court has already found that plaintiff is entitled to reasonable attorneys' fees incurred in association with prosecuting the misappropriation of trade secret claims. This supplemental order addresses only the amount of reasonable fees that should be awarded.

Defendants rely on the Kansas Supreme Court's decision in *Smith v. United Technologies*,[1] where it found that the district court did not abuse its discretion in denying an award of attorneys fees.[2] While this decision was based, in part, on the fact that the contingent fee amount would be compensated by the punitive damages award, the district court also heavily relied upon the fact that the attorneys' fees were not properly segregated by successful and unsuccessful parties and claims. This Court has already required plaintiff in this matter to properly segregate the fees it seeks to recover on the misappropriation of trade secret claims. But most importantly, *Smith* involved the review of a district court's decision denying any award of attorneys' fees on several grounds, under an abuse of discretion standard of review. It is not binding on this Court's decision on the reasonableness of a fee award to which the Court has already determined plaintiff is entitled.

C.      *Reasonableness of Plaintiff's Fee Request*

---

[1] 731 P.2d 871 (Kan. 1987), *overruled on other grounds by Coleman v. Safeway Stores, Inc.*, 752 P.2d 645 (Kan. 1988).

[2] *Id.* at 881.

Plaintiff requests an award of fees for 6512.75 hours expended between October 12, 2005 and June 22, 2009 by the law firm McDowell, Rice, Smith & Buchanan ("MRSB"). The firm's work was billed by twenty-two timekeepers and one messenger.[3] In determining reasonable attorneys' fees, Kansas courts arrive at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate.[4] While the Kansas lodestar analysis is slightly different than the federal lodestar analysis, the factors are similar.[5] Both parties apply the federal lodestar analysis to this fee request and, seeing no objection by either side of the dispute, the Court will follow the two-step process discussed by the parties in their briefs. Under this analysis, the applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.[6] First, the Court multiplies the number of hours reasonably spent by a reasonable hourly rate, which is called the "lodestar" amount.[7] Once an applicant has met this burden, the lodestar figure is presumed to be a reasonable fee.[8] The Court may then adjust the lodestar, if necessary, to account for the factors set forth in Rule 1.5 of the Kansas Rules of Professional Responsibility ("KRPC").[9]

---

[3](Doc. 899, Ex. A.)

[4]*Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1274 (D. Kan. 2003); *Davis v. Miller*, 7 P.3d 1223, 1236 (Kan. 2000).

[5]*Terra Venture Inc. v. JDN Real Estate-Overland Park, L.P.*, 242 F.R.D. 600, 604 (D. Kan. 2007).

[6]*See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).

[7]*Lippoldt v. Cole*, 468 F.3d 1204, 1222 (10th Cir. 2006) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[8]*Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

[9]*Davis*, 7 P.3d at 1236; *Sheldon*, 237 F. Supp. 2d at 1274.

1.     **Lodestar Amount**

a.     **Reasonable Hourly Rate**

In examining the hourly rate, the court is to refer "to the prevailing market rates in the relevant community."[10]  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time."[11]  In making this determination, if the court does not have before it adequate evidence of prevailing market rates, the court may, in its discretion, "use other relevant factors, including its own knowledge, to establish the rate."[12]

The majority of time in this case was billed by the following timekeepers: (1) Jason Buchanan, shareholder; (2) Thomas Buchanan, shareholder and Executive Vice-President; (3) Linda McFee, shareholder; (4) Christy Henry, legal assistant; and (5) Karen Wilderwing, legal assistant.  Plaintiff submits detailed information about the respective experience, reputation, and ability of Thomas and Jason Buchanan and Linda McFee, and Thomas Buchanan's declaration provides information about the experience of Christy Henry and Karen Wilderwing.  However, there is no information in the record submitted by plaintiff about the remaining timekeepers for whom plaintiff seeks to recover fees. The Court is left to divine whether they are associate attorneys, shareholders, or support staff.

The Court has already provided plaintiff two opportunities to re-submit necessary evidence in support of its fee request and declines to provide yet another.  It is impossible for the

---

[10]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[11]*See Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998).

[12]*Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (citing *Case*, 157 F.3d at 1257).

Court to determine a reasonable hourly rate for these timekeepers when there is no evidence as to their role, experience, reputation, or ability. Thomas Buchanan's catch-all conclusory statement that "the hourly rates that MRSB charges its clients for services performed by its attorneys and its legal assistants are reasonable rates for persons of similar experience and skills in this region," is not sufficient. Accordingly, the Court does not award any fees for time incurred by the following timekeepers: Michael Gorman, Brooke Grant, Janelle Esposito, Mikki Rhoads, Charles Smiley, Rhonda Smiley, Linda Dean, Janet Ensworth, Deborah Hammond, Kathy Hugelet, Emily McCaskill, Sherri Morrison, Sandra Parker, Nicole Saunders, Marvin Kaplin, and Christopher Winters. The Court proceeds to evaluate the lodestar amounts for Thomas Buchanan, Jason Buchanan, Linda McPhee, Christy Henry, and Karen Wilderwing. Defendants do not contest the hourly rates sought by these MRSB timekeepers are reasonable.

Thomas Buchanan is a shareholder, Executive Vice President, and a named principal at MRSB. He has practiced law for approximately twenty-eight years. He has a Martindale-Hubbell AV rating and was named a "Super Lawyer" by Kansas City Magazine in 2005, 2007 and 2008. Thomas Buchanan is heavily involved in his local bar association and helped establish the Hon. Earl E. O'Connor Inn of Court. He manages a litigation group at MRSB, which regularly includes five attorneys and six staff persons. His litigation group's litigation practice has encompassed litigation pending in state and federal courts in numerous jurisdictions. He estimates that he has tried approximately fifty jury trials, of which seven or fewer resulted in verdicts adverse to his clients. Thomas Buchanan has handled hundreds of other cases in the courts in various jurisdictions, at both the trial and appellate levels. His regular hourly billing rate is $300 per hour on hourly matters. This rate is consistent with the

Court's knowledge of the prevailing market in Kansas City for an attorney with Thomas Buchanan's experience and skill.

Linda McFee has practiced law for sixteen years. She became a non-equity shareholder of MRSB in 2003, and an equity shareholder in January, 2007. Her practice at MRSB is focused primarily on civil litigation, representing clients in business litigation, construction, employment, insurance coverage and bad faith and personal injury actions. She has extensive experience in all aspects of civil litigation, including pleadings, discovery, motion practice, trial and appellate proceedings. McFee's current hourly rate is $250 per hour. This represents the regular rates that MRSB charges its clients for services she performs on hourly cases. McFee attests that these rates are customary and reasonable for other attorneys of similar experience and skill in the legal community in the Kansas City metropolitan and surrounding areas. This rate is consistent with the Court's knowledge of the prevailing market in the Kansas City market, for an attorney with McFee's experience and skill.

Jason Buchanan has been practicing law for almost seven years. His practice at MRSB is focused primarily on civil litigation, representing clients in business litigation, construction, employment, insurance coverage and bad faith and personal injury actions. He has extensive experience in all aspects of civil litigation, including pleadings, discovery, motion practice, trial and appellate proceedings. His litigation group's practice has encompassed litigation pending in state and federal courts in numerous jurisdictions. In this matter, Jason Buchanan assisted with the depositions, had extensive responsibility to review documents for the selection of relevant materials, and he was the person who initially selected exhibits and created the examinations used with each of the witnesses at trial. His current hourly rate is $185 per

hour on hourly matters. This rate is consistent with the Court's knowledge of the prevailing market in Kansas City for an attorney with Jason Buchanan's experience and skill.

This was a case involving trade secret litigation. The rates charged for such specialized legal services by other law firms with intellectual property departments are typically considerably higher than the rates submitted in this action by MRSB. The evidence submitted by plaintiff shows that the hourly rates for Thomas and Jason Buchanan and Linda McFee are reasonable in light of the prevailing market rates in the Kansas City community for attorneys with their skill and experience. The Court finds that Thomas Buchanan's declarations, as well as the declarations of Jason Buchanan and Linda McPhee are probative evidence that the rates sought by those attorneys are reasonable.

Christy Henry has been a legal assistant for over nine years and Karen Wilderwing has been a legal assistant for over six years. Both are extremely knowledgeable about civil litigation and trial preparation and provided valuable assistance to the attorneys and plaintiff in this matter. MRSB bills clients $85 per hour for Christy Henry's time and $80 for Karen Wilderwing's time. Thomas Buchanan attests that these rates are reasonable for persons of similar experience and skills in this region. Based on these submissions, the Court finds these legal assistants' rates are reasonable and constitute prevailing market rates in the relevant community for attorneys with their skill and experience. Finally, the Court finds that MRSB's request for $52.50 for messenger services is reasonable and would have been incurred even if only the trade secret claims were pursued by plaintiff.

### b. Number of Hours Reasonably Expended

The Court must next determine the amount of hours reasonably expended by counsel for

plaintiff.[13]  In order for the applicant to satisfy its burden of proving the number of hours reasonably spent on the litigation, the party must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[14]  "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[15]  The Court "is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time."[16]

After the Court determines whether counsel exercised billing judgment, it must evaluate the hours expended on each task and determine if they are reasonable.[17]  This determination requires the Court to consider such factors as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side, and potential duplication of services.[18]  But there is no requirement that the Court "identify and justify each disallowed hour.  Nor is their [sic] any requirement that district courts announce what hours are permitted for each legal task."[19]

Plaintiff requests an award of fees for 6512.75 hours, which the Court has already

---

[13]*Case*, 157 F.3d at 1250.

[14]*Id.* (citation omitted).

[15]*Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

[16]*Id.* (citing *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995)).

[17]*Case*, 157 F.3d at 1250.

[18]*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983)).

[19]*Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986)).

reduced by 880.85 hours, the amount of hours claimed by timekeepers for which plaintiff was

unable to establish a reasonable hourly rate.  The Court now considers 5631.90  hours spent by

the remaining MRSB timekeepers for hours expended between October 12, 2005 and June 22,

2009.  Plaintiff has submitted contemporaneous time records reflecting the daily time entries by

all timekeepers, which recite a narrative description of the work performed and the amount of

hours spent.  Prior to submitting their initial fee request to the Court, plaintiff's counsel reduced

their time (reflecting "0.0" in the time column of certain entries) by a billing amount of more

than $265,000.  Thomas Buchanan reviewed the actual time reported in this case and materially

reduced such time in order to avoid any dispute over the reasonableness of the fees.  The Court

has previously observed that the majority of discounted time entries appear to have been made in

the exercise of billing judgment.[20]  Additionally, Thomas Buchanan attests in his declaration that

MRSB eliminated approximately six time entries that it determined were duplications.  The

Court finds that plaintiff's counsel exercised billing judgment, as evidenced by the significant

voluntary reductions made prior to submitting its fee request.

### Duty to Keep Meticulous, Contemporaneous Time Records

Defendants argue that plaintiff's counsel failed to keep meticulous time records, citing

their use of block billing, and vague descriptions for time entries.  "'Block billing' is the practice

of lumping multiple tasks into a single entry of time such that the billing entry does not delineate

how hours were allotted to specific tasks."[21]  There is no rule in the Tenth Circuit that

"mandat[es] reduction or denial of a fee request if the prevailing party submits attorney-records

---

[20]"The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).

[21]*Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *3 (D. Kan. Jan. 8, 2009).

which reflect block-billing."[22]  But the Court may discount the requested hours if it finds that the records submitted do not allow the Court to determine how the hours were allotted to specific tasks and the reasonableness of that time.[23]

The Court notes at the outset that it presided over this matter through a long and contentious summary judgment process and four-week trial.  Summary judgment entailed over 400 pages of briefing; defendants' motion alone presented 385 statements of uncontroverted fact and plaintiff's response to this motion presented 392 additional statements of fact.  The Court was required to consider all of these statements of fact and the volumes of evidence submitted in support thereof in rendering its decision.  The case proceeded to a lengthy trial that involved complicated technical documents and expert testimony.  The intensely litigated nature of this matter is documented in the 900 docket entries made in this case to date.  This Court is intimately familiar with the facts of this case, the rampant discovery disputes, intense motions practice, trial, and post-trial motions.  Upon review of plaintiff's time records, the Court finds that it is easily able to determine that the hours billed as described by plaintiff are reasonable.

In their supplemental response brief, defendants point to three block billed time entries that they complain do not specifically show how plaintiff's counsel allotted time to various tasks and, therefore, do not allow the Court to determine whether the time spent was reasonable.  Plaintiff replied, defending the reasonableness of each of these three time entries.  Plaintiff further argues that it segregated out the trade secret claims by reducing the time sought by at least one-third each.  The Court has reviewed these entries and agrees with plaintiff that, in this

---

[22]*Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

[23]*Id.*

12

case, block billing does not prevent the Court from determining the reasonableness of their time. First, it is apparent by comparing the initial fee submission with the segregated fee submission that plaintiff's counsel further reduced their hours by a significant percentage, in order to reflect the Court's finding that the time spent on non-trade secret claims is not compensable. The Court is easily able to review the time entries identified by defendants and find that these hours are reasonable. For instance, in defendants' example of the revised January 18, 2007 time entry by Jason Buchanan, he spent 5.90 hours as follows:

> PREPARE FOR AND ATTEND DEPOSITIONS OF MIKE CASEY, DARIN GENEREUX AND HAROLD KRAUS. MEET ARLIE STONESTREET TO GO OVER ARLIE'S REVIEW OF DOCUMENTS, AND DEPOSITION PREPARATION. RECEIPT AND REVIEW OF EMAILS FROM ARUE REGARDING REVIEW OF DEFENDANTS EXPERT REPORT AND COMPARISON OF ICE'S SOFTWARE AND ARTUS SOFTWARE.

The Court is able to conclude that 5.90 hours is a reasonable amount of time spent on these time-consuming tasks. Counsel prepared for and attended three depositions and then met with Arlie Stonestreet, who served both as plaintiff's expert on the trade secret issues and as one of the principal fact witnesses. Additionally, counsel reviewed Stonestreet's review of defendants' expert report and comparison of ICE's software and Artus' software—a central issue in the case that involved complicated trade secret-related evidence. Plaintiff discounted this entry by two hours in furtherance of its duty to segregate time spent on non-compensable work. The Court finds that 5.90 hours is a reasonable amount of time to spend on the tasks set forth in this time entry.

Likewise, the Court is able to find that the other two time entries cited by defendants involve a reasonable amount of hours spent for the work described. Both entries were reduced

by a percentage in furtherance of the duty to segregate and the remaining time indicated for these tasks is reasonable.

Defendants further argue that plaintiff's time records are not meticulous because they fail to provide enough detail about the work counsel performed for each entry. They refer to entries that use terms such as "discovery issues," "research," and "various pleadings." They cite four examples of time entries that they claim are vague and generic. The Court has reviewed plaintiff's time entries and finds that these examples are not illustrative of the narrative descriptions used by plaintiff's counsel. Furthermore, these examples are largely taken out of context. The first example complains of an entry by Thomas Buchanan for "WORK ON LAWSUIT; E-MAILS WITH CLIENT; WORK WITH ASSOCIATE REGARDING COMPLAINT," from November 11, 2005. The Complaint in this matter was filed on November 15, 2005. It is patently clear to the Court that the two hours sought for this entry were spent on preparing the Complaint in this matter. Defendants also point to a May 24, 2007 entry for 4.5 hours by Thomas Buchanan for "WORK ON VARIOUS PLEADINGS TO BE FILED, FOR PREPARATION FOR HEARING, AND ON COMMUNICATIONS WITH EXPERT AND WITH COURT." As plaintiff correctly points out, this entry is made clear by the multitude of surrounding entries on that date and the surrounding dates, which recite the specific pleadings Thomas Buchana reviewed and revised in conjunction with other attorneys. Counsel was in the process of briefing a motion to compel a deposition of defendants' retained expert, a motion for protective order, and a position statement needed by Magistrate Judge Sebelius with regard to a discovery issue.

Because the Court does not find plaintiff failed to keep meticulous, contemporaneous

time records, it declines defendants' invitation to impose an across-the-board reduction of 35-60%.

### *Segregation*

Defendants next claim that plaintiff arbitrarily and inaccurately reduced its time in its revised fee request when it segregated time spent on the trade-secret claims. In his declaration, Thomas Buchanan set forth MRSB's methodology for segregating compensable and noncompensable hours spent on this litigation. In accordance with the Court's Memorandum and Order (Doc. 860), Linda McFee, and Thomas and Jason Buchanan reviewed and amended their previously-submitted time entries and reduced the hours claimed in an attempt to segregate hours spent working on compensable trade secret claims from those hours spent on noncompensable claims. In instances where pretrial discovery and briefing activities were clearly related to the trade secret claims, MRSB made no changes. MRSB eliminated any entries where there was a clear delineation of time on claims which the Court has determined are not compensable, such as time spent on plaintiff's motion for partial summary judgment. Where time for plaintiff's motion for partial summary judgment was recorded in a combined entry, a reduction was made to remove time for work on plaintiff's motion for partial summary judgment.

MRSB found some time entries that involved work on evidence of compensable and noncompensable claims. Counsel concluded that some of the evidence discussed in these entries regarding noncompensable claims would have been offered at trial even if the only claim in the case had been the misappropriation of trade secret claims. For example, MRSB substantially reduced time spent preparing and producing Patrick Connelly for his deposition, and for

preparing him for trial.  But MRSB did not eliminate all time related to Connelly for several justifiable reasons.  First, Connelly and/or Stonestreet were the client contacts for virtually all communications related to the case.  One or both of them were consulted or approved all appropriate matters that a lawyer might consult with his client during the litigation.  Also, Connelly testified on certain issues that were directly relevant to the trade secret claims, including the expectations of confidentiality, ownership, and his testimony was part of the evidence in support of the damages claim.

MRSB undertook pretrial apportionment analysis by looking at various items, such as the summary judgment briefing and determined that an apportionment of 70% of time spent on trade secret issues and 30% for noncompensable time, such as the fraud, unfair competition and portions of the contract claim was a ratio that should exceed the actual weighting of time on the trade secret claims, because of their greater complexity and central role in the case.  Where time entries included both compensable and noncompensable items, and MRSB could not otherwise allocate, they applied the 70/30% ratio to pretrial discovery, document review, briefing on defendants' motions for summary judgment, preparation for the pretrial conference and work on the pretrial order, and trial preparation.

In some instances, MRSB contends that a higher percentage could have been allocated to the trade secret claims.  For example, document review involved substantial time because of the volume of documents produced, and the need was driven by the misappropriation of trade secret claims.  MRSB could have legitimately allocated considerably more time and fees to document review than the 70% allocation.

MRSB eliminated all time incurred for the entire first week of the four-week trial for all

timekeepers, even for entries that clearly related to work on the trade secret claims. MRSB also eliminated substantial time on the post-trial file management, segregating time for matters not compensable from time related to the trade secret claims.

The Court has reviewed plaintiff's fee records, which were modified in an attempt to segregate the hours spent litigating the trade secret claims, and finds that plaintiff has fulfilled its duty to segregate as required by the Court's last Memorandum and Order. The Court finds it reasonable that the trade secret claims would incur substantially more time by counsel than the contract-related claims and that a 30% reduction is reasonable in the absence of some apparent and objective division of time. The trade secret claims involved highly technical document discovery, expert witness discovery, and motions practice. It appears that much of the acrimonious discovery-related motions practice centered around the trade secret claims. A significant portion of trial was comprised of evidence concerning the trade secret claims. Moreover, the Court explained in its last Memorandum and Order that plaintiff's duty to segregate did not require a formulaic 50% reduction in hours expended. This Court previously advised that to the extent discovery and expert retention applied fully to both the MOU-related claims and the trade secret claims, those fee requests would be reasonable. For example, the Court advised that it would be entirely proper for plaintiff to request the full amount of fees incurred as a result of retaining Marc Vianello, who testified as an expert on the lost profits calculation.

Defendants first contend that plaintiff's attempt at segregation fails because it "reconstructed" its time expended by revising the descriptions to remove reference to other claims and then "guessed" at the amount of time related to the remaining activities and

17

arbitrarily reducing the amount of time recorded. The Court disagrees. The record belies the notion that MRSB simply guessed at the time spent on compensable versus noncompensable work. The Court accepts as true Thomas Buchanan's declaration, where he set forth the ratio that MRSB determined was reasonable for block billed entries that entailed work on compensable and noncompensable claims that could not be apportioned on an otherwise apparent and objective basis. For those entries, the firm reduced the time spent by 30%, which the Court finds reasonable

In its prior Memorandum and Order, the Court warned plaintiff that it was inclined to impose a general reduction of time to account for its failure to show how certain work was specifically allocated if it appeared that counsel requested fees for work performed during a block of time that clearly includes both compensable and noncompensable time. It is apparent to the Court that plaintiff heeded this warning and modified block billed entries accordingly by attempting to describe only the work spent on trade-secret related claims, and by reducing the total hours spent on mixed time entries. As previously discussed, the Court finds this to be a reasonable approach to segregation.

Defendants criticize plaintiff's segregation of: (1) trial time; and (2) pretrial activity. With regard to trial time, plaintiff opted to eliminate all time from its fee request for the first five trial days because it found it too difficult to segregate specific time blocks of trial time by claim. This five-day period included the *in limine* hearing, voir dire, and opening statements, as well as a substantial portion of Patrick Connelly's testimony. The Court finds this approach to segregating trial time is reasonable. Plaintiff reduced a substantial amount of time from its fee request to account for the fact that a portion of trial time was spent on noncompensable claims.

The Court agrees that a portion of Patrick Connelly's testimony was relevant to the trade secret claims, but more importantly, this full week reduction in time sufficiently accounted for all noncompensable trial time. Defendants complain that plaintiff seeks to recover for time spent examining witnesses who testified exclusively on non-trade secret claims. However, defendants fail to account for the fact that plaintiff instead opted to eliminate all hours for one week of trial time, despite the fact that some of that time was spent on the trade secret claims. Moreover, the Court agrees with plaintiff that Sebastien Mounier, Ken Mantha, Robert Gaiani, and Etienne Haslin did not exclusively testify about non-trade secret issues. These witnesses also testified about issues such as the Proprietary Information Agreement, expectations of confidentiality, trade secret ownership, misappropriation allegations, and damages. Given the intertwined nature of much of the trial evidence, the Court is persuaded that plaintiff's method of discounting one full week of trial is a reasonable method of segregation.

Likewise, the Court agrees that plaintiff did not overly apportion pretrial activity to the trade secret issues. As the Court has already explained, it declines to simply aggregate the claims or witnesses associated with the trade secret claims and apportion plaintiff's time accordingly. The trade secret claims were significantly more complex than the contract issues in this case and necessitated a greater amount of time spent on discovery, motions practice, and trial preparation. To apply a ratio based on quantity rather than quality would be erroneous, particularly given the obviously disproportionate amount of time and attention the trade secret claims required of counsel. The Court finds that defendants' proposed reductions—over and above plaintiff's voluntary reductions—would ignore the reality that the trade secret claims required a much more significant amount of time and energy from counsel in this matter.

The Court has considered the complexity of the case, the number of reasonable strategies pursued, the responses necessitated by the maneuvering of the other side, and any potential duplication of services and finds that plaintiff's revised fee request is based on a reasonable amount of hours spent. The Court, therefore, calculates the lodestar as follows:

| Timekeeper | Hours | Rate | Lodestar |
|---|---:|---:|---:|
| Jason Buchanan | 1464.70 | $185 | $270,969.50 |
| Thomas Buchanan | 1912.65 | 300 | 573,795.00 |
| Linda McPhee | 629.80 | 250 | 157,450.00 |
| Christy Henry | 1153.25 | 85 | 98,026.25 |
| Karen Wilderwing | 471.50 | 80 | 37,720.00 |
| Messenger Servs. | | | 52.50 |
| **Total** | 5631.90 | | $1,138,013.25 |

### D.    *Lodestar Adjustment*

Under KRPC 1.5(a), eight factors should be considered by the Court when determining the reasonableness of a fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers

performing the services; and
(8) whether the fee is fixed or contingent.[24]

   The Court has considered all of these factors in reaching the appropriate lodestar amount.[25]  In addition to the previous findings made in calculating the lodestar, the Court makes the following additional findings.  This was a complex case that posed significant and numerous legal issues.  The case was filed in November 2005 and did not reach trial until January 2009.  Post-trial motions, with the exception of attorneys' fees, were resolved in March 2010 and the case is currently on appeal.

   The Court was called upon to resolve countless discovery motions in this case, including motions for sanctions.[26]  At each stage of these proceedings, typically routine matters have been disputed and placed before the Court for decision.  Summary judgment entailed over 400 pages of briefing.  The amount of claims, as well as the factual and legal issues presented on summary judgment, required a decision that exceeded 100 pages, an uncommon occurrence in this Court's experience.  The complexity of the case, coupled with the sheer amount of discovery and motions practice that ensued required seasoned trial counsel in order to properly represent this plaintiff.

   Trial lasted for approximately four weeks, resulting in verdicts in favor of plaintiff on the majority of claims.  Against defendant Ratier, the jury found liability for breach of good faith and fair dealing and misappropriation of trade secrets, and explicitly found that Ratier

---

[24]Kan. S. Ct. R. 226 (2009); *see Wittig v. Westar Energy, Inc.*, 235 P.3d 515, 529–30 (Kan. 2010); *Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135–36 (Kan. 2006).

[25]*See  Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1274 (D. Kan. 2003) (explaining that these factors "are the same factors on which the lodestar analysis is based.") (citing *Shrout v. Holmes*, No. 00-2069-KHV, 2001 WL 980280, at *2 (D. Kan. Aug. 10, 2001)).

[26]*See* Doc. 438 nn.14, 15 (summarizing discovery motions).

misappropriated all three trade secrets at issue. It awarded plaintiff $153,708 on the breach of contract claim and $4,795,300, the full amount of lost profits damages sought, on the misappropriation of trade secrets claim. The jury additionally found Ratier acted willfully, wantonly, or maliciously on the misappropriation of trade secrets claim and that it was entitled to punitive damages in the amount of $10,000,000. The jury found defendant Ratier not liable on plaintiff's fraud claim. Against defendant Hamilton, the jury found liability on both the unjust enrichment claim and the misappropriation of trade secrets claim, awarding $35,825 on the unjust enrichment claim. The jury additionally found Hamilton acted willfully, wantonly, or maliciously on the misappropriation of trade secrets claim and that plaintiff was entitled to punitive damages in the amount of $2,500,000. On May 7, 2009, the Court made findings of fact and conclusions of law with regard to the compensatory damages claim against Hamilton, finding damages in the amount of $4,795,300.[27] The Court also independently evaluated the statutory factors under Kansas law for an award of punitive damages and imposed punitive damages in the amount of $9,590,600 against defendant Ratier and $2,397,650 against defendant Hamilton.[28] Plaintiff obtained overwhelmingly favorable results and the amount of damages involved further supports the Court's award of a significant amount of attorneys' fees. The attorneys' fees awarded amount to approximately 7% of the judgment.[29]

The Court has no evidence before it on the second or fifth factor. The Court has considered plaintiff's contingency fee arrangement finds that it is not an appropriate basis for

---

[27](Doc. 802.)

[28](Doc. 801.)

[29]The Court notes that the punitive damages were awarded solely on the misappropriation of trade secrets claims.

determining a reasonable fee in this matter. Given that plaintiff is entitled to recover only those fees associated with the trade secret claims, a segregated lodestar method is more appropriate. Basing the reasonable fee award on the parties' contingency agreement would not reflect counsel's duty to segregate fees in this case.[30]

In sum, the Court has considered all of the factors listed in KRPC 1.5 and concludes that the lodestar calculation represents a reasonable amount of attorneys' fees incurred in prosecuting the misappropriation of trade secrets and related claims. The calculation of reasonable hours by reasonable rates need not be modified and the Court awards plaintiff $1,138,013.25 in reasonable attorneys' fees.

**Defendants' Fee Request**

**I.     Background**

In a September 10, 2008 Memorandum and Order, the Court allowed plaintiff to substitute the summary judgment declaration of Patrick Connelly, a primary witness, and allowed defendants additional time to supplement their summary judgment reply memorandum to the extent necessary to respond to the substitute declaration. Plaintiff was ordered to "pay reasonable fees and costs associated with drafting the supplement to the reply." In allowing plaintiff to substitute Connelly's declaration, there was no dispute that plaintiff cited heavily to the proposed substitute declaration in its response brief. The Court emphasized that the cited-to portions of the declaration generally tracked the language in the response brief, and did  not at all

---

[30]*See Beck v. N. Natural Gas Co.*, 170 F.3d 1108, 1025 (10th Cir. 1999) (explaining that under Kansas law, a contingency fee agreement may be considered as one of several factors and that it was not an abuse of discretion for the district court to find the lodestar method more appropriate); *Johnson v. Westhoff Sand Co.*, 135 P.3d 1127, 1135–36 (Kan. 2006) ("Indeed, the 'contingent fee' factor which they declare paramount is the last one of eight enumerated.").

match up with the language in the originally attached declaration.  Defendants did not deny that they possessed the correct document and the Court found that this mistake should have been obvious to the reader.  The Court, nonetheless, allowed defendants seven days to supplement their reply to amend their answers to the relevant statements of fact that cited to the Connelly declaration if their answers would have been different but for this substitution.  Importantly, the Court did not allow plaintiff to modify its statements of fact, nor the citations to the Connelly declaration.  It only allowed for the declaration itself to be substituted.

During the trial in this matter, defendants advised the Court that they had requested plaintiff pay these attorneys' fees but had not yet been paid.  The Court ordered plaintiff to submit an objection if it disputed the reasonableness of defendants' fee request, which it filed on March 23, 2009.  Attached to this filing is defendants' request for fees in the amount of $11,820, for 30.8 hours expended.  This amount represents 5.5 hours at $580 per hour for Frederick Sperling, 13.3 hours at $500 per hour for Sonrda Hemeryck, and 12 hours at $165 per hour for Samantha Norris.   Plaintiff's counsel responded that it did not believe these fees were reasonable and necessary and requested timesheets for these hours.  Defendants provided plaintiff with the requested timesheets and both parties attached these timesheets to their filings on the instant motion.[31]

## II.    Discussion

Defendants submit no evidence to support the reasonableness of their requested rates.  As already explained in determining the reasonable rates on plaintiff's fee request, the relevant

---

[31](Doc. 769, Ex. C; Doc. 773, Ex. B.)

24

community is the place where the litigation occurs.[32] "While a party is free to select counsel from any locality, absent a clear showing that the matter could not reasonably have been handled by counsel from the locality, rates above the prevailing local hourly rates should not be applied."[33] Defendants make no showing that their rates are reasonable under the applicable standard. There has been no showing that the case could not have been handled by counsel locally. In fact, the Court has already found in determining the plaintiff's reasonable attorneys' fees that a reasonable rate for an experienced litigator in the Kansas City market, with almost thirty years of experience and numerous professional achievements, is $300 per hour. The Court is unable to find that either Mr. Sperling or Ms. Hemeryck is entitled to a rate higher than this amount.

While defendants failed to provide evidence of their skill and experience in conjunction with this motion, they provided such evidence on another motion earlier in this case.[34] Mr. Sperling has previously represented in 2007 that he has been practicing at his firm, Schiff Hardin LLP, for twenty-seven years since his federal appellate clerkship concluded. Ms. Hemeryck has been with the Schiff Hardin firm for thirteen years since her federal appellate clerkship concluded. They have both achieved numerous professional achievements. Given this information, and the previous findings with regard to the MRSB attorneys, the Court finds it appropriate to reduce Mr. Sperling's commensurate with Mr. Buchanan's and to reduce Ms.

---

[32]*Jayhawk Inv., L.P. v. JetUSA Airlines, Inc.*, No. 98-2153-JWL, 1999 WL 974027, at *4 (D. Kan. Aug. 25, 1999) (citation omitted).

[33]*Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005); *see also Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006).

[34]*See* Doc. 453, Objection to Magistrate Judge Order (Dec. 14, 2007).

Hemeryck's rate commensurate with Ms. McFee's. The Court has been provided with no information about the skill or experience of Ms. Norris, and consequently, declines to award defendants any fees incurred for time spent by her, as it is impossible to determine a reasonable hourly rate.

As the Court made clear in its September 10, 2008 Order, the mistakenly-attached declaration should have been obvious to defendants and the Court clearly warned them that the Court's award of reasonable fees should not be viewed as a "blank check." With the exception of the September 15, 2008 time entry by Mr. Sperling, the Court finds the submitted hours expended by both counsel are reasonable. The time spent by Mr. Sperling on September 15, 2008 working on reviewing "new ICE exhibits," is not compensable. The Court's Order did not award fees for time spent reviewing all of the substituted exhibits provided for in that Order, only on time spent preparing a revised reply to the statements of fact implicated by the revised Connelly declaration. The remaining hours are reasonable in light of the importance of Mr. Connelly's declaration to the motion for summary judgment and in light of the length of plaintiff's response memorandum.

Based on the previously stated findings, the Court calculates the lodestar for Mr. Sperling by multiplying 4 hours by a $300 hourly rate, resulting in $1200. The Court calculates the lodestar for Ms. Hemeryck by multiplying 13.3 hours by a $250 hourly rate, resulting in $3325. Defendants' total lodestar amount is $3575. The Court finds this presumptively reasonable amount need not be modified and shall be offset from plaintiff's award of reasonable attorneys' fees.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Supplemental

Submission in Support of Motion for Award of Attorneys' Fees (Doc. 872) is **granted**.  Plaintiff is awarded attorneys' fees in the amount of $1,138,013.25.   This amount shall be reduced by $3575, the reasonable fees incurred by defendants in association with drafting supplemental replies to plaintiff's responses to their motions for summary judgment, for a total award to plaintiff in the amount of $1,134,438.25.

**IT IS SO ORDERED.**

Dated: November 12, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE